Case No. **23-1078**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

IN RE:

GERALD PARKS, licensee of Full Power AM Broadcast Station WEKC, Williamsburg, KY, Facility ID No. 72790

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

**GERALD PARKS**

By: Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
Telecommunications Law Professionals, PLLC
1025 Connecticut Avenue, NW, Suite 1011
Washington, DC 20036
Tel: (202) 789-3115
Email: dcorbett@tlp.law
*Counsel to Gerald Parks*

March 22, 2023

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 1

II.     THE UNDERLYING FACTS AND CIRCUMSTANCES OF THIS CASE
        COMPELLINGLY ESTABLISH THE FCC'S TRANSPARENT VIOLATION OF
        A CLEAR DUTY TO CONTINUE THE STATION LICENSE IN EFFECT
        DURING THE PENDENCY OF THE STATION'S 2012 RENEWAL
        APPLICATION.......................................................................................................... 3

III.    THE LETTER RULING'S ATTEMPT TO EVADE THE PLAIN IMPORT OF
        307(c)(3) IS PATENTLY IRRATIONAL; IT FAILS ACCORDINGLY .................... 7

IV.     ISSUANCE OF THE REQUESTED WRIT IS AMPLY JUSTIFIED UNDER
        WELL-SETTLED PRECEDENT ............................................................................. 12

V.      CONCLUSION ...................................................................................................... 14

ADDENDUM OF CIRCUIT RULE 21(d) CERTIFICATES ................................................. 15

CERTIFICATE OF COMPLIANCE ....................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Comcast Corp. v. FCC*, 526 F.3d 763 (D.C. Cir. 2008) ................................................ 11

*In re Core Commc'n*, 531 F.3d 849 (D.C. Cir. 2008) ............................................. 12, 13

*Council Tree Commc'ns v. FCC*, 503 F.3d 284 (3rd Cir. 2007) ................................. 11

*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999) ........................................ 9

*Hibbs v. Winn*, 542 U.S. 88 (2004) ............................................................................... 10

*In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000) ............................................ 2

*In re National Nurses United*, 47 F.4th 746 (D.C. Cir. 2022). ...................................... 2

*In re Medicare Reimbursement Litig.*, 414 F.3d 7 (D.C. Cir. 2005)............................. 13

*Telecommunications Action & Research Ct. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) .................. 13

**Statutes**

47 U.S.C. § 307................................................................................................................ 1, 10

47 U.S.C. § 307(c)(1) ......................................................................................................... 10

47 U.S.C. § 307(c)(3)............................................................ 1, 2, 6, 7, 8, 9, 10, 11, 13, 14

47 U.S.C. § 402 ............................................................................................................. 2, 8, 9

47 U.S.C. § 405 ............................................................................................................. 2, 8, 9

47 U.S.C. § 405(a) ................................................................................................................ 4

47 U.S.C. § 402(b)(2) ........................................................................................................... 2

5 U.S.C. § 706(1) .................................................................................................................. 2

**Other Authorities**

*Broadcast Actions*, Public Notice, Report No. 49796 (MB Aug. 6, 2020).................... 4

*Broadcast Actions*, Report No. 52000 (MB Mar. 21, 2022)........................................... 4

*Broadcast Applications Accepted for Filing*, Public Notice, Report No. 27737, (MB May 14, 2012) .................................................................................................... 3

*Broadcast Applications*, Public Notice, Report No. PN-1-191119-01 (MB Nov. 19, 2019) ......... 3

*Broadcast Applications*, Report No. 30200 (MB Mar. 21, 2022) .................................................. 4

February 7, 2023 Letter from Albert Shuldiner, Chief, Audio Division to Dennis P. Corbett, et al., DA 23-107, 1800 B3-ATS ................................................. 5, 6, 7, 8, 9, 10, 11, 12

*Gerald Parks*, Forfeiture Order, 30 FCC Rcd 7038 (EB 2015) ...................................................... 6

**Regulations**

47 C.F.R. § 1.115(c) .................................................................................................................. 12

47 C.F.R. § 1.65(a) ...................................................................................................................... 4

Case No.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE:

GERALD PARKS, licensee of Full Power AM Broadcast Station WEKC, Williamsburg, KY, Facility ID No. 72790

## PETITION FOR WRIT OF MANDAMUS

Gerald Parks ("Parks"), by his attorneys and pursuant to Federal Rule of Appellate Procedure 21, hereby requests that this Court issue a writ of mandamus directed to the Federal Communications Commission ("FCC" or "Commission") ordering the Commission to follow the command of 47 U.S.C. § 307(c)(3) ("307(c)(3)") so as to (i) "continue in effect" the unlawfully cancelled license of AM broadcast station WEKC, Williamsburg, Kentucky (the "Station"); and (ii) immediately restore the Station's operational authority.[1]

## I.     INTRODUCTION

To set the context for this Petition, Parks notes several key statutory provisions:

**47 U.S.C. § 307** ("Section 307") establishes the FCC's basic authority to entertain, process, and grant or deny applications for broadcast licenses, including applications for license renewal.  Within Section 307, the full text of one subsection, 307(c)(3), headed "Continuation

---

[1] Commission records currently show the Station call sign to be DWEKC, with the initial D standing for deleted.  Grant of the relief requested herein will result in removal of that letter D. Furthermore, the Commission has improvidently allowed another broadcast station to take an assignment of the call sign WEKC during the continued pendency of the Station's 2012 license renewal application, a pendency addressed in detail below.  Neither of these cosmetic FCC actions poses an obstacle to the relief requested herein.

Pending Decision," reads as follows (emphasis added): "Pending any administrative or judicial hearing and final decision on such an application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, *the Commission shall continue such license in effect*."

**47 U.S.C. § 402(b)(2)** confers exclusive jurisdiction on this Court to review FCC decisions and orders relating to broadcast station renewal applications.

**5 U.S.C. § 706(1)** ("Section 706(1)") establishes this Court's authority to compel agency action that has been "unlawfully withheld" or "unreasonably delayed." For reasons explained below, the FCC's handling of this case to date brings both prongs of Section 706(1) into play.

As explained below, the extraordinary remedy of mandamus, "reserved only for the most transparent violations of a clear duty to act,"[2] is amply justified in this case. Parks' April 2012 application for renewal of the Station's license ("2012 Renewal Application") remains pending today before the Commission, which means the Commission has a corresponding "crystal clear" duty[3] under the plain language of 307(c)(3) to continue the Station's license in effect until final administrative and judicial disposition of that application. The Commission has shirked that duty to date, ordering the Station off the air on the basis of a transparent misreading of the scope of 307(c)(3) when applied to the case's facts. The Commission's unlawful cancellation of the very license it is statutorily bound to continue in effect cannot survive this Court's much needed, immediate review.

Parks emphasizes that this case is not about ultimate merits that have yet to be decided by the Commission. Rather, this case concerns the Commission's resolute refusal to fulfill its

---

[2] *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).

[3] *In re National Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022).

2

statutory responsibility to keep the Station license in effect and to keep the Station on the air *unless and until* any adverse *final* decision is reached with respect to the 2012 Renewal Application. This Court's mandamus power is Parks' only practical recourse under the unfortunate circumstances of this case. Every day the Commission keeps the Station off the air is a day of additional harm to the public interest. This Court has the power to prevent further harm, relief which is respectfully requested.

## II.   THE UNDERLYING FACTS AND CIRCUMSTANCES OF THIS CASE COMPELLINGLY ESTABLISH THE FCC'S TRANSPARENT VIOLATION OF A CLEAR DUTY TO CONTINUE THE STATION LICENSE IN EFFECT DURING THE PENDENCY OF THE STATION'S 2012 RENEWAL APPLICATION

Parks is an 89-year-old minister who, until January of 2022, had for some two decades provided gospel programming to AM radio listeners in and around his community of license, Williamsburg, located in the heart of Appalachia, on the Kentucky side of that state's border with Tennessee. On April 10, 2012, Parks filed an application to renew the Station's license (the "2012 Renewal Application").[4] Had that application been granted by the FCC prior to August 1, 2020, that grant would have carried an expiration date of August 1, 2020. But the FCC made no such grant. Instead, the FCC's Media Bureau ("Bureau") dismissed the 2012 Renewal Application on August 3, 2020, based on Parks' failure to file on or before August 1, 2020, the Station's *hypothetical* license renewal expiration date, a second renewal application for an additional license term on top of the still pending 2012 Renewal Application. **But the FCC failed to give the statutorily required public notice of the Bureau's August 3, 2020 dismissal**

---

[4] The Commission twice accepted the 2012 Renewal Application for filing, on May 14, 2012 and again on November 19, 2019. *Broadcast Applications Accepted for Filing*, Public Notice, Report No. 27737, (MB May 14, 2012), at 16; *Broadcast Applications*, Public Notice, Report No. PN-1-191119-01 (MB Nov. 19, 2019), at 3.

**of the 2012 Renewal Application**.  The FCC does not dispute this fact.  Under 47 U.S.C. §

405(a) ("405(a)"), the FCC must give public notice to trigger an applicant's 30-day right to seek

reconsideration of any Commission action, actions which certainly include dismissal of a

renewal application.  Stated another way, until such time as the FCC gave public notice of the

2012 Renewal Application's dismissal, that application remained pending,[5] subject to further

administrative and judicial reconsideration and review.

On August 3, 2020, the same date the 2012 Renewal Application was dismissed without

public notice, the Bureau cancelled the Station license, giving public notice of *that* action on

August 6, 2020.[6]  Parks, struggling in the throes of the COVID-19 pandemic and unrepresented

by counsel, was unaware of the license cancellation until much later.  He ultimately took the

Station silent in late January, 2022, after confirmation from newly retained undersigned counsel

that the Bureau was so ordering.

On March 16, 2022, the FCC reinstated and granted the previously dismissed 2012

Renewal Application, giving public notice of this action on March 21, 2022.[7]  The Bureau

provided no explanation for this dramatic reversal of course.  Parks timely sought

reconsideration of these Bureau actions, on grounds, inter alia, that, in context, a post-license

---

[5] *See, e.g.*, 47 C.F.R. § 1.65(a) ("an application is 'pending' before the Commission from the
time it is accepted for filing by the Commission until a Commission grant or denial of
the application is no longer subject to reconsideration by the Commission or to review by any
court.").

[6] *Broadcast Actions*, Public Notice, Report No. 49796 (MB Aug. 6, 2020).

[7] *Broadcast Applications*, Report No. 30200 (MB Mar. 21, 2022); *Broadcast Actions*, Report No.
52000 (MB Mar. 21, 2022).

cancellation grant without concomitant rescission of that cancellation, amounted to a de facto denial.[8]

Over the course of the next eight+ months, Parks' counsel kept in frequent contact with the Bureau about case status, with counsel emphasizing the daily harm being caused by the Station being kept off air.[9]  The Bureau consistently thanked Parks for his patience and stated that the Bureau was trying to find a "productive resolution" of the matter.[10]  Parks was assured as recently as December 2022 of continuing Bureau efforts to find a "positive outcome."[11]  In light of these Bureau responses, Parks was effectively held at bay until the Bureau took some further action, as the FCC would surely have used the prospect of a reasonably "productive" or "positive" result as the agency's "Exhibit A" had Parks, during this interim period, sought a Court order of mandamus directing the FCC to allow immediate restoration of Station service.

On February 7, 2023, the Bureau released its ruling granting in part and denying in part the PFR.[12]  In a head-spinning new reversal of its March 2022 reversal of course, the Bureau rescinded its reinstatement and grant of the 2012 Renewal Application, effectively reinstating the

---

[8] A copy of Parks' April 20, 2022 Petition for Reconsideration ("PFR") comprises Attachment 1 hereto.

[9] Attachment 2 hereto is a copy of the relevant email thread between undersigned counsel and Bureau Staff.

[10] *See, e.g.*, May 26, 2022 email within Attachment 2 from the Bureau Chief to undersigned counsel ("[the Bureau], in consultation with [Office of General Counsel], has spent a significant amount of time on this issue.  To date we are unable to find a solution that is consistent with our law and precedent, but we will continue to seek a productive resolution.").

[11] *See* December 20, 2022 email within Attachment 2 from the Bureau Chief to undersigned counsel ("I understand the frustration over how long this is taking, but please be assured that we are trying to get to a positive outcome.").

[12] Attachment 3 hereto contains a copy of this decision, in the form of a February 7, 2023 Letter from Albert Shuldiner, Chief, Audio Division to Dennis P. Corbett, et al., DA 23-107, 1800 B3-ATS ("Letter Ruling").  The Letter Ruling is not paginated.

August 2020 dismissal thereof, and giving, **for the first time,** public notice of that dismissal. The Letter Ruling rejected Parks' Emergency Request seeking immediate restoration of the Station's operational authority predicated on 307(c)(3), on the basis of an arbitrary and capricious factual and legal analysis reviewed below.[13]  From Parks' perspective, after patiently waiting for nearly a year, there turned out to be absolutely nothing productive or positive in the content of the Letter Ruling.[14]

Parks timely challenged the Letter Ruling by means of the Further PFR, arguing, inter alia, that the 2020 cancellation of the Station license was incurably premature, coming as it did *before* Commission dismissal of the first-in-time 2012 Renewal Application had become final.[15] It is a simple, and Parks believes, unassailable proposition – the FCC may not lawfully cancel a license that 307(c)(3) demands be continued in effect.  Commission zeal to visit consequences on a licensee cannot override procedural licensee protections embedded in the statutory scheme the

---

[13] Attachment 4 hereto contains a copy of Parks' Emergency Request for Immediate Restoration of Station Operating Authority, filed with the Commission on April 20, 2022.  On that same date, Parks filed with the Commission a new license renewal application, accompanied by an appropriate waiver request.  A copy of that April 20, 2022 application and waiver request comprises Attachment 5 hereto.

[14] Indeed, the Letter Ruling went out of its way to paint a negative picture of Parks, finding, for example (at 2), that Parks had failed to take any steps to address a so-called "red light" issue stemming from unpaid past regulatory fees, *despite evidence Parks supplied to the Bureau* on February 15, 2022 that he had retired this debt with the U.S. Treasury. *See* Parks' March 9, 2023 Petition for Further Reconsideration ("Further PFR") (copy attached hereto as Attachment 6) at n. 14 and accompanying text, and at Attachment A thereto.  This misstatement of fact tarnishing Parks is particularly harsh, as the Commission had every reason to know that Parks' efforts to retire his regulatory debt came despite his relative lack of financial resources and even after, unbeknownst to him, the FCC had cancelled his license.  As to Parks' finances, in 2015, the FCC reduced a proposed Parks' forfeiture from $15,000 to $1,500 based on Parks' documented inability to pay.  *Gerald Parks*, Forfeiture Order, 30 FCC Rcd 7038 (EB 2015).

[15] Further PFR at 9-10.

Commission must implement.  When Bureau policy conflicts with a statute's plain language, the statute must prevail.

### III.    THE LETTER RULING'S ATTEMPT TO EVADE THE PLAIN IMPORT OF 307(c)(3) IS PATENTLY IRRATIONAL; IT FAILS ACCORDINGLY

Two egregious errors in the Letter Ruling stand out.  First, the Letter Ruling finds that "Section 307(c)(3), which requires the Commission to 'continue [the license under review] in effect' pending a 'hearing and final decision' on a renewal application, does not apply when a renewal application has been *granted* without a hearing, as *is* the case with the 2012 Renewal Application."[16]  While Parks would not accept this rationale even if grounded in fact,[17] it is completely divorced from the reality the Letter Ruling itself creates.  That is, earlier in the Letter Ruling, the Bureau *rescinded* the reinstatement and grant of the 2012 Renewal Application.  So, the 2012 Renewal Application is indisputably no longer "granted."  Like the scarecrow in the Wizard of Oz, the Letter Ruling is simultaneously pointing in two opposite directions, relying on a grant it has just rescinded.  Such inherently contradictory statements of fact in the same document illustrate how far afield the FCC has wandered in an unsuccessful effort to defend its actions under 307(c)(3).

Second, the Letter Ruling compounds this factual error by adding a legal one, in the form of this finding on the same page 9: "Rather, section 307(c)(3) addresses situations where a renewal application has been designated for 'hearing.'"  The Letter Ruling cites *nothing* in support of this remarkable sentence, which runs counter to the Commission's own routine

---

[16] Letter Ruling at 9 (footnote omitted) (first emphasis in original; second emphasis added).

[17] The PFR timely sought reconsideration of the March 2022 grant of the 2012 Renewal Application, on grounds, inter alia, that the grant, in context, was a de facto denial.

processing practices, as well as the statute's plain language and context, basic principles of statutory construction, and common sense.

It is not uncommon for a broadcast license renewal application to remain pending for more than eight years, past a hypothetical expiration date, without any designation for hearing. When that happens, the FCC typically does not cancel the license, but routinely continues it in effect pursuant to the dictates of 307(c)(3) while application processing proceeds beyond the eight-year mark. It is true that Bureau (not full Commission) policy calls for a second renewal application to be filed on top of the one still pending, but the continuing validity of the underlying license is guaranteed by 307(c)(3), not by any Bureau action. And, in these scenarios, no "hearing designation" exists. Unwittingly (one must assume), the Letter Ruling's drastic narrowing of the scope of 307(c)(3) to applications designated for hearing casts a continuity cloud over a substantial number of licenses where renewal applications have not been designated for hearing but have been pending for more than eight years.

The Letter Ruling's thin analysis of the language of 307(c)(3) seizes on the provision's single use of the word "hearing" in an attempt to narrow the entire provision's reach to the severely circumscribed universe of license applications *designated* for hearing before an Administrative Law Judge. The Bureau is well aware that only a miniscule number of the thousands of broadcast applications it processes are ever designated for hearing.

In fact, 307(c)(3) is embedded within Section 307, which sits within the confines of the Communications Act of 1934, as amended (the "Act"). The Act, through such provisions as 47 U.S.C. §§ 405 and 402, establishes the structure for agency and judicial reconsideration and review of agency actions, encompassing actions taken by the full Commission or on delegated authority.

8

Within this context, 307(c)(3) (again, headed "Continuation Pending Decision")

mandates, consistent with the most fundamental principles of administrative due process, that

while an FCC decision on a license renewal application remains pending (still subject to agency

or judicial review), the FCC "*shall* continue such license in effect."[18]  The very particular and

sharply circumscribing interpretation the Letter Ruling attempts to impose on 307(c)(3) – that it

applies only to applications "designated for hearing" – is nowhere to be found in 307(c)(3).

Rather, the provision expressly references Section 405 *and* Section 402, which are the basic

provisions allowing for reconsideration and judicial review of *all* agency actions, not just those

subject to a hearing designation order.  The provision's single use of the word "hearing" cannot

bear the weight the Letter Ruling assigns it – of overriding the *considerable* remainder of the

language in 307(c)(3).  That additional language includes the very broad phrases "*any*

administrative *or judicial* hearing," as well as "*and final decision* on such an application *and* the

disposition of *any* petition for *rehearing* pursuant to section 405 or section 402 of this title."

(Emphasis added).  Like the word "hearing," the word "rehearing" is obviously not used literally

in 307(c)(3).  That is because the word "rehearing" is nowhere to be found in Section 405 or

Section 402.  Instead, those provisions cited in 307(c)(3) broadly govern agency

"reconsideration" and judicial "review."  Reconsideration and review have merely been reduced

in 307(c)(3) to the shorthand "rehearing."[19]

---

[18] (Emphasis added).  The word "shall" when used by Congress in a statute is the language of command.  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) ("[t]he Supreme Court and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command.").

[19] It is also noteworthy that 307(c)(3) contains no proviso that the license shall continue in effect *only so long as* the licensee files a new renewal application on top of the one on which the FCC has not yet taken final action.

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) articulates the abiding principle of statutory construction that governs here: "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...."  The Letter Ruling completely ignores this U.S. Supreme Court dictate, reading the lion's share of 307(c)(3)'s language right out of the provision, leaving only this brief paraphrase: "The Commission shall continue in effect any such license designated for hearing."  Clearly, Congress mandated in the broadly worded 307(c)(3) that before the Commission could lawfully order a station seeking license renewal to go off air, the Commission needed to have in hand a final decision, no longer subject to agency reconsideration or judicial review, dismissing or denying that renewal.  Here, that is far from the case.

This reading of 307(c)(3)'s plain language also makes practical sense.  Pulling a broadcast station off the air is the ultimate penalty, with catastrophic effects for the Station and its listeners, particularly listeners in a rural area like Williamsburg, Kentucky, where media options are quite limited.  307(c)(3) ensures that a licensee is permitted to exhaust all administrative remedies before such a hammer falls.  The procedural protection quite literally built into the plain text of 307(c)(3) certainly serves the public interest.

In keeping the Station painfully on the bench, off air, the Commission has placed principal reliance on Parks' failure to comply with a series of requirements the Bureau has ladled on top of the statutory renewal scheme.  That is, the Bureau requires licensees to file second renewal applications on top of still pending renewal applications and holds the sword of Damocles over their head should they fail, for any reason, to comply.[20]

---

[20] The Letter Ruling's contention (at 6) that 47 U.S.C. § 307(c)(1) requires licensees to file renewal applications every eight years is clearly erroneous.  That subsection of Section 307 merely limits the Commission's authority to grant a license for more than eight years.  The

It must be noted that these are Bureau, not full Commission policies, and they do not have the force of decisions made by the Commissioners themselves.[21]  However, even if Bureau policies relied on by the Bureau in this case had been implemented by the full Commission, they could not override the mandate of 307(c)(3).

Any FCC argument that its failure to give the requisite public notice is harmless error founders on the shoals of 307(c)(3).  Just as this Court must strictly follow statutes that establish jurisdiction,[22] so must the Commission strictly follow statutes that protect fundamental licensee due process rights.  The FCC's trying to play the harmless error card is particularly troublesome here, where the agency treats Parks' errors as fatal, even though there can be no reasonable doubt that Parks has merely committed errors.  He obviously did not deliberately ignore Bureau renewal requirements so as to place in jeopardy the very license he is now fighting so hard to save.  To the contrary, he continued to operate the Station to the benefit of his community of license for nearly one and a half years after, unbeknownst to him, the Bureau cancelled the

---

obvious purpose of 307(c)(3) is to explicitly cover any time gap created by the lack of timely Commission action on a renewal application.  Furthermore, the Letter Ruling's finding (at 4) that the 2012 Renewal Application "had no bearing" on cancellation of the Station license has it exactly backwards.  Again, the FCC may not lawfully "cancel" a license which 307(c)(3) commands *be continued in effect.*

[21] *Comcast Corp. v. FCC*, 526 F.3d 763, 770 (D.C. Cir. 2008) ("[U]nchallenged staff decisions are not Commission precedent . . . .").

[22]  In *Council Tree Commc'ns v. FCC*, 503 F.3d 284, 285 (3rd Cir. 2007), the Court dismissed on technical jurisdictional grounds a Petition for Review – it had been filed after release of the Commission order challenged in the case, but before that order's publication in the Federal Register.  Even after the case's merits had been before the Court in the form of a denied stay motion, the Petition for Review was found to be "incurably premature."  Here, the Bureau's cancellation of the Station license, effected before the Commission had finally disposed of the 2012 Renewal Application, must meet the same "incurably premature" fate, given the plain language of 307(c)(3).  Statutes, like facts, are stubborn things.

Station license.  Only in January 2022, on advice of counsel, did the gospel music and related Station programming stop.[23]

The sharp irony suffusing this case is this: The FCC has ordered a gospel-formatted AM station off the air, to the clear detriment of the Station, its listeners, and the public interest, on grounds that renewal application rules created by the Bureau must be strictly observed.  That result, however, can only be sustained if this Court finds that "strict adherence" is a one-way street; that the Bureau need **not** strictly adhere to superseding plain statutory language which mandates that the Bureau "continue in effect" broadcast licenses pending final disposition of pending renewal applications.

## IV.    ISSUANCE OF THE REQUESTED WRIT IS AMPLY JUSTIFIED UNDER WELL-SETTLED PRECEDENT

As noted at the outset, this case fits squarely within the traditional mandamus test, as it involves a transparent FCC failure to fulfill its duty to continue the Station license in effect. Furthermore, Parks clearly "has no other adequate means to attain the relief it desires." *In re Core Communications*, 531 F.3d 849, 860 (D.C. Cir. 2008) (internal quotation marks and alteration omitted).  Here, the Bureau and the FCC General Counsel have been a part of the decisional FCC group which has been keeping the Station off air for more than a year.[24]  At the agency level, Parks' current option is limited to pursuing the Further PFR, a procedural step necessitated by the multiple factual and legal errors in the Letter Ruling.  Under 47 C.F.R. § 1.115(c), Parks must first challenge the Letter Ruling by means of further reconsideration, so as

---

[23] Letter Ruling speculation (at n.29) as to whether Parks would have sought reconsideration in 2020 **if** the Commission had then fulfilled its statutory obligation to give public notice of dismissal of the 2012 Renewal Application cannot distract from, or excuse, the seminal fact underlying this Petition – the Bureau's conceded failure to give the notice.

[24] *See* Attachment 2 hereto.

to give the Bureau an opportunity to pass on all issues.  In the meantime, while that pleading faces an uncertain decisional timeline controlled entirely by the same Bureau that kept Parks waiting (in vain) for a potential positive outcome for nearly a year, **the Station remains off the air**.

It is also important that a court may grant mandamus relief when it "finds compelling equitable grounds."  *In re Medicare Reimbursement Litigation*, 414 F.3d 7, 10 (D.C. Cir. 2005) (subsequent history omitted) (internal quotation marks and alteration omitted).  Again, such grounds exist here, where the residents of a rural Appalachian community have been unlawfully deprived by a federal agency of one of their very few media voices, and an octogenarian minister has had to silence the over-the-air broadcast medium he had been using to carry out his late-life mission.

Another central question in typical mandamus cases is "whether the agency's delay is so egregious as to warrant mandamus."  *Core Communications*, 531 F.3d at 855 (internal quotation marks omitted).  In this case, every day of agency failure to fulfill its clear statutory duty to continue the Station license in effect is one day too many.  Such plainly egregious Bureau delay in this case has been exacerbated by multiple Bureau hints of a potential productive resolution that ultimately turned to dust.

Application of the "hexagonal" mandamus factors set forth in *Telecommunications Action and Research Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir 1984) also strongly supports grant of mandamus: (i) the FCC's keeping the Station off air for more than a year despite 307(c)(3) **defies the rule of reason**; (ii) Congress has in 307(c)(3) provided an **immediate timetable** for agency action – the FCC shall continue underlying licenses in effect, *with no gap in time*, where a license renewal application remains pending; (iii) **local community welfare**

13

suffers every day the Station is kept off air; (iv) there can be no higher **agency priority** than compliance with statutory dictates; (v) the interests of Parks and the Station's listeners **are prejudiced** by every day of delay, while there is no cognizable corresponding prejudice to the FCC's misguided emphasis on preserving its incurably premature license cancellation; and (vi) while there is explicitly no need under the sixth factor for a judicial finding of **agency impropriety**, the FCC's staunch refusal to allow the Station back on the air, and its arbitrary attempt to explain away 307(c)(3)'s plain language of command, is certainly subject to question.

## V.    CONCLUSION

Federal bureaucracies do not take the Hippocratic Oath.  Perhaps they should, because here, the harm has indeed *first* been done, irreparably so.  Now, Court issuance of a writ of mandamus, ordering the FCC to allow the Station back on the air pursuant to 307(c)(3) pending final disposition of the 2012 Renewal Application, is the best this Court can do, at least preventing further harm going forward.  Such relief is respectfully requested.

Respectfully submitted,

**GERALD PARKS**

/s/ *Dennis P. Corbett*
Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
Telecommunications Law Professionals, PLLC
1025 Connecticut Avenue, NW, Suite 1011
Washington, DC 20036
Tel: (202) 789-3115
Email: dcorbett@tlp.law
*Counsel to Gerald Parks*

March 22, 2023

## ADDENDUM OF CIRCUIT RULE 21(d) CERTIFICATES

Pursuant to D.C. Circuit Rules 21(d) and 28(a)(1)(A), on behalf of Petitioner, Gerald Parks, undersigned counsel certifies as follows:

**i.        Parties, Intervenors, and Amici to this Case**

This case is a petition for issuance of a writ of mandamus ordering the Federal Communications Commission to take an action both unlawfully withheld and unreasonably delayed, namely compliance with its statutory mandate to continue in effect Petitioner's license to operate AM broadcast station WEKC pending final administrative and judicial disposition of a currently pending WEKC license renewal application; it is not an appeal of a District Court or administrative decision.  The parties to this case include:

Petitioner – Gerald Parks

Respondent, if ordered (pursuant to D.C. Cir. R. 21(a)) – the United States Federal Communications Commission

**ii.        Related Cases**

There are no related cases beyond those cited in this Petition relating to the Federal Communications Commission's failure to comply with 47 U.S.C. § 307(c)(3)'s mandate that the agency "shall continue in effect" the license of Petitioner's AM station pending final disposition of Petitioner's 2012 license renewal application for that station, including the FCC's denial of Petitioner's Petition for Reconsideration in its February 7, 2023 Letter from Albert Shuldiner, Chief, Audio Division to Dennis P. Corbett, et al., DA 23-107, 1800 B3-ATS.

Date: March 22, 2023

/s/ *Dennis P. Corbett*
Dennis P. Corbett
Email: dcorbett@tlp.law
*Counsel to Gerald Parks*

15

## CERTIFICATE OF COMPLIANCE

1. This Petition for Mandamus complies with the type-volume limitations in Fed. R. App. P. 21(d) because this brief contains 4439 words, excluding those sections exempted by Rule 21(a)(2)(C) and 32(f).  This was determined through the word count feature in Microsoft Office Word 2016.

2. This Petition for Mandamus complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this Petition has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016, Times New Roman 12-point font.

Date: March 22, 2023

/s/ *Dennis P. Corbett*
Dennis P. Corbett
Email: dcorbett@tlp.law
*Counsel to Gerald Parks*

**CERTIFICATE OF SERVICE**

I, Ashley Brydone-Jack, hereby certify that on this 22nd day of March, 2023, I caused the foregoing Petition for Mandamus to be electronically filed with the Clerk of the U.S. Court of Appeals for the District of Columbia Circuit using the Court's CM/ECF system. I further certify that a copy of this Petition has been served on the Federal Communications Commission via first class, postage prepaid U.S. Mail as follows:


P. Michele Ellison*
Federal Communications Commission
45 L St. NE
Washington, DC 20554
michele.ellison@fcc.gov


*/s/Ashley Brydone-Jack*


*Courtesy copy sent via email

17

## **Attachment 1**

**Gerald Parks' April 20, 2022 Petition for Reconsideration**

STAMP & RETURN

Received & Inspected

APR 2 0 2022

FCC Mail Room

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

|  |  |  |
|---|---|---|
| In re: Application of | ) | |
| | ) | |
| Gerald Parks | ) | |
| | ) | FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | ) | Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) | |
| | ) | |
| To: Chief, Audio Division, Media Bureau | ) | |

## PETITION FOR RECONSIDERATION

### GERALD PARKS

By: Dennis P. Corbett
     Michael Lazarus
     Ashley Brydone-Jack
     TELECOMMUNICATIONS LAW
     PROFESSIONALS PLLC
     1025 Connecticut Ave, NW, Suite 1011
     Washington, D.C. 20036
     Telephone: (202) 789-3115
     Email: _dcorbett@tlp.law_

     His Attorneys

April 20, 2022

## TABLE OF CONTENTS

SUMMARY .................................................................................................... ii

I.         BACKGROUND ............................................................................ 3

II.       RECONSIDERATION OF THE ACTIONS IS WARRANTED ..................... 4

III.      MERITS ...................................................................................... 6

IV.     CONCLUSION ......................................................................... 11

## SUMMARY

By this Petition, the Reverend Gerald Parks ("Parks") seeks reconsideration, in context, of the Media Bureau's unexplained and highly unorthodox actions last month, reinstating and granting Parks' 2012 license renewal application for his gospel-formatted AM broadcast station WEKC, Williamsburg, Kentucky ("Station"), an application the Bureau had dismissed in August 2020 without public notice. The Bureau erred by taking these recent actions *without* simultaneously implementing the mandate of Section 307(c)(3) of the Communications Act, which required the Bureau to rescind its prior cancellation of the Station license and allow the Station to resume operations during the pendency of the 2012 renewal application.

The Bureau cancelled the Station license in 2020 after Parks did not file, during the throes of the COVID-19 pandemic, a second renewal application on top of his still-pending 2012 renewal application. But, when the Bureau recently elected to reinstate and grant the 2012 renewal application, the Bureau unquestionably recognized that application's status as pending, subject to agency reconsideration and judicial review. And Section 307(c)(3) unambiguously directs that so long as a broadcast station license renewal application is pending, the Commission "shall continue such [station] license in effect." A *cancelled* license is obviously not *in effect*, mandating Commission rescission of the Station license cancellation here.

In the absence of any explanation on the record of the Commission's recent actions, Parks is left to conjecture that the Commission decision not to simultaneously rescind the cancellation of the Station license and restore the Station's operating authority was taken in reliance on Bureau policy that stations whose renewal applications are still pending at the time the next renewal application would normally be due should file a second application on top of the one pending. But this policy cannot override a statute, and the license cancellation is in

direct conflict with Section 307(c)(3)'s mandate cited above – the Commission may not lawfully cancel a license that, by statutory dictate, continues in effect.

Parks is coupling this Petition with the filing of both: (i) a new renewal application and related waiver request, filed now that the Commission has reinstated the 2012 renewal application and found its grant to be in the public interest; and (ii) an emergency request for authority to resume Station operations.

Grant of all relief requested, relief that is entirely consonant with the plain language of Section 307(c)(3), will manifestly serve the public interest by allowing Parks to resume as quickly as possible his longstanding radio gospel ministry to an underserved area of Appalachia.  The Petition establishes that loss of service from the Station has been devastating not just for Parks, but for the community of Williamsburg and its environs, as well as for local clergy that depend on access to their congregations through the Station, particularly in pandemic times.

Parks respectfully requests favorable Commission action at the earliest possible time.

Before the
**Federal Communications Commission**
**Washington, DC  20554**

| | |
|---|---|
| In re: Application of | ) |
| | ) |
| | ) |
| Gerald Parks | ) |
| | )  FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | )  Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) |
| | ) |
| To: Chief, Audio Division, Media Bureau | ) |

## PETITION FOR RECONSIDERATION

The Reverend Gerald Parks ("Parks"), by his attorneys and pursuant to 47 U.S.C. §

405(a) and 47 C.F.R. § 1.106, hereby seeks reconsideration of the actions taken on March 16,

2022 (the "Actions") by the Federal Communications Commission's ("FCC" or "Commission")

Media Bureau ("Bureau") with respect to AM broadcast station WEKC, Williamsburg,

Kentucky, Facility ID 72790 (the "Station").[1]  In support whereof, the following is shown.[2]

By its Actions, the Bureau has, with no explanatory letter or other written ruling: (i)

reinstated Parks' April 10, 2012 application for renewal of the Station license (the "2012

Renewal Application"), an application the Bureau had *dismissed without public notice* on August

---

[1] The FCC gave public notice of the March 16, 2022 Actions by means of *Broadcast Actions*, Public Notice, Report No. 50200 (MB, rel. Mar. 21, 2022).  This Petition is being submitted within 30 days of that Public Notice and is therefore timely filed.  Parks recognizes that the FCC database currently uses the call sign DWEKC to designate the Station.  By this Petition and related filings described below, Parks seeks to have the "D" removed from the Station's call sign.

[2] Attachment 1 hereto is a timeline of dates relevant to this Petition.

3, 2020, more than 19 months earlier ("2020 Dismissal of the 2012 Renewal Application");[3] and

(ii) granted that reinstated application.[4]  These Actions were taken without simultaneous

rescission of an August 3, 2020 cancellation of the Station license (the "Cancellation") for failure

to file in 2020 an additional renewal application on top of the pending 2012 Renewal

Application.[5]  In other words, the Actions, some ten years after the filing of the 2012 Renewal

Application, without explanation or justification, approve the reinstatement and grant of renewal

for a license that, as a matter of current Commission record, has been and remains cancelled.

As shown below, this Petition presents the Commission with an opportunity, consonant

with the plain language of the Communications Act of 1934, as amended (the "Act"), to

authorize Parks to restore immediately, in clear service of the public interest, with no

countervailing public harm, a vital radio voice that has long benefitted listeners in and around

Williamsburg, Kentucky.

---

[3] A previous entry that had been part of the CDBS record of the 2012 Renewal Application, noting the 2020 Dismissal of the 2012 Renewal Application, has disappeared from public view, replaced with a new note: "Renewal application reinstated to pending status and granted 3/16/2022 - no letter sent."  See *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=1495594&File_number=BR-20120410ABU*.  An application cannot be "reinstated" unless it has first been dismissed or denied, in this case dismissed.  Parks notes that the cursory 2020 Dismissal of the 2012 Renewal Application (with or without public notice) did not comply with the clear statutory requirements for processing renewal applications set forth in 47 U.S.C. § 309(k) (i.e., obligating the Commission to decide whether to grant or deny such an application, and to give notice and opportunity for a hearing before any denial).

[4] Pursuant to 47 U.S.C § 309(k)(1), this renewal grant constitutes an affirmative finding by the Commission that "(A) the station has served the public interest, convenience, and necessity; (B) there have been no serious violations by the licensee of [the Act or FCC Rules]; and (C) there have been no other violations by the licensee…which, taken together, would constitute a pattern of abuse."

[5] See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, Public Notice Comment, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=126050&File_number=BL-19890317AD* (last accessed Apr. 14. 2022).

## I.    BACKGROUND

Williamsburg, the Station's community of license, is a small Appalachian city (2010

Census population 5,245) that serves as the seat of Whitley County, Kentucky. Parks, who is

now 88 years old, acquired the Station more than two decades ago, when he retired as a church

pastor in Norwood, Ohio to devote full time to his then new radio ministry in Williamsburg.[6] He

had operated the Station continuously until late January of this year, when he learned of the

Cancellation, and took it off air. Until February of this year, Parks has not had the benefit of

counsel in Station FCC matters; during time periods relevant to this Petition, the Station

struggled mightily to cope with the widespread negative collateral consequences of the COVID-

19 pandemic.

With the recent termination of Station service in Williamsburg and its environs, the

community has suffered a deep loss. The depth of the damage is reflected in the copy of the

letter of Roddy Harrison, Williamsburg's Mayor, which comprises Attachment 3 hereto. Mayor

Harrison explains: "The loss of [Station] programming cuts deeply, particularly within our

religious communities, where numerous pastors have long relied on WEKC to reach their

members through live and recorded programming aired on the station. Indeed, WEKC's way of

reaching people in their homes over the air takes on outsized importance during the extended

period of the COVID-19 pandemic," where many residents were effectively reduced to shut in

status for extended periods of time. As Mayor Harrison makes clear, a primary way that the

Station has become a "fixture" in Williamsburg is by providing a platform for numerous local

---

[6] *See Rev. Gerald Parks Inducted Into Williamsburg Gospel Barn's Wall of Honor*, News
Journal, Oct. 16, 2019, *https://www.thenewsjournal.net/rev-gerald-parks-inducted-into-wburg-gospel-barns-wall-of-honor/#:~:text=Honor%20Saturday%20evening.-
,Rev.,driving%20them%20around%20the%20country*. Attachment 2 hereto is a description of
the Station provided to the undersigned by the Station.

3

churches and pastors to reach their congregations. This part of the Station's programming is a central part of the locally oriented service it has long provided Williamsburg. As Attachment 2 hereto recites, the Station airs a variety of unique local programs on which Station listeners have long depended (e.g., church services, local announcements, an informal venue for non-retail sales and trades). The Station's contributions to its community of license have not been limited to programming. For example, prior to the last two pandemic-limited summers, WEKC produced and hosted at its own cost an annual July 4 day of live gospel music performances in Williamsburg. The concert attracts a wide array of talent and a broad audience to the city and is also aired on the Station.[7] In short, the Station has for many years filled an important role in Williamsburg, and clearly served the public interest through its gospel programming and extensive community involvement.

## II.    RECONSIDERATION OF THE ACTIONS IS WARRANTED

47 U.S.C. § 405(a) ("Section 405(a)") and 47 C.F.R. § 1.106(b)(1) ("Rule 1.106") both give "any party" to an FCC proceeding the right to seek reconsideration of any agency "action" in that proceeding.[8] Parks, the only party to the 2012 Renewal Application, hereby invokes that right.

Reconsideration of the Actions, considered in their context, is clearly warranted here. Indeed, this proceeding presents questions of fundamental importance found at the intersection

---

[7] *See, e.g.*, Mark White, *Independence Day Festivities planned for Wed., July 3 in Corbin; Thurs., July 4 in W'burg*, News Journal, (July 3, 2019), *https://www.thenewsjournal.net/independence-day-festivities-planned-for-wed-july-3-in-corbin-thurs-july-4-in-wburg/ r*

[8] The statutory right to seek reconsideration also extends to non-parties who are "aggrieved," or whose interests are "adversely affected" by the agency action in question. While this test does not apply to Parks as a party to the proceeding, as explained herein, he has nonetheless been aggrieved and adversely affected by the Actions, considered in context.

of the Commission's processing of renewal applications under the Act, and the FCC's authority

to terminate station licenses. The Actions ostensibly reinstate and grant the 2012 Renewal

Application. But, considered in light of the agency's failure to simultaneously rescind the

Cancellation and its parallel informal insistence that Parks cannot restore service during the

pendency of the 2012 Renewal Application, the Actions have in fact worked a de facto denial of

relief to which Parks is entitled under the Act. By this Petition, Parks asks the Bureau to

conform its Actions to the dictates of the Act by rescinding the Cancellation, allowing the

immediate restoration of Station service to the residents of Williamsburg and its environs, and

processing the new Station renewal application and related waiver request that are being

concurrently filed herewith.

It is noteworthy that this Petition comfortably satisfies multiple tests for seeking full

Commission review. That is, the Actions, viewed in context, are in conflict with statute (e.g.,

Section 307(c)(3), defined below); involve a question of law or policy which has not previously

been resolved by the Commission (e.g., whether the FCC may lawfully maintain the cancellation

of a license that is the subject of a pending renewal application); involve application of a policy

which should be overturned or revised (e.g., the FCC's policy of cancelling radio licenses when a

second renewal application is not filed on top of a still pending one); and involve prejudicial

procedural error (e.g., agency cancellation of a license where no public notice has been given of

an erroneous dismissal of a pending renewal application for that same license).[9]

General public interest considerations also clearly favor grant of this Petition. As noted

above, the Station has long served a vital role in Williamsburg – an underserved small

Appalachian city which has just two other licensed full-power radio stations and no licensed

---

[9] See 47 C.F.R. §§ 1.115(b)(2)(i), (ii), (iii) and (v).

television stations. As Attachment 3 hereto makes plain, the community highly values the programming uniquely provided by the Station. This Petition presents the Commission with the opportunity to allow Parks to quickly *restore* a deeply lamented loss of important local service, in service of the clear dictates of the Act and the overall public interest.

## III.    MERITS

The Bureau clearly erred in reinstating and granting the 2012 Renewal Application without following the dictates of 47 U.S.C. § 307(c)(3) ("Section 307(c)(3)") and simultaneously rescinding the license's Cancellation, which would allow the Station to resume on-air operations and to file for renewal beyond the newly established expiration date. Instead, the highly unorthodox Actions have apparently endeavored to remedy prior Bureau error while still keeping the Station off the air, contrary to the plain language of Section 307(c)(3).

Parks, through counsel, had recently informally asked the FCC to give long overdue public notice of the 2020 Dismissal of the 2012 Renewal Application. The FCC elected instead to take the highly unorthodox Actions. The most logical interpretation of the reasoning behind the Actions appears to be that they are designed to solve the FCC failure to provide public notice with respect to the 2012 Renewal Application[10] while nominally leaving the Station license cancelled, thereby preventing the Station from resuming operations. Consistent with such an approach, Commission Staff has informally advised Parks that, even after the Actions, the Cancellation remains in effect (and the Station must remain off air).

But, the plain language of Section 307(c)(3) does not allow the Commission to reinstate the 2012 Renewal Application *and* keep the Cancellation in place. To the contrary, Section 307(c)(3), which governs broadcast station license terms, directs that "pending any

---

[10] *But see* the last sentence of n. 3 *supra*.

6

administrative or judicial hearing and final decision on such [a renewal] application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, the Commission *shall continue such license in effect*." (Emphasis added).[11] Because the 2012 Renewal Application today remains subject to agency reconsideration and judicial review, this statutory mandate necessarily nullifies the Cancellation. This simple, fundamental principle animates this Petition – a license that the Act directs the FCC to continue in effect cannot lawfully be cancelled by the agency.

With reinstatement of the 2012 Renewal Application and the resultant nullification of the Cancellation, the door has opened to Parks' filing of a new Station renewal application for a term ending August 1, 2028, an action Parks is taking today, with an appropriate waiver request. Today's filing of a new renewal application is clearly appropriate – because it comes within 30 days of public notice of reinstatement and grant of the 2012 Renewal Application, there will be no gap between its filing and the life of the Station license under Section 307(c)(3). And, while the Act precludes the Commission from *granting* a radio broadcast renewal for a term exceeding eight years, nothing in the Act mandates that licensees *file* renewal applications every eight years.[12] Indeed, as discussed below, the Bureau in *Magnolia* entertained and granted a renewal application filed more than fifteen months after a station's previous eight-year term had ended. Furthermore, far from establishing a regime in which licensees must file multiple

---

[11] Sections 405 and 402 "of this title" as used in Section 307(c)(3) refer to statutory provisions governing agency reconsideration and judicial review.  47 C.F.R. § 1.65(a) is consistent with Section 307(c)(3) in that it provides that an application "is pending before the Commission from the time it is accepted for filing by the Commission until a Commission grant or denial of the application is no longer subject to reconsideration by the Commission or to review by any court."

[12] "Upon application therefor, a renewal of such license may be granted from time to time for a term of not to exceed 8 years from the date of expiration of the preceding license...." 47 U.S.C. § 307(c)(1).

pending renewal applications on top of each other, Section 307(c)(3) makes clear that a license must be continued in effect and cannot be treated as expired for however long a renewal application relating to that license is pending.[13]

47 C.F.R. § 73.3539(a) is not inconsistent with Section 307(c)(3). Rule 73.3539(a) requires that renewal applications for broadcast stations be filed "not later than the first day of the fourth full calendar month prior to the *expiration date* of the license sought to be renewed." (Emphasis added).[14] But this language cannot reasonably be read to apply to circumstances like this one, where the 2012 Renewal Application remained pending on April 1, 2020, and no license had been issued to Parks establishing an August 1, 2020 expiration date. The license's last expiration date was August 1, 2012, the 2012 Renewal Application was still pending of August 1, 2020, and Section 307(c)(3) demands that the Station license continue in effect.[15]

While the Commission released *Radio License Expirations*, Public Notice, DA 20-737, on July 15, 2020 listing the WEKC license as one of 18 broadcast licenses held by 18 different licensees that would expire if no renewal application was filed prior to the "date of expiration" of August 1, 2020, Parks was unaware of this Public Notice and to the best of his knowledge the

---

[13] Accordingly, Parks is also filing this day an Emergency Request for Immediate Restoration of Station Operating Authority.

[14] "Expiration" is defined as "the fact of coming to an end or the point at which something ends : TERMINATION." *Expiration, noun*, Merriam-Webster, https://www.merriam-webster.com/dictionary/expiration (last accessed Apr. 19, 2022). A license which continues in effect has obviously not reached the point at which it comes to an end.

[15] Even assuming arguendo that the 2020 Dismissal of the 2012 Renewal Application had been compliant with the Act, because the Commission failed to give public notice thereof, that dismissal did not terminate the pending status of the 2012 Renewal Application. As noted herein, by its Actions, the FCC has now granted the 2012 Renewal Application, *for the first time* establishing an August 1, 2020 expiration date for the Station license. Parks is accordingly submitting this day with the FCC (in paper form due to the agency's failure to rescind the Cancellation) a new application seeking to renew the Station license to August 1, 2028, the maximum length permitted by the Act.

Commission did not send him a copy of it. In any event, as noted above, Parks did not at that time hold a license with an expiration date of August 1, 2020. Rather, he held the pending 2012 Renewal Application, upon which no agency action had yet been taken. This Public Notice did not differentiate between licensees with and without pending renewal applications, and therefore did not address the fundamental issues raised by this Petition.

Parks notes that the Bureau had released a Public Notice on April 15, 2019 (of which Parks was unaware) advising radio station licensees with then-still-pending license renewal applications that they should file another renewal application on top of the one pending,[16] Of course, no such guidance would have been needed if the plain language of the Act required broadcast licensees to file a second renewal application on top of one that was still pending. And, importantly, the Public Notice cites no statute or Rule in support of this advice.[17] In any event, for the reasons set forth in this Petition, the establishment of such procedures and the issuance of such guidance cannot override the plain language of Section 307(c)(3) and cannot justify the dismissal of the 2012 Renewal Application or cancellation of the Station license during the pendency of that application.

Parks also notes that in *Pollack/Belz Communication Company, Inc.*, 29 FCC Rcd 14635 (Med. Bur. 2014), the Video Division adopted a Forfeiture Order applicable to a television station licensee that did not file a new renewal application on top of a still pending one from the prior renewal cycle until two days *after* the generic expiration date of licenses issued to stations

---

[16] *Media Bureau Announces Procedures For 2019-2022 Radio License Renewal Cycle*, DA 19-285, rel. Apr. 15, 2019.

[17] Clear articulation/fair notice by the Commission of the reasoning behind and support for agency "rules of the road" is a bedrock requirement of the Due Process Clause of the Fifth Amendment. *See, e.g., FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).

in the State of Louisiana. *Pollack* was a $2,400 forfeiture case, in which the Video Division

pointedly did *not* cancel that station's license, even though it had expired two days *before* the

licensee filed a new renewal application, which the licensee termed a "supplement" to its still

pending prior cycle renewal application. To the contrary, the FCC granted both the long pending

and "supplemental" renewal applications on the same date in October 2014, prior to issuance of

the Forfeiture Order. Parks notes the starkly disparate treatment afforded him in this case, where

the FCC never gave public notice of the dismissal of the 2012 Renewal Application and

cancelled the Station license a mere two days after August 1, 2020.[18]

In a recent decision, *Magnolia State Broadcasting, Inc.*, Memorandum Opinion and

Order and Notice of Apparent Liability, DA 22-105 (Aud. Div., rel. Feb. 3, 2022), the Audio

Division levied a $7,000 forfeiture on the licensee of AM station WMOX, but made clear its

intention to grant WMOX's related renewal application, one that had not been filed until more

than 15 months after the expiration date of the underlying license.[19] In addition to indicating that

the FCC was favorably disposed toward granting a renewal application submitted so long after

an expiration date, that decision incorporated two rulings which indicate how strongly the FCC

normally disfavors license cancellation as a remedy: the Audio Division (i) elected to treat a

request for reinstatement of the station license filed after the license's expiration date as if were a

properly filed petition for reconsideration; and (ii) declined to find disqualifying the licensee's

failure to apply for or obtain special temporary authority to operate during the *extended* period

---

[18] *See Melody Music, Inc. v. FCC*, 345 F.2d 730 (D.C. Cir. 1965) (the Commission is required to treat similarly situated parties similarly).

[19] The relevant WMOX license expiration date was June 1, 2020. The licensee did not submit an application for renewal of that license until September 25, 2021, *nearly sixteen months* later. *See Magnolia*, 29 FCC Rcd at 14635.

following expiration of the Station's license.  Importantly, *Magnolia* was *not* a case involving a still pending license renewal application from a prior cycle; the licensee of WMOX did not enjoy the protection of the life of its license afforded by Section 307(c)(3).[20]

## IV.    CONCLUSION

For all of the reasons set forth above, Parks respectfully requests that the Bureau reconsider its decision to take the Actions without the simultaneous rescission of the Cancellation and restoration of the Station's license mandated by Section 307(c)(3).  Following such rescission, in order to permit the Station to resume operations to serve the listening public in and around Williamsburg, Kentucky at the earliest possible time, Parks requests expeditious grant of the emergency request for immediate restoration of Station operating authority and grant of the new renewal application filed concurrently with this Petition.

Respectfully submitted,

**GERALD PARKS**

By: /s/ Dennis P. Corbett
Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
TELECOMMUNICATIONS LAW PROFESSIONALS PLLC
1025 Connecticut Ave, NW, Suite 1011
Washington, D.C. 20036
Telephone: (202) 789-3115
Email: *dcorbett@tlp.law*

April 20, 2022               His Attorneys

---

[20] In the prior cycle, the WMOX renewal application was filed on February 1, 2012 and granted on May 25, 2012. *See* WMOX Application for Renewal, CDBS File No. BR-20120201AKO, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/app_det.pl?Application_id=1486289*.

11

**ATTACHMENT 1**

**Timeline of Dates Relevant to This Petition for Reconsideration**

April 10. 2012 – Parks files 2012 Renewal Application

May 14, 2012 – FCC gives public notice of acceptance for filing of 2012 Renewal Application

November 19, 2019 -- FCC gives second public notice of acceptance for filing of 2012 Renewal Application

July 15, 2020 – FCC includes WEKC on public notice listing 18 licensees that did not file a renewal application by April 1, 2020

August 3, 2020 – FCC dismisses 2012 Renewal Application (no public notice of this action ever given)

August 3, 2020 – FCC cancels WEKC license

August 6, 2020 – FCC gives public notice of WEKC license cancellation

March 16, 2022 – FCC reinstates and grants 2012 Renewal Application

March 21, 2022 – FCC gives public notice of reinstatement and grant of 2012 Renewal Application

**ATTACHMENT 2**

**WEKC**

402 Main Street
Williamsburg, Kentucky 40769
(606)549-3000

WEKC (710 AM), is a faith based community involved voice whose primary purpose is to spread the gospel throughout the Whitley, Knox, Laurel, McCreary counties of Kentucky and Campbell County in Tennessee. In conjunction with providing spiritual support, the station also provides a vital source of information for many residents.

The Parks family including the Reverend Gerald Parks, his brother, father and grandfather has a long history of working to spread the gospel in Whitley County and surrounding areas. So when Reverend Gerald Parks found out WEKC was for sale, he felt it would be a means to reach more people in the community. He purchased the station in July, 2000 and converted it from a rock station to a gospel station. It was, and is, his intention that WEKC should become a vital part of the community by providing local news and supporting various activities.

When COVID-19 forced the Governor of Kentucky to close the churches, the staff and management of WEKC decided to implement a program to help the local churches. It was decided that WEKC would give free air time to any pastor who wanted to continue ministering to their congregation while the church buildings were ordered closed. In this way the ministers could reach out to those people who are unable to attend normal church services. This practice continued until the Governor of Kentucky allowed church services to resume.

The listening audience for WEKC consists mainly of older people who rely on WEKC for news and events. Therefore, as a public service, WEKC provides local announcements and reads the local obituaries three times a day. WEKC is the only AM station in the area that provides this service. The Williamsburg newspaper is only published once a week and often the events mentioned are over before the newspaper is delivered.

There is a religious faction of people in the WEKC listening area that do not believe in television or computers. For these people the only source of local news and announcements has been WEKC.

The service area of WEKC is very rural. It is with this in mind, that a program called Tri-County Spotlight was created. It allows listeners to let their neighbors know if they have items to sell or trade. This program has been very popular receiving around 100 calls during the hour and 15 minute program. This is a free service to the listeners and the only restriction is that retail businesses can't advertise.

The clientele for WEKC are programs provided by various churches, both locally and from different locations across Kentucky and surrounding states. They also broadcast commercials that promote local businesses and events.

WEKC supports the community in other ways not related to any specific broadcast. In cooperation with the City of Williamsburg, WEKC has provided music concerts. Partnering with the City of Williamsburg, that graciously agreed to close downtown streets, WEKC set up stages and vending areas to provide free gospel concerts.

WEKC worked with a new Eastern Kentucky program created to address high rates of domestic and sexual violence in the region through education and conversation. The Cumberland River Community Green Dot program has formed a coalition of community members in the Whitley County area to improve efforts at violence prevention. In support of this program, WEKC allowed a mural to be painted on the side of the radio station that was visible from the main streets of Williamsburg.



No matter what other activity or event WEKC is involved with, they will never stray from their primary goal which is to be a blessing to all those who listen to it.

**ATTACHMENT 3**

February 8, 2022

Federal Communications Commission
Washington, DC

Re: **Restoration of WEKC Radio Service to Williamsburg, Kentucky**

Dear FCC:

As the mayor of Williamsburg, Kentucky, I write about a local matter of urgent priority.

I recently became aware of the loss of radio service that had for a long time been provided by the Reverend Gerald Parks to our community over AM Radio Station WEKC. Reverend Parks is a critical part of the fabric of Williamsburg, and his station's vibrant gospel programming has been a fixture here for many, many years.

The loss of that programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic.

As a local government official, I understand and respect the fact that difficult decisions come with the territory. But, in this case, I am asking you to explore whether there is a way to allow WEKC to restore and maintain its presence on the air. Such relief would spare our community from suffering such a profound loss of such an important contributor to our quality of life.

Thank you very much in advance for your consideration of the concerns of Williamsburg and its residents arising from the damaging loss of WEKC service.

My understanding is that Reverend Parks will submit this letter to the FCC as part of a larger filing seeking restoration of WEKC service.

Sincerely,

Roddy Harrison
Mayor, Williamsburg, Kentucky

**Attachment 2**

**Email Thread between FCC Staff and D. Corbett**

**From:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Sent:** Wednesday, February 1, 2023 2:02 PM
**To:** Dennis Corbett <dcorbett@tlp.law>; Holly Saurer <Holly.Saurer@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack
<ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Thanks Dennis. I will be back in touch next week after I have spoken with the general counsel's office and after I have a
better sense of timing.

Al

---

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Wednesday, February 1, 2023 1:30 PM
**To:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Holly Saurer <Holly.Saurer@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack
<ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Thanks for this prompt response, Al; we would appreciate receiving a copy of the decision as
soon as it is available.

Reverend Parks took the station off air in late January 2022, after belatedly learning of the
license cancellation. That fact can be found on p. 3 of the Background section of our April 20,
2022 Petition for Reconsideration in this matter.

Regards,

Dennis

---



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it. This e-mail also should not be relied upon by you as a source of US federal tax advice.

---

**From:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Sent:** Wednesday, February 1, 2023 1:19 PM
**To:** Dennis Corbett <dcorbett@tlp.law>; Holly Saurer <Holly.Saurer@fcc.gov>

**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Hi Dennis – Holly is tied up in meetings but asked me to get back to you right away.  We have a draft decision that is being reviewed by the general counsel's office.  I expect to have their input by the end of this week.  We will work expeditiously to implement any suggestions they have so we can make the decision available to the licensee as soon as possible.  I understand your frustration with the time this has taken.  Please remind me, when did the station go off the air?

Al

---

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Wednesday, February 1, 2023 12:54 PM
**To:** Holly Saurer <Holly.Saurer@fcc.gov>; Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Holly:

It gives me no pleasure to inquire yet again, in February 2023, about status in this case.  We rapidly approach the one-year mark since my firm first became involved in this case, Reverend Parks has turned 89 and continues to suffer greatly from his inability to provide WEKC service to Williamsburg, Kentucky, and Williamsburg and its environs continue to miss the variety of gospel offerings that the AM station had long provided.

We badly need a decision *or*, while the Commission continues to deliberate, an immediate green light to restore service under the plain language of a provision of the Communications Act we have oft cited, 47 U.S.C. Section 307(c)(3) ("Pending any administrative or judicial hearing and final decision on…an application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, the Commission shall continue such license in effect").  We have yet to receive an explanation as to why Section 307(c)(3) does *not* govern the facts that have long obtained here.

Let us know.

Thanks,

Dennis

---



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it. This e-mail also should not be relied upon by you as a source of US federal tax advice.

**From:** Holly Saurer <Holly.Saurer@fcc.gov>
**Sent:** Tuesday, December 20, 2022 8:38 AM
**To:** Dennis Corbett <dcorbett@tlp.law>; Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** Re: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Dennis -
Al is unavailable until the new year, but I wanted to let you know that we are continuing to look at this issue. While unopposed, the case has statutory and precedential implications that we are trying to balance. I understand the frustration over how long this is taking, but please be assured that we are trying to get to a positive outcome.

Best,
Holly

---

**From:** "Dennis Corbett" <dcorbett@tlp.law>
**Date:** Monday, December 19, 2022 at 10:35:56 AM
**To:** "Albert Shuldiner" <Albert.Shuldiner@fcc.gov>, "Holly Saurer" <Holly.Saurer@fcc.gov>
**Cc:** "Michele Ellison" <Michele.Ellison@fcc.gov>, "Michael Lazarus" <MLazarus@tlp.law>, "Ashley Brydone-Jack" <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Al et al.:

After Holly emailed on May 26, 2022 that the Media Bureau would "continue to seek a productive resolution" of the DWEKC issues, we have waited for months for FCC action. At this point, can we please know, in this unopposed case, whether the action that has been on review, if adopted, would be productive from Reverend Parks' perspective?

Our message to you from our email of June 6, 2022 remains in place: "We stand ready to discuss any or all of these issues on an exigent basis."

Thanks much,

Dennis



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it. This e-mail also should not be relied upon by you as a source of US federal tax advice.

**From:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Sent:** Friday, November 4, 2022 4:59 PM
**To:** Dennis Corbett <dcorbett@tlp.law>; Holly Saurer <Holly.Saurer@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Hi Dennis - We have a draft written decision that is working its way through the review/approval process. I know this is frustrating for you, but thanks for your continued patience.

Al

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Thursday, November 3, 2022 12:58 PM
**To:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Holly Saurer <Holly.Saurer@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Al:

As the email trail below indicates, it has been seven weeks since your email of Thursday, September 15, 2022, stating that we would have a response on the WEKC situation by the end of the following week, or by September 23. This latest delay has, as we are sure the Commission can appreciate, added to the accumulating personal costs to the client, which we have previously explained. The Station has now been off air via informal Order for more than eight months. The client strongly desires to resume operations immediately; I'm informed the Station continues to field regular inquiries from distressed listeners about when its important local service will be restored.

Based on our email exchanges, we continue to hope that the FCC is endeavoring to find a "productive resolution" of this situation. In our view, as we have made clear in prior communications, any such solution would have solid grounding in both 47 U.S.C. Section 307(c)(3) and the case law upon which we relied in our July 11, 2022 Supplement to our Petition for Reconsideration.

We would appreciate your decision as soon as possible.

Respectfully,

Dennis



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it.  This e-mail also should not be relied upon by you as a source of US federal tax advice.

**From:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Sent:** Thursday, September 15, 2022 4:06 PM
**To:** Dennis Corbett <dcorbett@tlp.law>; Holly Saurer <Holly.Saurer@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Hi Dennis – I understand your frustration.  Competing vacation schedules and some other commitments got in the way during August.  We are still trying to find a solution to this problem.  I need to have some additional discussions with colleagues in the general counsel's office.  I will get back to you one way or the other by the end of next week.  Thanks for your patience.

Al

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Wednesday, September 14, 2022 5:41 PM
**To:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Holly Saurer <Holly.Saurer@fcc.gov>
**Cc:** Michele Ellison <Michele.Ellison@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Holly and Al:

With what we hope you can understand to be our considerable distress, we are checking in on status.  When Holly replied in her email of May 22, 2022 below that the FCC was seeking a "productive resolution" to the plight of Reverend Gerald Parks and his AM station in Williamsburg, Kentucky, we were grateful and hopeful.  To bolster our position, we subsequently filed a July 12, 2022 Supplement with the FCC, citing case law demonstrating that the Audio Division had reinstated expired radio licenses in the past.

It has now been seven months since we first reached out to the Audio Division about this matter (on February 15 of this year), an interim period during which we believe 47 U.S.C. Section 307(c) has mandated that the Station's license remain in effect, allowing continued

operation during the pendency of a renewal application.  But pursuant to FCC direction, the Station has remained off air all this time, we believe to the detriment of the public interest.

Can you please give us a status update?

We remain available to meet with you on these issues as you see fit and look forward to your reply.

Regards,

Dennis



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it.  This e-mail also should not be relied upon by you as a source of US federal tax advice.

**From:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Sent:** Thursday, July 28, 2022 12:12 PM
**To:** Dennis Corbett <dcorbett@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Dennis – I am following up on this earlier exchange.  I want to let you know that we have not been ignoring this but have been looking at these cases and doing some additional research on the matter.  I know you are anxious to have an answer from us, but this is taking a little more time than I expected due to summer vacation plans.  And I am going to be on vacation the next two weeks as well as some others that are looking at this.  We will pick this up again when we return in mid-August.  I just wanted you to know that we are working on it.

Al

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Wednesday, July 13, 2022 4:12 PM
**To:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Holly Saurer <Holly.Saurer@fcc.gov>; Michele Ellison <Michele.Ellison@fcc.gov>
**Cc:** Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Thanks for this prompt response, Al.  We look forward to hearing back next week.
Regards,
Dennis



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it. This e-mail also should not be relied upon by you as a source of US federal tax advice.

**From:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>
**Sent:** Wednesday, July 13, 2022 4:10 PM
**To:** Dennis Corbett <dcorbett@tlp.law>; Holly Saurer <Holly.Saurer@fcc.gov>; Michele Ellison <Michele.Ellison@fcc.gov>
**Cc:** Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Dennis – Thanks for your email. We will review this filing and the cases you reference. Give us a few days to review this, and then we can discuss scheduling a meeting. I will be back in touch sometime next week after we have had an opportunity to review this new material.

Al

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Wednesday, July 13, 2022 12:39 PM
**To:** Holly Saurer <Holly.Saurer@fcc.gov>; Michele Ellison <Michele.Ellison@fcc.gov>
**Cc:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

All:

We have filed with the Commission in hard copy form the enclosed, self-explanatory Supplement relating to WEKC. I also enclose FedEx confirmation of its delivery in Annapolis yesterday.

We are hoping the Commission will entertain a virtual meeting with us on these various matters. If so, we'll start that ball rolling by asking if there are dates and times in the week beginning July 25 that would work for your side.

The client remains very anxious to restore service to the public at the earliest possible time.

Regards,

Dennis



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it. This e-mail also should not be relied upon by you as a source of US federal tax advice.

---

**From:** Dennis Corbett
**Sent:** Wednesday, June 29, 2022 5:01 PM
**To:** 'Holly Saurer' <Holly.Saurer@fcc.gov>; Michele Ellison <Michele.Ellison@fcc.gov>
**Cc:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Holly:

The rapid approach of the July 4th weekend is particularly poignant for Reverend Parks, as this Holiday has traditionally been the occasion of one of WEKC's signature events in Williamsburg, Kentucky, its sponsorship of a popular day of gospel music performances.

We are all hoping for imminent news of a productive solution that will allow the Station back on the air.

Let us know, and let us know if we can provide anything beyond the cases we sent you earlier this month.

Thanks,

Dennis

---



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it. This e-mail also should not be relied upon by you as a source of US federal tax advice.

---

**From:** Holly Saurer <Holly.Saurer@fcc.gov>
**Sent:** Thursday, May 26, 2022 3:14 PM
**To:** Dennis Corbett <dcorbett@tlp.law>; Michele Ellison <Michele.Ellison@fcc.gov>
**Cc:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** RE: [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

Thank you for your message.  Please be assured that I am well aware of this situation, and have reviewed your pleadings.  MB, in consultation with OGC, has spent a significant amount of time on this issue.  To date we are unable to find a solution that is consistent with our law and precedent, but we will continue to seek a productive resolution.

Best,
Holly

*Holly Saurer*
*Chief of the Media Bureau/Legal Advisor to the Chairwoman*
*Federal Communications Commission*
*(202) 418-7283*

---

**From:** Dennis Corbett <dcorbett@tlp.law>
**Sent:** Thursday, May 26, 2022 2:56 PM
**To:** Holly Saurer <Holly.Saurer@fcc.gov>; Michele Ellison <Michele.Ellison@fcc.gov>
**Cc:** Albert Shuldiner <Albert.Shuldiner@fcc.gov>; Michael Lazarus <MLazarus@tlp.law>; Ashley Brydone-Jack <ABrydoneJack@tlp.law>
**Subject:** [EXTERNAL]: Restoration of DWEKC, Williamsburg, KY Service

You don't often get email from dcorbett@tlp.law. Learn why this is important

CAUTION: This email originated from outside of the Federal Communications Commission. Do not click on links or open attachments unless you recognize the sender and trust the content to be safe. If you suspect this is a phishing attempt, please use the 'Report Message' feature in Microsoft Outlook or forward the email to the NSOC.

Holly and Michele:

I write to bring attention to an urgent matter we have been pursuing since February of this year on behalf of a radio client, Reverend Gerald Parks ("Parks"), whose Williamsburg, Kentucky AM station ("Station") currently carries the call sign DWEKC in the Commission's database.   The D was added at the front of the call sign when Parks did not file a license renewal application on or before August 1, 2020, and the Commission cancelled the license.  Parks only became aware of the cancellation in late January of this year, when he immediately took the Station off air and reached out to us for help.

I have enclosed several filings we have made with the Commission on Parks' behalf which make the case for immediate restoration of Station service. The fundamental provision on which we rely is 47 U.S.C. § 307(c)(3) which mandates that the Commission "shall continue…in effect" a broadcast station license that is subject to a pending renewal application.  In this case, the Station has pending before the Commission a renewal application for the Station filed in 2012, as well as another (enclosed) renewal application filed recently with a waiver request.   Insofar as we are able to determine, the plain language of Section 307(c)(3) preserves the license's effectiveness so long as a renewal application remains pending, which in this case authorizes restoration of Station service.  We therefore renew here our request for Commission approval of that immediate restoration.

It is our understanding that the Commission has issues to sort with respect to DWEKC and its renewal applications going forward, and that Parks stands ready to work through any such issues.  It is also our understanding, however, that until Parks learned of the Station license cancellation, he was focused on his life's work of providing vital gospel radio programming to his small Appalachian community, as described in the enclosures.  We are informed that his inability to provide that service continues to take a devastating daily toll on him, while Station listeners in Williamsburg and its environs are experiencing concurrent deep loss.

Given the exigent circumstances, we ask for immediate restoration of the Station's operating authority pursuant to Section 307(c)(3), or an explanation as to why Section 307(c)(3) does not control here.

We very much appreciate your prompt attention to this matter.  Obviously, time is of the essence.

Regards,

Dennis



**Dennis P. Corbett, Member**
(o) 202.789.3115 | (m) 301.613.3601 | dcorbett@tlp.law
1025 Connecticut Ave, NW, Suite 1011, Washington DC 20036
vCard | Bio | www.tlp.law

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender and delete the message and any attachments without printing, copying or further disseminating it.  This e-mail also should not be relied upon by you as a source of US federal tax advice.

## Attachment 3

**February 7, 2023 Letter from Albert Shuldiner, Chief, Audio Division to Dennis P. Corbett, et al., DA 23-107, 1800 B3-ATS**



# Federal Communications Commission
## Washington, D.C. 20554

February 7, 2023

DA 23-107
*In Reply Refer to:*
1800B3-ATS
Released February 7, 2023

Dennis P. Corbett, Esq.
Michael Lazarus, Esq.
Ashley Brydone-Jack, Esq.
Telecommunications Law Professionals PLLC
1025 Connecticut Ave, NW, Suite 1011
Washington, DC 20036
(sent by electronic mail to: dcorbett@tlp.law)

In re:  **Gerald Parks**
DWEKC(AM), Williamsburg, KY
Facility ID No. 72790
Application File No. BR-20120410ABU

**Petition for Reconsideration**

Dear Counsel:

We have before us the Petition for Reconsideration filed by Gerald Parks (Parks) on April 20, 2022 (Petition), seeking reinstatement of his license for Station DWEKC(AM), Williamsburg, Kentucky (Station); the "Emergency Request" filed by Parks on April 20, 2022 (Request); and a "Supplement to the Petition for Reconsideration" filed by Parks on July 12, 2022 (Supplement). For the reasons set forth below, we (i) dismiss the Petition as untimely to the extent it seeks reconsideration of the cancellation of the Station's license and reinstatement of that license; (ii) grant in part and deny in part the Petition to the extent it alleges the Bureau erred in reinstating and granting the 2012 Renewal Application; (iii) dismiss the Emergency Request as moot; and (iv) dismiss the Supplement as untimely.

*Background.* Parks filed a license renewal application for the Station during the prior renewal cycle[1] on April 10, 2012.[2] The Media Bureau (Bureau) withheld action on the 2012 Renewal Application because: (1) the Enforcement Bureau was conducting an investigation into the Station's compliance with section 73.3526 (Public File Rule) of the Commission's rules (Rules);[3] and (2) Parks was delinquent in paying his regulatory fees and was in "red light" status with the Office of Managing Director. On April 25, 2017, the Bureau staff emailed Parks and informed him that the Enforcement Bureau had completed

---

[1] The prior renewal cycle for radio stations ran from 2011 to 2014. *See Media Bureau Announces Revisions to License Renewal Procedures and Form 303-S; Radio License Renewal Cycle to Commence on May 2, 2011*, Public Notice, 26 FCC Rcd 3809 (MB 2011).

[2] Application File No. BR-20120410ABU (2012 Renewal Application).

[3] *See Gerald Parks*, Notice of Apparent Liability for Forfeiture and Order, 28 FCC Rcd 15 (EB 2013); Forfeiture Order, 30 FCC Rcd 7038 (EB 2015) (finding that Parks had failed to comply with the Public File Rule by failing to maintain issues/programs lists in the Station's public inspection file).

its investigation, but that the red light hold remained, and that Parks was required to amend the 2012 Renewal Application, in which he had certified that he had complied with the Public File Rule, a certification which the Enforcement Bureau's investigation had determined was not accurate.[4]  Parks took no action to either resolve the redlight hold or to amend the 2012 Renewal Application.

The current renewal cycle ran from 2019 until early 2022,[5] and license renewal applications for stations in Kentucky were due on April 1, 2020.[6]  The *Renewal Procedures Public Notice* explicitly warned "Licensees with pending applications from the prior renewal cycle also are subject to these filing requirements."  No renewal application for the Station was filed by that deadline,[7] and on July 15, 2020, the Bureau issued a Public Notice stating that the Station's license would expire on August 1, 2020, if Parks did not file a renewal application.[8]  Parks did not file a renewal application by that deadline. Finally, on August 6, 2020, the Bureau issued a public notice stating that the license for the Station had been cancelled.[9]  Parks did not seek reconsideration.  The Bureau also dismissed the 2012 Renewal Application on that day in the Commission's database, CDBS, but did not issue a separate public notice announcing that action.  Subsequently, on March 16, 2022, after Parks' counsel contacted the Bureau staff,[10] the Bureau reinstated and granted the 2012 Renewal Application, but the accompanying public notices did not give any explanation for these actions.[11]

On April 20, 2022, Parks filed the Petition.  Parks argues that the Bureau erred in reinstating and granting the 2012 Renewal Application but not also simultaneously rescinding the cancellation of the Station's license, claiming that this was mandated by section 307(c)(3) of the Act.[12]  Parks states that his counsel contacted the Bureau staff regarding issuing a public notice of the dismissal of the 2012 Renewal Application, and that the reinstatement and grant of the 2012 Renewal Application was "designed to solve the FCC failure to provide public notice with respect to the 2012 Renewal Application while nominally leaving the Station license cancelled.".[13]  Parks further argues that section 307(c)(3) of the Act mandates that his license continues in effect so long as the 2012 Renewal Application remains subject to agency

---

[4] Email from Michael Wagner, Assistant Chief, Audio Division, FCC Media Bureau, to Linda Hugen and Gerald Parks (Apr. 25, 2017, 8:51 AM EDT).

[5] *See Media Bureau Announces Procedures for 2019-2022 Radio License Renewal Cycle*, Public Notice, 34 FCC Rcd 2304 (MB 2019) (*Renewal Procedures Public Notice*).

[6] 47 CFR 73.3539(a).

[7] The Bureau staff sent two e-mails to Parks advising him to file a renewal application.  *See* Email from Dana Butler, Audio Division, FCC Media Bureau, to Gerald Parks (Apr. 8, 3:41 PM EDT); Email from Dana Butler, Audio Division, FCC Media Bureau, to Gerald Parks (Apr. 17, 2020 2:27 PM EDT).  Parks does not allege he did not receive these emails.

[8] *Radio License Expirations*, Public Notice, 35 FCC Rcd 7007 (MB 2020) (*Expiration Warning Public Notice*).

[9] *Broadcast Actions*, Public Notice, Report No. 49796 (MB Aug. 6, 2020) (*Cancellation Public Notice*).

[10] Petition at 6.

[11] *Broadcast Applications*, Report No. 30200 (MB Mar. 21, 2022); *Broadcast Actions*, Report No. 52000 (MB Mar. 21, 2022).

[12] Petition at 6 (citing 47 U.S.C. 307(c)(3) ("Pending any administrative or judicial hearing and final decision on such an application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, the Commission shall continue such license in effect.")).

[13] Petition at 6. Parks notes that his counsel was informed by the staff that the license cancellation remained in effect.  *Id*.

reconsideration and judicial review.[14]  Parks argues that the reinstatement of the 2012 Renewal Application required the Bureau to reinstate the license for the Station, which in turn affords him the opportunity to file the required license renewal application.[15]

Parks also argues that he was not aware of the *Expiration Warning Public Notice,* but he was nonetheless not required to file a renewal application for the 2019-2022 renewal cycle because the 2012 Renewal Application was still pending, and therefore he did not have a license that expired on August 1, 2020.[16]  Parks argues that the *Renewals Procedures Public Notice,* of which he was also unaware of, provides no authority for the requirement that stations with pending renewal applications file an additional application for the 2019-2022 renewal cycle, and that such a requirement contradicts the Act.[17]

Parks cites to the Bureau's decisions in *Pollack/Belz Communications Company, Inc.* as an example of the Video Division accepting a renewal application filed days after the expiration of license,[18] and *Magnolia State Broadcasting, Inc.*, as illustrative of the Audio Division accepting a renewal application sixteen months after the expiration of the station's license.[19]  In the Supplement,[20] Parks cites to four additional decisions in support of his argument that the Bureau can reinstate an expired license years after cancellation and accept an untimely renewal application: *Pinebrook Corporation*, *R&M Broadcasting Company*, *Media Associates, Inc.*, and *Schweitzer Media, Inc.*[21]

*Discussion*.  Section 405 of the Act, and section 1.106 of the Rules require any petition for reconsideration to be filed within thirty days of the date upon which the Bureau gives public notice of the decision.[22]  The Commission generally lacks the authority to extend or waive the statutory 30-day filing period for petitions for reconsideration.[23]

---

[14] Petition at 6-7.

[15] Petition at 7.

[16] Petition at 8-9.

[17] Petition at 9.

[18] *Pollack/Belz Communications Company, Inc.*, Forfeiture Order, 29 FCC Rcd 14635 (MB 2014) (*Pollack/Belz*).

[19] *Magnolia State Broadcasting, Inc.*, Memorandum Opinion and Order and Notice of Apparent Liability, DA 22-105 (MB 2022) (*Magnolia*).

[20] Parks states in the Supplement, "[to] the extent leave to file this Supplement is required, Parks respectfully requests that it be granted."  Supplement at n.1.  We interpret this as a request to waive section 1.106(f) of the Rules. *See* 47 CFR § 1.106(f) ("[t]he petition for reconsideration *and any supplement* thereto shall be filed within 30 days from the date of public notice of the final Commission action.").

[21] *Pinebrook Corporation*, Memorandum Opinion and Order and Notice of Apparent Liability for Forfeiture, 31 FCC Rcd 11976 (MB 2016); *R&M Broadcasting Company*, Memorandum Opinion and Order and Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 10336 (MB 2011); *Media Associates, Inc.*, Memorandum Opinion and Order and Notice of Apparent Liability for Forfeiture, 22 FCC Rcd 4085 (MB 2007); *Schweitzer Media, Inc.*, Memorandum Opinion and Order and Notice of Apparent Liability for Forfeiture, 22 FCC Rcd 4095 (MB 2007).

[22] 47 U.S.C. § 405(a), 47 CFR § 1.106(f).

[23] *See Reuters Limited v. FCC*, 781 F.2d 946, 951-52 (D.C. Cir. 1986) (express statutory limitations barred the Commission from acting on a petition for reconsideration that was filed after the due date).

Initially, we note that Park's filings involve two separate sets of actions by the Bureau—the *Cancellation Public Notice*, which cancelled the Station's license and became final in September 2020,[24] and the staff's March 2022 reinstatement and grant of the 2012 Renewal Application, which had no effect on the Station's already cancelled license.  In this case, the *Cancellation Public Notice,* which was issued on August 6, 2020, served as formal notification to Parks that the Commission cancelled the Station's expired license.[25]  Under the Commission's Rules, if Parks sought reconsideration of the *Cancellation Public Notice*, he was required to file a petition for reconsideration or application for review of the *Cancellation Public Notice* and the cancellation of the Station's license by September 8, 2020.[26]  Parks failed to file the required petition for reconsideration or application for review by that date, and the cancellation of the Station's license was final as of September 15, 2020.[27]  Parks' arguments regarding the 2012 Renewal Application do not alter the finality of the license cancellation because the status of the 2012 Renewal Application had no bearing on the 2020 cancellation of his license for failure to file a 2020 renewal application.  We therefore dismiss the Petition as untimely to the extent it seeks reconsideration of the cancellation of the Station's license and reinstatement of that license.[28]

We reject Parks' argument that the Petition should be considered timely because of the Bureau's failure to issue a separate public notice of the dismissal of 2012 Renewal Application.  Any error in not giving public notice of the dismissal of the 2012 Renewal Application was harmless because the dismissal of the 2012 Renewal Application had no impact on the status of the Station's license, which expired by its own terms and was formally cancelled in the *Cancellation Public Notice*.[29]  Rather, as clearly stated in the *Expiration Warning Public Notice*, the reason for the cancellation of the Station's license was Parks' failure to file a renewal application in 2020.[30]  Moreover, the *Cancellation Public Notice* provided Parks

---

[24] 47 CFR § 1.117(a) (providing for 40 days after public notice of the Bureau's decision for the Commission on its own motion to order the record before it for review)..

[25] *See* 47 CFR § 1.4(b)(4) (defining the term "public notice" and stating that "[i]f the full text of an action document is not to be released by the Commission, but a descriptive document entitled 'Public Notice' describing the action is released, the date on which the descriptive 'Public Notice' is released.").

[26] The 30-day period ran on Saturday, September 5, 2020.  Because Saturday, Sunday, and Monday, September 7, 2020 (Labor Day), were holidays as defined by the Rules, a petition for reconsideration or application for review was due on the first business day after September 5, 2020, which was Tuesday, September 8, 2020.  *See* 47 CFR § 1.4(e)(1).

[27] 47 CFR § 1.117(a).

[28] *See Virgin Islands Telephone Corporation v. FCC*, 989 F.2d 1231, 1237 (D.C. Cir. 1993) (upholding the Commission's refusal to entertain a petition for reconsideration where the petition had been filed one day late, and extenuating circumstances did not prohibit the petitioner from filing within the prescribed time limits).  *See also Pueblo Radio Broadcasting Service*, Memorandum Opinion and Order, 6 FCC Rcd 1416 (1991) (dismissing petition for reconsideration that was filed one day late); *Metromedia, Inc.*, Memorandum Opinion and Order, 56 FCC 2d 909 (1975) (same); *Panola Broadcasting Co*., Memorandum Opinion and Order, 68 FCC 2d 533 (1978) (same).

[29] Given that Parks, by his own admission, was unaware of the *Procedures Public Notice*, the *Expiration Warning Public Notice*, and the *Cancellation Public Notice* (Petition at 9, 8, and 3), ignored the Bureau's 2017 email, and ignored both of the Bureau's 2020 emails, it strains credulity to believe that Parks would have responded to a public notice announcing the dismissal of the 2012 Renewal Application.

[30] *Expiration Warning Public Notice*, 35 FCC Rcd at 7007 ("The following stations failed to file license renewal applications and their licenses will expire as of August 1, 2020, provided no renewal application is received by midnight on the date of expiration . . .").

ample notice that his license had been cancelled, and Parks had constructive notice of this action.[31]  Parks fails to offer any justification for his failure to respond to the *Expiration Warning Public Notice* or the *Cancellation Public Notice*.[32]

With regard to the Petition's claims concerning the Commission's second set of actions—the reinstatement and grant of the 2012 Renewal Application—we grant the Petition in part to the extent it alleges the Bureau erred in reinstating and granting the 2012 Renewal Application, but we deny the Petition to the extent it claims that these erroneous actions somehow allow Parks to file an untimely petition for reconsideration of the now-final 2020 cancellation of the Station license or to file a renewal application now for the 2020-2028 license term when such application was due in 2020.  Initially, we rescind the reinstatement and grant of the 2012 Renewal Application, which were done without any explanation.  The 2020 dismissal of the 2012 Renewal Application was a ministerial action triggered by the cancellation of the Station's license.[33]  The staff properly dismissed that application in 2020 because the Station's license had expired on August 1, 2020, because he failed to file a renewal application for the August 1, 2020 to August 1, 2028 renewal term.  Upon the cancellation of the Station's license, the 2012 Renewal Application became moot because there was no license to renew.  Accordingly, we rescind our erroneous reinstatement and grant of the 2012 Renewal Application.

On alternative and independent grounds, even if we accept Parks' argument that the dismissal of the 2012 Renewal Applications was not final, the status of the 2012 Renewal Application did not afford Parks a right to seek reconsideration of the cancellation of his license, because that action was final as of September 15, 2020, forty days after release of the *Cancellation Public Notice* formalizing cancellation of the license on account of Parks' failure to file a 2020 renewal application.[34]  We reject Park's argument

---

[31] *Pollack/Belz*, 29 FCC Rcd at 14637, para 8 (citing *High Country Communications*, Memorandum Opinion and Order, 4 FCC Rcd 6237 (1989) (issuance of a public notice provides constructive notice to all affected licensees and Bureau is not required to mail a separate copy of public notices)).

[32] To the extent that Parks notes he was not represented by counsel until February of 2022 (Petition at 3), it is well settle that a licensee's failure to obtain counsel does not excuse it from complying with our Rules.  *Eagle Broad. Group, Ltd.*, Memorandum Opinion and Order, 23 FCC Rcd 588, 594-95, para. 13 (2008) (applicant's pro se status did not exempt it from complying with Commission rules or statutory provisions); *Mandeville Broad. Corp.*, Memorandum Opinion and Order, 2 FCC Rcd 2523, 2524, para. 7 (1987) ("[P]ro se parties do assume the responsibility of conforming with the Commission's Rules and policies.").

[33] *See, e.g., Terry Keith Hammond*, Letter Order, 22 FCC Rcd 18899 (MB 2007) (dismissal of pending license renewal application and deletion of station call sign, following ALJ order dismissing application, is a ministerial action). The Bureau routinely dismisses any pending applications, including renewal applications, associated with a station upon the cancellation or expiration of a station's license.  *See, e.g., Mt. Rushmore Broadcasting, Inc.*, Letter Order, 32 FCC Rcd 3924 (MB 2017) (dismissing license renewal application where station's license had automatically expired under section 312(g)); *Inca Communications, Inc.*, Letter Order, 31 FCC Rcd 7087 (MB 2016) (affirming dismissal of a license renewal application as moot where a station's license had automatically expired under section 312(g)).  We reject Park's argument that the dismissal of the 2012 Renewal Application did not meet the requirements of section 309(k) of the Act.  Petition at n.3 (citing 47 U.S.C. § 309(k)).  Section 309(k)(3) requires a hearing before *denying* a renewal application for failing to meet the renewal requirements in Section 309(k)(1).  47 U.S.C. § 309(k)(3).  Here, the Bureau did not *deny* the 2012 Renewal Application, thus Section 309(k)(3) does not apply.  Rather, the Bureau *dismissed* the 2012 Renewal Application when it was rendered moot because of Parks' failure to file the required renewal application by August 1, 2020.

[34] 47 CFR § 1.117(a); *see also Riverside Youth & Rehabilitation*, Memorandum Opinion and Order and Notice of Apparent Liability for Forfeiture, 23 FCC Rcd 10360, 10363, para. 7 (MB 2008) (rejecting allegations raised in a petition to deny that were substantially based on issues relating to a granted application that had become final under section 1.117(a)).

that he was not required to file a renewal application for the Station's 2020-2028 license term based on the theory that his 2012 Renewal Application for the Station's 2012-2020 license term was still pending. The Bureau considered and rejected this argument in *Pollack/Belz*, where it held that a licensee must file a renewal application for the current renewal cycle, even if its renewal application from a prior cycle remains pending, because the Commission can only grant a renewal application for a period of 8 years under section 307(c)(1) of the Act.[35] Thus, requiring a licensee to file a renewal application for a subsequent term while a prior renewal application is pending is required to comply with section 307(c)(1).

We note that not only was Parks required to file a second renewal application in 2020, but even if Parks is correct that the 2012 Renewal Application remained pending at that time, had the Bureau granted the 2012 Renewal Application after the Station's August 1, 2020 expiration date, the Bureau would have issued Parks an expired license, because the 2012 Renewal Application was only for a term from August 1, 2012 until August 1, 2020.[36] Thus, even if we accept Parks' argument and had the authority to grant the 2012 Renewal Application, the Station's license still expired in 2020 due to the licensee's failure to file a 2020 renewal.[37]

Additionally, we find that each Bureau decision Parks cites is distinguishable from the one at hand. Park's selection of cases illustrates that he misunderstands the Bureau's processing policy for handling renewal applications filed after a license has expired. As discussed in *Atlantic City Board of Education*, "[t]he Bureau treats a broadcast license as having been cancelled only after it has issued a letter, public notice, or both, affirmatively stating that the license has been cancelled. Such Bureau action begins the period for filing a petition for reconsideration or an application for Commission review of the Bureau's order."[38] If the Bureau does not issue a letter or public notice stating that a station's license has expired, the licensee may indeed file a renewal application at any time after the authorization has expired. But once such a notice is given, as was here, the Bureau will only accept a renewal application for 30 days, consistent with the 30 day period for petitions for reconsideration.[39]

---

[35] *Pollack/Belz*, 29 FCC Rcd at 14636-37, paras. 6-8 (citing 47 U.S.C. § 307(c)(1)).

[36] *See id.* at 14636-37, paras. 6 ("Continued operation of a station by a licensee as a result of a pending license renewal application does not change the stated expiration date of the station's prior license or permit the Commission to grant a new license for a period longer than eight years from that date. Such an interpretation would require more than a change in Commission rules or policy; it would require a change in the language of the Act itself.").

[37] Moreover, as noted above, the 2012 Renewal Application was held because of Park's failure to pay the required regulatory fees and his failure to amend the application to correct his certification that he had complied with the public inspection file rules, as requested by the Bureau staff. Under Parks' theory, his own failure to comply with the Rules excused him from timely filing a renewal application during the subsequent renewal cycle. We reject this novel suggestion, which would reward licensees that fail to meet their financial obligations and comply with the Rules.

[38] *Atlantic City Board of Education*, Memorandum Opinion and Order, 31 FCC Rcd 9380, 9383, para. 9 (2016). Moreover, as noted by both the Commission in affirming the Bureau's underlying decision and the D.C. Circuit in affirming *Atlantic City*, the Bureau had taken steps to monitor license expirations at renewal time to reduce the possibility of renewal applications being filed after the expiration of a license. *Press Communications LLC v. Federal Communications Commission*, 875 F.3d 1117, 1124 (D.C. Cir. 2017).

[39] *See, e.g., Christian Family Network, Inc.*, Memorandum Opinion and Order, 31 FCC Rcd 2459 (2016) (upholding dismissal of renewal application filed more than four years after license expiration and more than two and one-half years after Bureau issued cancellation notice to licensee and public notice of cancellation*); Hill Broadcasting Company, Inc.*, Memorandum Opinion and Order, 30 FCC Rcd 10578 (2015) (affirming Bureau dismissal of

In *Pollack/Belz*, the Bureau never issued a public notice or letter cancelling the subject station's license because the licensee filed the required license renewal application two days after the license expired, which, because the license expired on a Saturday, was the first business day after expiration in which the licensee could have filed such an application.[40]  Here, Parks never filed such a renewal application before the Bureau issued the *Cancellation Public Notice*, or within 30 days of that action, and was not similarly situated to the licensee in *Pollack/Belz*.  In *Magnolia*, the licensee sought reinstatement within a week of the Bureau issuing a public notice cancelling the Station's license, well within the thirty day period for filing a petition for reconsideration.[41]  Here, Parks did not seek reinstatement until well over a year after the Bureau gave public notice of the cancellation of his license and after the license cancellation was final.  Notably, *Magnolia* is the only decision Parks cites that involves a renewal filed during the 2019-2022 renewal cycle, and the Bureau observed precisely the same procedures as it applied to Parks: issuing a warning public notice prior to the expiration of the Station's license, then issuing a separate public notice within days of the expiration of the license.[42]  We thus reject Park's argument that he has been afford disparate treatment from other licensees.  Rather, he was afforded precisely the same treatment as every licensee under the Bureau's license renewal application processing policy.

Likewise, the four cases cited in the Supplement are distinguishable.[43]  In *Pinebrook Corporation*, the Bureau dismissed by public notice the licensee's initial renewal application for the 2003-2006 renewal cycle because of a red light issue.[44]  However, the Bureau did not issue a letter or public notice stating that the license for Station WINW(AM) had been cancelled.  Accordingly, consistent with the Bureau's policy, the licensee was able to file a new renewal application years after the Bureau dismissed its initial renewal application.  In contrast, here, the Bureau in fact affirmatively cancelled the license for the Station and gave public notice of that action. Parks failed to timely seek reconsideration of that cancellation action.

In *R&M Broadcasting Company*, the Bureau dismissed by letter and public notice the licensee's initial renewal application for the 2003-2006 renewal cycle because of a redlight issue.[45]  In those actions, the Bureau affirmatively cancelled the license for Station KJCB(AM).  However, the licensee timely

---

petition for reconsideration of expired license where the Bureau gave public notice of that action and the licensee filed a petition for reconsideration more than 30 days after the release of the public notice).

[40] *Pollack/Belz,* 29 FCC Rcd at 14636, para. 5.  The Station's license expired on Saturday, June 1, 2012.  The required renewal application was filed June 3, 2012, which was the first business day after the expiration date.

[41] *Magnolia* at 1, para. 2.

[42] *Id.*  In *Magnolia*, the station's license expired on June 1, 2020, the Bureau issued a warning public notice in May 2020, and issued a separate public notice cancelling the station's license on June 5, 2020.  *See Radio License Expirations*, Public Notice, 35 FCC Rcd 4784 (MB 2020); *Broadcast Actions*, Public Notice, Report No. 49753 (MB 2020).

[43] The Supplement is untimely filed and we dismiss it as such.  *See* 47 CFR 1.106(f) ("[t]he petition for reconsideration *and any supplement* thereto shall be filed within 30 days from the date of public notice of the final Commission action") (emphasis added).  Parks provides no explanation as to why he was not able to provide these cases in the Petition.  However, in the interest of having a complete record, we will briefly address the cases presented therein.

[44] *Pinebrook Corporation*, 31 FCC Rcd at n.5.  *See also  Broadcast Actions*, Public Notice, Report No. 45903 (MB 2005).

[45] *R&M Broadcasting Company*, 26 FCC Rcd at 10337-38, paras. 3-4.

sought reconsideration of the cancellation of its license.[46]  Here, Parks did not timely seek reconsideration of the *Cancellation Public Notice*.

In *Media Associates Inc.*, although Station KBJM(AM)'s license expired on April 1, 2005, the Bureau did not issue a letter cancelling the station's license until June 27, 2006.[47]  The licensee filed a renewal application within 30 days of the Bureau's action cancelling the station's license.  Similarly, in *Schweitzer Media, Inc.*, the Bureau never issued a letter or public notice affirmatively cancelling the license of Station KNDC(AM).  Thus, the Bureau was able to accept the licensee's renewal application even though it was filed a year after the license had expired.  Here, Parks did not file a renewal application for the 2019-2022 renewal cycle until 18 months after the Bureau gave public notice that the Station's license had been cancelled.

The Bureau has no authority to reinstate a cancelled license once the 30-day statutory period for seeking reconsideration has elapsed.[48]  Reinstating cancelled authorizations that have become final would frustrate the goal of administrative efficiency.[49]  It would also be prejudicial to existing licensees that seek to modify their facilities.  Finally, it would discourage future applicants for new facilities through competitive bidding or comparative hearings, as authorizations would be clouded by the possibility of challenges to a cancelled license in perpetuity by a former licensee.[50]  Even assuming the Bureau erred in not giving public notice of the dismissal of the 2012 Renewal Application, it nonetheless correctly cancelled the Station's license due to the failure to file a 2020 Renewal Application.  No action on the 2012 Renewal Application for the 2012-2020 license term can undo the cancellation of the Station's license, which was based on the Station's failure to file a renewal application for the 2020-2028 license term.  Accordingly, we affirm our cancellation of the Station's license and reject the Station's requested relief.

Finally, assuming for the sake of the argument that Parks' Petition for Reconsideration of the Bureau's erroneous grant of 2012 Renewal Application meant that application remained non-final, we reject Parks' claim that section 307(c)(3) requires the Commission to continue the license in effect

---

[46] *Id*. at para 3 ("Upon receipt of the *License Expiration Letter*, the Licensee . . . *timely* filed a petition for reconsideration.").

[47] *Media Associates Inc.*, 22 FCC Rcd at 4085-86, para 2.

[48] Moreover, the Commission lacks authority to do so if it does not order the record before it for review within 40 days after public notice of the Bureau's decision.  47 CFR § 1.117(a).

[49] *CWH Broadcasting, Inc*., Letter Order, 27 FCC Rcd 2920, 2922 (MB 2012) ("reopen[ing] long-final Commission actions would undercut the goals of administrative efficiency and finality that underlie the statutory limits on seeking reconsideration").

[50] *See Crystal Broad. Partners,* Memorandum Opinion and Order, 11 FCC Rcd 4680, 4680, para. 6 (1996) ("Strict adherence to the principle of administrative finality in licensing matters advances the public interest.  This policy promotes the prompt initiation of service without undue delay.  We are sensitive to the legitimate expectation of broadcasters and lenders that the Commission will enforce reconsideration and review deadlines, and recognize that consistent application of the rules establishing finality advances the orderly operation of the media transactional marketplace."); *see also G.I.G. of North Dakota*, Letter Order, 35 FCC Rcd 5373, 5381 (MB 2020) (reinstating expired licenses would "cast into doubt the finality of all license cancellations, which in turn hinders the ability of the Commission to fulfill its statutory obligations, and to include such spectrum in any potential future auction."); *Guam Power II*, Memorandum Opinion and Order, 33 FCC Rcd 11273, 11276 (2018) (enforcement of filing deadlines promotes finality and administrative efficiency).  In the present case, for instance, the Station's call sign has been reassigned to another licensee, Eastern Kentucky University, on December 24, 2021.  *See Media Bureau Call Sign Actions*, Public Notice, Report No. 658 (MB 2022).  Parks never challenged this action, and the assignment of the call sign is now final.

pending any subsequent review and thus nullifies any cancellation of the license.[51]  Section 307(c)(3), which requires the Commission to "continue [the license under review] in effect" pending a "hearing and final decision" on a renewal application, does not apply when a renewal application has been *granted* without a hearing, as is the case with the 2012 Renewal Application.[52]  Rather, section 307(c)(3) addresses situations where a renewal application has been designated for "hearing."  Pending such "hearing and final decision . . . and the disposition of any petition for rehearing," section 307(c)(3) works to "continue [the license under review] in effect" during that hearing and review period.  Section 307(c)(3) does not apply, as here, where an applicant challenges the *grant* of its own renewal application.  Indeed, once a renewal application has been granted, there is no cause to "continue [the license under review] in effect" because a new license term commences upon grant.[53]

  **Conclusion/Action.**  Accordingly, **IT IS ORDERED** that the Petition for Reconsideration filed on April 8, 2022, by Gerald Parks is (1) **DISMISSED AS UNTIMELY** to the extent it seeks reconsideration of the cancellation of the Station's license and reinstatement of that license; and (2) **GRANTED IN PART AND DENIED IN PART** to the extent it alleges the Bureau erred in reinstating and granting the 2012 Renewal Application.

  **IT IS FURTHER ORDERED** that the Emergency Request **IS DISMISSED** as moot.

  **IT IS FURTHER ORDERED** that the Supplement **IS DISMISSED** as untimely.

     Sincerely,


     Albert Shuldiner
     Chief, Audio Division
     Media Bureau

---

[51] Petition at 7-9.

[52] 47 U.S.C. § 307(c)(3).

[53] *Cesar Chavez Foundation*, Memorandum Opinion and Order, 33 FCC Rcd 4338, n.43 (2018) ("Despite the filing of the AFR of the Bureau's decision to grant the renewal application, Section 307(c)(3) did not operate to 'continue [the license under review] in effect' once the Renewal Application was granted and the new license term took effect.").

**Attachment 4**

**Gerald Parks' April 20, 2022 Emergency Request for Immediate Restoration of Station Operating Authority**

STAMP & RETURN

Before the
**Federal Communications Commission**
Washington, DC 20554

Received & Inspected

APR 2 0 2022

FCC Mail Room

|  |  |  |
|---|---|---|
| In re: Application of | ) | |
| | ) | |
| Gerald Parks | ) | |
| | ) | FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | ) | Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) | |
| | ) | |
| To: Chief, Audio Division, Media Bureau | ) | |

### EMERGENCY REQUEST FOR IMMEDIATE RESTORATION OF STATION OPERATING AUTHORITY

Gerald Parks ("Parks"), by his attorneys and pursuant to 47 C.F.R. § 1.41, hereby

requests that the Federal Communications Commission ("FCC" or "Commission") grant him

authority to resume immediately the operation of AM broadcast station DWEKC, Williamsburg,

Kentucky (the "Station"). In support whereof, the following is shown.

Parks has this day filed with the Commission a Petition for Reconsideration ("PFR"), a

copy of which is attached hereto, relating to the Commission's reinstatement to pending status

and grant last month of the Station's 2012 application for renewal of license, *without*

simultaneous implementation of the mandate of 47 U.S.C. § 307(c)(3). Parks has also this day

filed with the Commission a new renewal application (and accompanying waiver request) for a

term ending August 1, 2028. The PFR details how 47 U.S.C. § 307(c)(3) mandates that:

"Pending any administrative or judicial hearing and final decision on [a broadcast license

renewal] application and the disposition of any petition for rehearing pursuant to section 405

or section 402 of [the Communications Act], the *Commission shall continue such license in*

*effect.*" (Emphasis added). Because both Parks' 2012 renewal application and his newly filed

renewal application are pending today, the plain language of that mandate necessarily supersedes

and nullifies the Media Bureau's August 3, 2020 cancellation of the Station's license.[1] As the

PFR states at page 7: "This simple, fundamental principle animates this Petition – a license that

the [Communications] Act directs the FCC to continue in effect cannot lawfully be cancelled by

the agency."

      For these reasons, Parks respectfully requests the removal by the Commission of the "D"

currently associated with the Station call sign in the Commission's databases and immediate

restoration of the station's operating authority pursuant to 47 U.S.C. § 307(c)(3), pending final

Commission and/or judicial disposition of the 2012 Renewal Application and the application

filed by Parks this day for renewal of the Station license for a term ending August 1, 2028.

                        Sincerely,

                        /s/ Dennis P. Corbett
                        Dennis P. Corbett
                        Michael Lazarus
                        Ashley Brydone-Jack
                        TELECOMMUNICATIONS LAW PROFESSIONALS PLLC
                        1025 Connecticut Ave, NW, Suite 1011
                        Washington, D.C. 20036
                        Telephone: (202) 789-3115
                        Email: *dcorbett@tlp.law*

April 20, 2022

---

[1] See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, Public Notice
Comment, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=126050&File_number=BL-19890317AD* (last accessed Apr. 18. 2022).

# ATTACHMENT

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

| | | |
|---|---|---|
| In re: Application of | ) | |
| | ) | |
| | ) | |
| Gerald Parks | ) | |
| | ) | FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | ) | Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) | |
| | ) | |
| To: Chief, Audio Division, Media Bureau | ) | |

## <u>PETITION FOR RECONSIDERATION</u>

**GERALD PARKS**

By: Dennis P. Corbett
    Michael Lazarus
    Ashley Brydone-Jack
    TELECOMMUNICATIONS LAW
    PROFESSIONALS PLLC
    1025 Connecticut Ave, NW, Suite 1011
    Washington, D.C. 20036
    Telephone: (202) 789-3115
    Email: *dcorbett@tlp.law*

His Attorneys

April 20, 2022

## TABLE OF CONTENTS

SUMMARY .................................................................................................................... ii

I.        BACKGROUND ................................................................................ 3

II.       RECONSIDERATION OF THE ACTIONS IS WARRANTED ..................... 4

III.      MERITS ............................................................................................ 6

IV.       CONCLUSION ................................................................................. 11

## SUMMARY

By this Petition, the Reverend Gerald Parks ("Parks") seeks reconsideration, in context, of the Media Bureau's unexplained and highly unorthodox actions last month, reinstating and granting Parks' 2012 license renewal application for his gospel-formatted AM broadcast station WEKC, Williamsburg, Kentucky ("Station"), an application the Bureau had dismissed in August 2020 without public notice. The Bureau erred by taking these recent actions *without* simultaneously implementing the mandate of Section 307(c)(3) of the Communications Act, which required the Bureau to rescind its prior cancellation of the Station license and allow the Station to resume operations during the pendency of the 2012 renewal application.

The Bureau cancelled the Station license in 2020 after Parks did not file, during the throes of the COVID-19 pandemic, a second renewal application on top of his still-pending 2012 renewal application. But, when the Bureau recently elected to reinstate and grant the 2012 renewal application, the Bureau unquestionably recognized that application's status as pending, subject to agency reconsideration and judicial review. And Section 307(c)(3) unambiguously directs that so long as a broadcast station license renewal application is pending, the Commission "shall continue such [station] license in effect." A *cancelled* license is obviously not *in effect*, mandating Commission rescission of the Station license cancellation here.

In the absence of any explanation on the record of the Commission's recent actions, Parks is left to conjecture that the Commission decision not to simultaneously rescind the cancellation of the Station license and restore the Station's operating authority was taken in reliance on Bureau policy that stations whose renewal applications are still pending at the time the next renewal application would normally be due should file a second application on top of the one pending. But this policy cannot override a statute, and the license cancellation is in

direct conflict with Section 307(c)(3)'s mandate cited above – the Commission may not lawfully cancel a license that, by statutory dictate, continues in effect.

Parks is coupling this Petition with the filing of both: (i) a new renewal application and related waiver request, filed now that the Commission has reinstated the 2012 renewal application and found its grant to be in the public interest; and (ii) an emergency request for authority to resume Station operations.

Grant of all relief requested, relief that is entirely consonant with the plain language of Section 307(c)(3), will manifestly serve the public interest by allowing Parks to resume as quickly as possible his longstanding radio gospel ministry to an underserved area of Appalachia. The Petition establishes that loss of service from the Station has been devastating not just for Parks, but for the community of Williamsburg and its environs, as well as for local clergy that depend on access to their congregations through the Station, particularly in pandemic times.

Parks respectfully requests favorable Commission action at the earliest possible time.

**Before the**
**Federal Communications Commission**
**Washington, DC  20554**

| | |
|---|---|
| In re: Application of | ) |
| | ) |
| | ) |
| Gerald Parks | ) |
| | )     FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | )     Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) |
| | ) |
| To: Chief, Audio Division, Media Bureau | ) |

## PETITION FOR RECONSIDERATION

The Reverend Gerald Parks ("Parks"), by his attorneys and pursuant to 47 U.S.C. §

405(a) and 47 C.F.R. § 1.106, hereby seeks reconsideration of the actions taken on March 16,

2022 (the "Actions") by the Federal Communications Commission's ("FCC" or "Commission")

Media Bureau ("Bureau") with respect to AM broadcast station WEKC, Williamsburg,

Kentucky, Facility ID 72790 (the "Station").[1]  In support whereof, the following is shown.[2]

By its Actions, the Bureau has, with no explanatory letter or other written ruling: (i)

reinstated Parks' April 10, 2012 application for renewal of the Station license (the "2012

Renewal Application"), an application the Bureau had *dismissed without public notice* on August

---

[1] The FCC gave public notice of the March 16, 2022 Actions by means of *Broadcast Actions*, Public Notice, Report No. 50200 (MB, rel. Mar. 21, 2022).  This Petition is being submitted within 30 days of that Public Notice and is therefore timely filed.  Parks recognizes that the FCC database currently uses the call sign DWEKC to designate the Station.  By this Petition and related filings described below, Parks seeks to have the "D" removed from the Station's call sign.

[2] Attachment 1 hereto is a timeline of dates relevant to this Petition.

3, 2020, more than 19 months earlier ("2020 Dismissal of the 2012 Renewal Application");[3] and (ii) granted that reinstated application.[4] These Actions were taken without simultaneous rescission of an August 3, 2020 cancellation of the Station license (the "Cancellation") for failure to file in 2020 an additional renewal application on top of the pending 2012 Renewal Application.[5] In other words, the Actions, some ten years after the filing of the 2012 Renewal Application, without explanation or justification, approve the reinstatement and grant of renewal for a license that, as a matter of current Commission record, has been and remains cancelled.

As shown below, this Petition presents the Commission with an opportunity, consonant with the plain language of the Communications Act of 1934, as amended (the "Act"), to authorize Parks to restore immediately, in clear service of the public interest, with no countervailing public harm, a vital radio voice that has long benefitted listeners in and around Williamsburg, Kentucky.

---

[3] A previous entry that had been part of the CDBS record of the 2012 Renewal Application, noting the 2020 Dismissal of the 2012 Renewal Application, has disappeared from public view, replaced with a new note: "Renewal application reinstated to pending status and granted 3/16/2022 - no letter sent." See *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=1495594&File_number=BR-20120410ABU*. An application cannot be "reinstated" unless it has first been dismissed or denied, in this case dismissed. Parks notes that the cursory 2020 Dismissal of the 2012 Renewal Application (with or without public notice) did not comply with the clear statutory requirements for processing renewal applications set forth in 47 U.S.C. § 309(k) (i.e., obligating the Commission to decide whether to grant or deny such an application, and to give notice and opportunity for a hearing before any denial).

[4] Pursuant to 47 U.S.C § 309(k)(1), this renewal grant constitutes an affirmative finding by the Commission that "(A) the station has served the public interest, convenience, and necessity; (B) there have been no serious violations by the licensee of [the Act or FCC Rules]; and (C) there have been no other violations by the licensee…which, taken together, would constitute a pattern of abuse."

[5] See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, Public Notice Comment, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=126050&File_number=BL-19890317AD* (last accessed Apr. 14. 2022).

I.    **BACKGROUND**

Williamsburg, the Station's community of license, is a small Appalachian city (2010 Census population 5,245) that serves as the seat of Whitley County, Kentucky. Parks, who is now 88 years old, acquired the Station more than two decades ago, when he retired as a church pastor in Norwood, Ohio to devote full time to his then new radio ministry in Williamsburg.[6] He had operated the Station continuously until late January of this year, when he learned of the Cancellation, and took it off air. Until February of this year, Parks has not had the benefit of counsel in Station FCC matters; during time periods relevant to this Petition, the Station struggled mightily to cope with the widespread negative collateral consequences of the COVID-19 pandemic.

With the recent termination of Station service in Williamsburg and its environs, the community has suffered a deep loss. The depth of the damage is reflected in the copy of the letter of Roddy Harrison, Williamsburg's Mayor, which comprises Attachment 3 hereto. Mayor Harrison explains: "The loss of [Station] programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic," where many residents were effectively reduced to shut in status for extended periods of time. As Mayor Harrison makes clear, a primary way that the Station has become a "fixture" in Williamsburg is by providing a platform for numerous local

---

[6] *See Rev. Gerald Parks Inducted Into Williamsburg Gospel Barn's Wall of Honor*, News Journal, Oct. 16, 2019, *__https://www.thenewsjournal.net/rev-gerald-parks-inducted-into-wburg-gospel-barns-wall-of-honor/#:~:text=Honor%20Saturday%20evening.-,Rev.,driving%20them%20around%20the%20country__*. Attachment 2 hereto is a description of the Station provided to the undersigned by the Station.

3

churches and pastors to reach their congregations. This part of the Station's programming is a central part of the locally oriented service it has long provided Williamsburg. As Attachment 2 hereto recites, the Station airs a variety of unique local programs on which Station listeners have long depended (e.g., church services, local announcements, an informal venue for non-retail sales and trades). The Station's contributions to its community of license have not been limited to programming. For example, prior to the last two pandemic-limited summers, WEKC produced and hosted at its own cost an annual July 4 day of live gospel music performances in Williamsburg. The concert attracts a wide array of talent and a broad audience to the city and is also aired on the Station.[7] In short, the Station has for many years filled an important role in Williamsburg, and clearly served the public interest through its gospel programming and extensive community involvement.

## II.    RECONSIDERATION OF THE ACTIONS IS WARRANTED

47 U.S.C. § 405(a) ("Section 405(a)") and 47 C.F.R. § 1.106(b)(1) ("Rule 1.106") both give "any party" to an FCC proceeding the right to seek reconsideration of any agency "action" in that proceeding.[8] Parks, the only party to the 2012 Renewal Application, hereby invokes that right.

Reconsideration of the Actions, considered in their context, is clearly warranted here. Indeed, this proceeding presents questions of fundamental importance found at the intersection

---

[7] *See, e.g.*, Mark White, *Independence Day Festivities planned for Wed., July 3 in Corbin; Thurs., July 4 in W'burg*, News Journal, (July 3, 2019), *https://www.thenewsjournal.net/independence-day-festivities-planned-for-wed-july-3-in-corbin-thurs-july-4-in-wburg/ r*

[8] The statutory right to seek reconsideration also extends to non-parties who are "aggrieved," or whose interests are "adversely affected" by the agency action in question. While this test does not apply to Parks as a party to the proceeding, as explained herein, he has nonetheless been aggrieved and adversely affected by the Actions, considered in context.

4

of the Commission's processing of renewal applications under the Act, and the FCC's authority

to terminate station licenses. The Actions ostensibly reinstate and grant the 2012 Renewal

Application. But, considered in light of the agency's failure to simultaneously rescind the

Cancellation and its parallel informal insistence that Parks cannot restore service during the

pendency of the 2012 Renewal Application, the Actions have in fact worked a de facto denial of

relief to which Parks is entitled under the Act. By this Petition, Parks asks the Bureau to

conform its Actions to the dictates of the Act by rescinding the Cancellation, allowing the

immediate restoration of Station service to the residents of Williamsburg and its environs, and

processing the new Station renewal application and related waiver request that are being

concurrently filed herewith.

It is noteworthy that this Petition comfortably satisfies multiple tests for seeking full

Commission review. That is, the Actions, viewed in context, are in conflict with statute (e.g.,

Section 307(c)(3), defined below); involve a question of law or policy which has not previously

been resolved by the Commission (e.g., whether the FCC may lawfully maintain the cancellation

of a license that is the subject of a pending renewal application); involve application of a policy

which should be overturned or revised (e.g., the FCC's policy of cancelling radio licenses when a

second renewal application is not filed on top of a still pending one); and involve prejudicial

procedural error (e.g., agency cancellation of a license where no public notice has been given of

an erroneous dismissal of a pending renewal application for that same license).[9]

General public interest considerations also clearly favor grant of this Petition. As noted

above, the Station has long served a vital role in Williamsburg – an underserved small

Appalachian city which has just two other licensed full-power radio stations and no licensed

---

[9] See 47 C.F.R. §§ 1.115(b)(2)(i), (ii), (iii) and (v).

television stations. As Attachment 3 hereto makes plain, the community highly values the programming uniquely provided by the Station. This Petition presents the Commission with the opportunity to allow Parks to quickly *restore* a deeply lamented loss of important local service, in service of the clear dictates of the Act and the overall public interest.

### III.    MERITS

The Bureau clearly erred in reinstating and granting the 2012 Renewal Application without following the dictates of 47 U.S.C. § 307(c)(3) ("Section 307(c)(3)") and simultaneously rescinding the license's Cancellation, which would allow the Station to resume on-air operations and to file for renewal beyond the newly established expiration date. Instead, the highly unorthodox Actions have apparently endeavored to remedy prior Bureau error while still keeping the Station off the air, contrary to the plain language of Section 307(c)(3).

Parks, through counsel, had recently informally asked the FCC to give long overdue public notice of the 2020 Dismissal of the 2012 Renewal Application. The FCC elected instead to take the highly unorthodox Actions. The most logical interpretation of the reasoning behind the Actions appears to be that they are designed to solve the FCC failure to provide public notice with respect to the 2012 Renewal Application[10] while nominally leaving the Station license cancelled, thereby preventing the Station from resuming operations. Consistent with such an approach, Commission Staff has informally advised Parks that, even after the Actions, the Cancellation remains in effect (and the Station must remain off air).

But, the plain language of Section 307(c)(3) does not allow the Commission to reinstate the 2012 Renewal Application *and* keep the Cancellation in place. To the contrary, Section 307(c)(3), which governs broadcast station license terms, directs that "pending any

---

[10] *But see* the last sentence of n. 3 *supra.*

6

administrative or judicial hearing and final decision on such [a renewal] application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, the Commission *shall continue such license in effect*." (Emphasis added).[11] Because the 2012 Renewal Application today remains subject to agency reconsideration and judicial review, this statutory mandate necessarily nullifies the Cancellation. This simple, fundamental principle animates this Petition – a license that the Act directs the FCC to continue in effect cannot lawfully be cancelled by the agency.

With reinstatement of the 2012 Renewal Application and the resultant nullification of the Cancellation, the door has opened to Parks' filing of a new Station renewal application for a term ending August 1, 2028, an action Parks is taking today, with an appropriate waiver request. Today's filing of a new renewal application is clearly appropriate – because it comes within 30 days of public notice of reinstatement and grant of the 2012 Renewal Application, there will be no gap between its filing and the life of the Station license under Section 307(c)(3). And, while the Act precludes the Commission from *granting* a radio broadcast renewal for a term exceeding eight years, nothing in the Act mandates that licensees *file* renewal applications every eight years.[12] Indeed, as discussed below, the Bureau in *Magnolia* entertained and granted a renewal application filed more than fifteen months after a station's previous eight-year term had ended. Furthermore, far from establishing a regime in which licensees must file multiple

---

[11] Sections 405 and 402 "of this title" as used in Section 307(c)(3) refer to statutory provisions governing agency reconsideration and judicial review. 47 C.F.R. § 1.65(a) is consistent with Section 307(c)(3) in that it provides that an application "is pending before the Commission from the time it is accepted for filing by the Commission until a Commission grant or denial of the application is no longer subject to reconsideration by the Commission or to review by any court."

[12] "Upon application therefor, a renewal of such license may be granted from time to time for a term of not to exceed 8 years from the date of expiration of the preceding license...." 47 U.S.C. § 307(c)(1).

pending renewal applications on top of each other, Section 307(c)(3) makes clear that a license must be continued in effect and cannot be treated as expired for however long a renewal application relating to that license is pending.[13]

47 C.F.R. § 73.3539(a) is not inconsistent with Section 307(c)(3). Rule 73.3539(a) requires that renewal applications for broadcast stations be filed "not later than the first day of the fourth full calendar month prior to the *expiration date* of the license sought to be renewed." (Emphasis added).[14] But this language cannot reasonably be read to apply to circumstances like this one, where the 2012 Renewal Application remained pending on April 1, 2020, and no license had been issued to Parks establishing an August 1, 2020 expiration date. The license's last expiration date was August 1, 2012, the 2012 Renewal Application was still pending of August 1, 2020, and Section 307(c)(3) demands that the Station license continue in effect.[15]

While the Commission released *Radio License Expirations*, Public Notice, DA 20-737, on July 15, 2020 listing the WEKC license as one of 18 broadcast licenses held by 18 different licensees that would expire if no renewal application was filed prior to the "date of expiration" of August 1, 2020, Parks was unaware of this Public Notice and to the best of his knowledge the

---

[13] Accordingly, Parks is also filing this day an Emergency Request for Immediate Restoration of Station Operating Authority.

[14] "Expiration" is defined as "the fact of coming to an end or the point at which something ends : TERMINATION." *Expiration, noun*, Merriam-Webster, https://www.merriam-webster.com/dictionary/expiration (last accessed Apr. 19, 2022). A license which continues in effect has obviously not reached the point at which it comes to an end.

[15] Even assuming arguendo that the 2020 Dismissal of the 2012 Renewal Application had been compliant with the Act, because the Commission failed to give public notice thereof, that dismissal did not terminate the pending status of the 2012 Renewal Application. As noted herein, by its Actions, the FCC has now granted the 2012 Renewal Application, *for the first time* establishing an August 1, 2020 expiration date for the Station license. Parks is accordingly submitting this day with the FCC (in paper form due to the agency's failure to rescind the Cancellation) a new application seeking to renew the Station license to August 1, 2028, the maximum length permitted by the Act.

Commission did not send him a copy of it. In any event, as noted above, Parks did not at that time hold a license with an expiration date of August 1, 2020. Rather, he held the pending 2012 Renewal Application, upon which no agency action had yet been taken. This Public Notice did not differentiate between licensees with and without pending renewal applications, and therefore did not address the fundamental issues raised by this Petition.

Parks notes that the Bureau had released a Public Notice on April 15, 2019 (of which Parks was unaware) advising radio station licensees with then-still-pending license renewal applications that they should file another renewal application on top of the one pending,[16] Of course, no such guidance would have been needed if the plain language of the Act required broadcast licensees to file a second renewal application on top of one that was still pending. And, importantly, the Public Notice cites no statute or Rule in support of this advice.[17] In any event, for the reasons set forth in this Petition, the establishment of such procedures and the issuance of such guidance cannot override the plain language of Section 307(c)(3) and cannot justify the dismissal of the 2012 Renewal Application or cancellation of the Station license during the pendency of that application.

Parks also notes that in *Pollack/Belz Communication Company, Inc.*, 29 FCC Rcd 14635 (Med. Bur. 2014), the Video Division adopted a Forfeiture Order applicable to a television station licensee that did not file a new renewal application on top of a still pending one from the prior renewal cycle until two days *after* the generic expiration date of licenses issued to stations

---

[16] *Media Bureau Announces Procedures For 2019-2022 Radio License Renewal Cycle*, DA 19-285, rel. Apr. 15, 2019.

[17] Clear articulation/fair notice by the Commission of the reasoning behind and support for agency "rules of the road" is a bedrock requirement of the Due Process Clause of the Fifth Amendment. *See, e.g., FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).

in the State of Louisiana. *Pollack* was a $2,400 forfeiture case, in which the Video Division

pointedly did *not* cancel that station's license, even though it had expired two days *before* the

licensee filed a new renewal application, which the licensee termed a "supplement" to its still

pending prior cycle renewal application. To the contrary, the FCC granted both the long pending

and "supplemental" renewal applications on the same date in October 2014, prior to issuance of

the Forfeiture Order. Parks notes the starkly disparate treatment afforded him in this case, where

the FCC never gave public notice of the dismissal of the 2012 Renewal Application and

cancelled the Station license a mere two days after August 1, 2020.[18]

In a recent decision, *Magnolia State Broadcasting, Inc.*, Memorandum Opinion and

Order and Notice of Apparent Liability, DA 22-105 (Aud. Div., rel. Feb. 3, 2022), the Audio

Division levied a $7,000 forfeiture on the licensee of AM station WMOX, but made clear its

intention to grant WMOX's related renewal application, one that had not been filed until more

than 15 months after the expiration date of the underlying license.[19] In addition to indicating that

the FCC was favorably disposed toward granting a renewal application submitted so long after

an expiration date, that decision incorporated two rulings which indicate how strongly the FCC

normally disfavors license cancellation as a remedy: the Audio Division (i) elected to treat a

request for reinstatement of the station license filed after the license's expiration date as if were a

properly filed petition for reconsideration; and (ii) declined to find disqualifying the licensee's

failure to apply for or obtain special temporary authority to operate during the *extended* period

---

[18] *See Melody Music, Inc. v. FCC*, 345 F.2d 730 (D.C. Cir. 1965) (the Commission is required to treat similarly situated parties similarly).

[19] The relevant WMOX license expiration date was June 1, 2020. The licensee did not submit an application for renewal of that license until September 25, 2021, *nearly sixteen months* later. *See Magnolia*, 29 FCC Rcd at 14635.

following expiration of the Station's license.  Importantly, *Magnolia* was *not* a case involving a still pending license renewal application from a prior cycle; the licensee of WMOX did not enjoy the protection of the life of its license afforded by Section 307(c)(3).[20]

## IV.    CONCLUSION

For all of the reasons set forth above, Parks respectfully requests that the Bureau reconsider its decision to take the Actions without the simultaneous rescission of the Cancellation and restoration of the Station's license mandated by Section 307(c)(3).  Following such rescission, in order to permit the Station to resume operations to serve the listening public in and around Williamsburg, Kentucky at the earliest possible time, Parks requests expeditious grant of the emergency request for immediate restoration of Station operating authority and grant of the new renewal application filed concurrently with this Petition.


Respectfully submitted,

**GERALD PARKS**

By: /s/ Dennis P. Corbett
Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
TELECOMMUNICATIONS LAW PROFESSIONALS PLLC
1025 Connecticut Ave, NW, Suite 1011
Washington, D.C. 20036
Telephone: (202) 789-3115
Email: *dcorbett@tlp.law*

April 20, 2022            His Attorneys

---

[20] In the prior cycle, the WMOX renewal application was filed on February 1, 2012 and granted on May 25, 2012. *See* WMOX Application for Renewal, CDBS File No. BR-20120201AKO, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/app_det.pl?Application_id=1486289*.

**ATTACHMENT 1**

**Timeline of Dates Relevant to This Petition for Reconsideration**

April 10. 2012 – Parks files 2012 Renewal Application

May 14, 2012 – FCC gives public notice of acceptance for filing of 2012 Renewal Application

November 19, 2019 -- FCC gives second public notice of acceptance for filing of 2012 Renewal Application

July 15, 2020 – FCC includes WEKC on public notice listing 18 licensees that did not file a renewal application by April 1, 2020

August 3, 2020 – FCC dismisses 2012 Renewal Application (no public notice of this action ever given)

August 3, 2020 – FCC cancels WEKC license

August 6, 2020 – FCC gives public notice of WEKC license cancellation

March 16, 2022 – FCC reinstates and grants 2012 Renewal Application

March 21, 2022 – FCC gives public notice of reinstatement and grant of 2012 Renewal Application

**ATTACHMENT 2**

# WEKC

402 Main Street
Williamsburg, Kentucky 40769
(606)549-3000

WEKC (710 AM), is a faith based community involved voice whose primary purpose is to spread the gospel throughout the Whitley, Knox, Laurel, McCreary counties of Kentucky and Campbell County in Tennessee. In conjunction with providing spiritual support, the station also provides a vital source of information for many residents.

The Parks family including the Reverend Gerald Parks, his brother, father and grandfather has a long history of working to spread the gospel in Whitley County and surrounding areas. So when Reverend Gerald Parks found out WEKC was for sale, he felt it would be a means to reach more people in the community. He purchased the station in July, 2000 and converted it from a rock station to a gospel station. It was, and is, his intention that WEKC should become a vital part of the community by providing local news and supporting various activities.

When COVID-19 forced the Governor of Kentucky to close the churches, the staff and management of WEKC decided to implement a program to help the local churches. It was decided that WEKC would give free air time to any pastor who wanted to continue ministering to their congregation while the church buildings were ordered closed. In this way the ministers could reach out to those people who are unable to attend normal church services. This practice continued until the Governor of Kentucky allowed church services to resume.

The listening audience for WEKC consists mainly of older people who rely on WEKC for news and events. Therefore, as a public service, WEKC provides local announcements and reads the local obituaries three times a day. WEKC is the only AM station in the area that provides this service. The Williamsburg newspaper is only published once a week and often the events mentioned are over before the newspaper is delivered.

There is a religious faction of people in the WEKC listening area that do not believe in television or computers. For these people the only source of local news and announcements has been WEKC.

The service area of WEKC is very rural. It is with this in mind, that a program called Tri-County Spotlight was created. It allows listeners to let their neighbors know if they have items to sell or trade. This program has been very popular receiving around 100 calls during the hour and 15 minute program. This is a free service to the listeners and the only restriction is that retail businesses can't advertise.

The clientele for WEKC are programs provided by various churches, both locally and from different locations across Kentucky and surrounding states. They also broadcast commercials that promote local businesses and events.

WEKC supports the community in other ways not related to any specific broadcast. In cooperation with the City of Williamsburg, WEKC has provided music concerts. Partnering with the City of Williamsburg, that graciously agreed to close downtown streets, WEKC set up stages and vending areas to provide free gospel concerts.

WEKC worked with a new Eastern Kentucky program created to address high rates of domestic and sexual violence in the region through education and conversation. The Cumberland River Community Green Dot program has formed a coalition of community members in the Whitley County area to improve efforts at violence prevention. In support of this program, WEKC allowed a mural to be painted on the side of the radio station that was visible from the main streets of Williamsburg.



No matter what other activity or event WEKC is involved with, they will never stray from their primary goal which is to be a blessing to all those who listen to it.

**ATTACHMENT 3**

February 8, 2022

Federal Communications Commission
Washington, DC

Re: **Restoration of WEKC Radio Service to Williamsburg, Kentucky**

Dear FCC:

As the mayor of Williamsburg, Kentucky, I write about a local matter of urgent priority.

I recently became aware of the loss of radio service that had for a long time been provided by the Reverend Gerald Parks to our community over AM Radio Station WEKC. Reverend Parks is a critical part of the fabric of Williamsburg, and his station's vibrant gospel programming has been a fixture here for many, many years.

The loss of that programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic.

As a local government official, I understand and respect the fact that difficult decisions come with the territory. But, in this case, I am asking you to explore whether there is a way to allow WEKC to restore and maintain its presence on the air. Such relief would spare our community from suffering such a profound loss of such an important contributor to our quality of life.

Thank you very much in advance for your consideration of the concerns of Williamsburg and its residents arising from the damaging loss of WEKC service.

My understanding is that Reverend Parks will submit this letter to the FCC as part of a larger filing seeking restoration of WEKC service.

Sincerely,

Roddy Harrison
Mayor, Williamsburg, Kentucky

## Attachment 5

**Gerald Parks' April 20, 2022 License Renewal Application and Waiver Request**



 Telecommunications
Law Professionals PLLC

1025 Connecticut Avenue, NW
Suite 1011
Washington, DC 20036
telephone 202.789.3120
facsimile 202.789.3112
www.tlp.law

**STAMP & RETURN**

**Received & Inspected**

**APR 2 0 2022**

**FCC Mail Room**

dcorbett@tlp.law
202.789.3115

April 20, 2022

**VIA COURIER**

Marlene H. Dortch, Secretary
Federal Communications Commission
9050 Junction Drive
Annapolis Junction, MD 20701

Re:     Application of Gerald Parks for Renewal of AM Broadcast Station WEKC, Williamsburg, KY,
        Facility ID No. 72790

**Attn: Chief, Audio Division, Media Bureau**

Dear Ms. Dortch:

Gerald Parks ("Parks"), by his attorneys, hereby: (i) submits two copies of an application for renewal ("Renewal Application") of his license for AM station WEKC, Williamsburg, Kentucky (the "Station") for a term expiring August 1, 2028 and a related FCC Form 396 (Broadcast Equal Employment Opportunity Program Report) ("Form 396"); and (ii) pursuant to 47 C.F.R. §§ 1.3 and 1.41, requests grant of a comprehensive waiver of any and all Commission rules and policies (the "Waiver") necessary to allow processing and grant of the Renewal Application and processing of the Form 396. In support whereof, the following is shown.

In support of the request for Waiver, we are enclosing for association with each copy of the Renewal Application a Petition for Reconsideration relating to the Station ("PFR") separately filed by Parks today with the Commission.

The enclosed PFR explains in detail the facts and circumstances justifying grant of the Waiver, and the PFR is hereby incorporated in its entirety as part of this Waiver request.

As the PFR makes clear, the enclosed Renewal Application is being filed within thirty days of Media Bureau reinstatement and grant of the Station's 2012 renewal application, *without* simultaneous Bureau implementation of the mandate of 47 U.S.C. § 307(c)(3). That statutory provision required the Bureau, when it reinstated and granted the 2012 renewal application, to simultaneously rescind its August 3, 2020 cancellation of the Station license (the "Cancellation"), thereby allowing the Station to resume operations during the continuing pendency of the 2012 renewal application and giving Parks a license to renew again. But the Bureau did not do so. The PFR further explains how the plain language of 47 C.F.R. § 73.3539(a) did not apply to the Station in 2020 because until last month, the Station's last license expiration date had been August 1, 2012.



Ms. Marlene H. Dortch
April 20, 2022
Page 2

As the PFR also makes clear, Commission grant of the Waiver is appropriate because this Renewal Application is being filed at the first opportunity (within 30 days) after the Commission granted a Station license renewal with an expiration date of August 1, 2020. As the PFR also establishes, the Commission has previously entertained and granted an application for broadcast station license renewal filed more than a year after that license's expiration date. See *Magnolia State Broadcasting, Inc.*, Memorandum Opinion and Order and Notice of Apparent Liability, DA 22-105 (Aud. Div., rel. Feb. 3, 2022). Similar relief is requested here.

The Renewal Application is being filed in hard copy form because the Cancellation precludes normal Station access to the Commission's electronic filing systems. Parks asks that any electronic filing requirements also be waived.

As a general proposition, the FCC may grant a waiver for good cause shown. 47 C.F.R. § 1.3. A waiver is appropriate where the particular facts make strict compliance inconsistent with the public interest. *Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990). In considering a waiver, the FCC may take into account considerations of hardship, equity, or more effective implementation of overall policy on an individual basis. *WAIT Radio v. FCC*, 418 F.2d 1153, 1159 (D.C. Cir. 1969), *cert. denied*, 409 U.S. 1027 (1972); *Northeast Cellular*, 897 F.2d at 1166. Such a waiver is appropriate if circumstances warrant a deviation from the general rule, and such deviation will serve the public interest. *Northeast Cellular*, 897 F.2d at 1166.

For the reasons set forth herein and in the PFR, the rare and exceptional circumstances of this case amply justify FCC grant of the Waiver sought herein, relief which is respectfully requested.

Should you have any questions concerning any of these matters, please contact the undersigned.

Sincerely,


*/s/ Dennis P. Corbett*
Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
of TELECOMMUNICATIONS LAW PROFESSIONALS PLLC

Federal Communications Commission
Washington, D. C 20554

Approved by OMB
3060-0110

FOR
FCC
USE
ONLY

## FCC 303-S

# APPLICATION FOR RENEWAL OF
# BROADCAST STATION LICENSE

FOR COMMISSION USE ONLY

FILE NO.

## Section I - General Information - TO BE COMPLETED BY ALL APPLICANTS

1.

| Legal Name of the Licensee Gerald Parks | | |
|---|---|---|
| Mailing Address 402 Main Street | | |
| City Williamsburg | State or Country (if foreign address) KY | ZIP Code 40769-1126 |
| Telephone Number (include area code) 606-549-3000 | E-Mail Address (if available) wekcradio@yahoo.com | |
| FCC Registration Number 0007921190 | Facility ID Number 72790 | Call Sign WEKC |

2.

| Contact Representative Dennis P. Corbett, Esq. | Firm or Company Name Telecommunications Law Professionals PLLC | |
|---|---|---|
| Mailing Address 1025 Connecticut Ave NW, Suite 1011 | | |
| City Washington | State or Country (if foreign address) DC | ZIP Code 20036 |
| Telephone Number (include area code) 202-789-3115 | E-Mail Address (if available) dcorbett@tlp.law | |

3. If this application has been submitted without a fee, indicate reason for fee exemption (see 47 C.F.R. Section 1.1114):

☐ Governmental Entity      ☐ Noncommercial Educational Licensee      ☐ Other _____

FCC Form 303-S
June 2018

4.    **Purpose of Application.**

☑ Renewal of license

☐ Amendment to pending renewal application if an amendment, submit as an exhibit a listing by Section and Item Number the portions of the pending application that are being revised.

| Exhibit |
|---|

5.  **Facility Information:**    ☒ Commercial    ☐ Noncommercial Educational

6.  **Service and Community of License**

a.  ☒ AM    ☐ FM    ☐ TV    ☐ FM Translator    ☐ LPFM

   ☐ TV Translator    ☐ Low Power TV    ☐ Class A TV

| COMMUnity of License/Area to be Served | |
|---|---|
| City<br>Williamsburg | State<br>KY |

b.  Does this application include one or more FM translator station(s), or TV translator station(s), LPTV station(s), in addition to the station listed in Section I, Question 1? (The callsign(s) of any associated FM translators, TV translators or LPTVs will be requested in Section V).

   ☐ Yes    ☒ No

7.  **Other Authorizations.** List call signs, facility identifiers and location(s) of any FM booster or TV booster station(s) for which renewal of license is also requested.

| Exhibit No. |
|---|

☒ N/A

**NOTE: In addition to the information called for in Sections II, III, IV and V, an explanatory exhibit providing full particulars must be submitted for each item for which a "No" response is provided.**

### Section II - Legal - TO BE COMPLETED BY ALL APPLICANTS

1.  **Certification.** Licensee certifies that it has answered each question in this application based on its review of the application instructions and worksheets. Licensee further certifies that where it has made an affirmative certification below, this certification constitutes its representation that the application satisfies each of the pertinent standards and criteria set forth in the application, instructions, and worksheets.

    [X] Yes [ ] No

2.  **Character Issues.** Licensee certifies that neither the licensee nor any party to the application has or has had any interest in, or connection with:

    a.  any broadcast application in any proceeding where character issues were left unresolved or were resolved adversely against the applicant or any party to the application; or

    [X] Yes [ ] No | See Explanation in Exhibit No.

    b.  any pending broadcast application in which character issues have been raised.

    [X] Yes [ ] No | See Explanation in Exhibit No.

3.  **Adverse Findings.** Licensee certifies that, with respect to the licensee and each party to the application, no adverse finding has been made, nor has an adverse final action been taken by any court or administrative body in a civil or criminal proceeding brought under the provisions of any laws related to the following: any felony; mass media-related antitrust or unfair competition; fraudulent statements to another governmental unit; or discrimination.

    [X] Yes [ ] No | See Explanation in Exhibit No.

4.  **FCC Violations during the Preceding License Term.** Licensee certifies that, with respect to the station(s) for which renewal is requested, there have been no violations by the licensee of the Communications Act of 1934, as amended, or the rules or regulations of the Commission during the preceding license term. If No, the licensee must submit an explanatory exhibit providing complete descriptions of all violations.

    [X] Yes [ ] No | See Explanation in Exhibit No.

5.  **Alien Ownership and Control.** Licensee certifies that it complies with the provisions of Section 3 1 0 of the Communications Act of 1934, as amended, relating to interests of aliens and foreign governments.

    [X] Yes [ ] No | See Explanation in Exhibit No.

6.  **Anti-Drug Abuse Act Certification.** Licensee certifies that neither licensee nor any party to the application is subject to denial of federal benefits pursuant to Section 5301 of the Anti-Drug Abuse Act of 1988, 21 U.S.C. Section 862.

    [X] Yes [ ] No

7.  **Non-Discriminatory Advertising Sales Agreements.** Licensee certifies that its advertising agreements do not discriminate on the basis of race or gender and that all such agreements held by the licensee contain nondiscrimination clauses. Applicants for renewal of noncommercial educational broadcast station licenses select "N/A."

    [X] Yes [ ] No | See Explanation in Exhibit No.
    [ ] N/A

I certify that the statements in this application are true, complete, and correct to the best of my knowledge and belief, and are made in good faith. I acknowledge that all certifications and attached Exhibits are considered material representations. I hereby waive any claim to the use of any particular frequency as against the regulatory power of the United States because of the previous use of the same, whether by license or otherwise, and request an authorization in accordance with this application. (See Section 304 of the Communications Act of 1934, as amended.)

| Typed or Printed Name of Person Signing | Typed or Printed Title of Person Signing |
|---|---|
| Gerald Parks | Gerald Parks |
| Signature<br>/s/ Gerald Parks | Date<br>4/20/22 |

WILLFUL FALSE STATEMENTS ON THIS FORM ARE PUNISHABLE BY FINE AND/OR IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001), AND/OR REVOCATION OF ANY STATION LICENSE OR CONSTRUCTION PERMIT (U.S. CODE, TITLE 47, SECTION 312(a)(1)), AND/OR FORFEITURE (U.S. CODE, TITLE 47, SECTION 503).

**Section III - TO BE COMPLETED BY AM and FM LICENSEES ONLY**

1. **Biennial Ownership Report:** Licensee certifies that the station's Biennial Ownership Report (FCC Form 323 or 323-E) has been filed with the Commission as required by 47 C.F.R. Section 73.3615.

   [ ] Yes  [X] No  See Explanation in Exhibit No. 1

2. **EEO Program:** Licensee certifies that:
   a. The station's Broadcast EEO Program Report (FCC Form 396) has been filed with the Commission, as required by 47 C.F.R. Section 73.2080(f)(1).

      [X] Yes  [ ] No  See Explanation in Exhibit No.

      Specify FCC Form 396 File Number     Attached

   b. The station has posted its most recent Broadcast EEO Public File Report on the station's website, as required by 47 C.F.R. Section 73.2080(c)(6).

      [ ] Yes  [ ] No
      [X] N/A  See Explanation in Exhibit No.

3. **Local Public File.** Licensee certifies that the documentation, required by 47 C.F.R. Sections 73.3526 or 73.3527, as applicable, has been placed in the station's public inspection file at the appropriate times.

   [ ] Yes  [X] No  See Explanation in Exhibit No. 3

4. **Discontinued Operations.** Licensee certifies that during the preceding license term the station has not been silent for any consecutive 12-month period.

   [X] Yes  [ ] No  See Explanation in Exhibit No.

5. **Silent Station.** Licensee certifies that the station is currently on the air broadcasting programming intended to be received by the public.

   [ ] Yes  [✓] No  See Explanation in Exhibit No. 5

6. **Environmental Effects.** Licensee certifies that the specified facility complies with the maximum permissible radio frequency electromagnetic exposure limits for controlled and uncontrolled environments. Unless the licensee can determine compliance through the use of the RF worksheets in the Instructions to this Form, **an Exhibit is required.**

   [X] Yes  [ ] No  See Explanation in Exhibit No.

   By checking "Yes" above, the licensee also certifies that it, in coordination with other users of the site, will reduce power or cease operation as necessary to protect persons having access to the site, tower, or antenna from radio frequency electromagnetic exposure in excess of FCC guidelines.

**Section IV - TO BE COMPLETED BY TV AND CLASS A LICENSEES ONLY**

1. **Biennial Ownership Report.** Licensee certifies that the station's Biennial Ownership Report (FCC Form 323 or 323-E) has been filed with the Commission, as required by 47 C.F.R. Section 73.3615.

   ☐ Yes   ☐ No    See Explanation in Exhibit No.

2. **EEO Program.** Licensee certifies that:
   a. The station's Broadcast EEO Program Report (FCC Form 396), has been filed with the Commission, as required by 47 C.F.R. Section 73.2080(f)(1).

   ☐ Yes   ☐ No    See Explanation in Exhibit No.

   Specify FCC Form 396 File Number _____

   b. The station has posted its most recent Broadcast EEO Public File Report on the station's website, as required by 47 C.F.R. Section 73.2080(c)(6).

   ☐ Yes   ☐ No   ☐ N/A

   See Explanation in Exhibit No.

3. **Local Public File.** Licensee certifies that the documentation required by 47 C.F.R. Sections 73.3526 or 73.3527, as applicable, has been placed in its station's inspection file at the appropriate times.

   ☐ Yes   ☐ No

4. **Violent Programming.** Licensee certifies that no written comments or suggestions have been received from the public that comment on its station's programming and characterize that programming as constituting violent programming.

   ☐ Yes   ☐ No   ☐ N/A

   **If No, submit as an Exhibit** a summary of those written comments and suggestions received from the public.

   See Explanation in Exhibit No.

5. **Children's Programming Commercial Limitations.** For the period of time covered by this application, the licensee certifies that it has complied with the limits on commercial matter as set forth in 47 C.F.R. Section 73.670. (The limits are no more than 12 minutes of commercial matter per hour during children's programming on weekends. The limits also apply pro rata to children's programs which are 5 minutes or more and which are not part of a longer block of children's programming.

   ☐ Yes   ☐ No

   See Explanation in Exhibit No.

   If No, **submit as an Exhibit** a list of each segment of programming 5 minutes or more in duration designed for children 12 years and under and broadcast during the license period which contained commercial matter in excess of the limits. For each programming segment so listed, indicate the length of the segment, the amount of commercial matter contained therein, and an explanation of why the limits were exceeded.

6. For the period of time covered by this applicant, the licensee certifies that it has filed with the Commission, **and incorporated by reference,** the Children's Television Programming Reports (FCC Form 398) as described in 47 C.F.R. Section 73.3526.

   ☐ Yes   ☐ No

   See Explanation in Exhibit No.

   If No, **submit as an Exhibit** a statement of explanation.

7.  For the period of time covered by this application, the licensee certifies that the average number of hours of CORE Programming per week broadcast by the station totaled 3 hours or more (averaged over a six-month period).

☐ Yes  ☐ No

Exhibit No. ☐

8.  The licensee certifies that it identifies each CORE Program aired at the beginning of the airing of each program as required by 47 C.F.R. Section 73.673.

    If No, **submit as an Exhibit** a statement of explanation.

☐ Yes  ☐ No

Exhibit No. ☐

9.  The licensee certifies that it provides information identifying each CORE Program aired on its station, including an indication of the target child audience, to publishers of program guides as required by 47 C.F.R. Section 73.673.

    If No, **submit as an Exhibit** a statement of explanation.

☐ Yes  ☐ No

Exhibit No. ☐

10. The licensee certifies that it publicizes the existence and location of the station's Children's Television Programming Reports (FCC Form 398) as required by 47 C.F.R. Section 73.3526(e)(11)(iii).

    If No, **submit as an Exhibit** a statement of explanation, including the specific steps the applicant intends to implement to ensure compliance in the future.

☐ Yes  ☐ No

Exhibit No. ☐

11. The licensee may include as an exhibit any other comments or information it wants the Commission to consider in evaluating compliance with the Children's Television Act. This may include information on any other non-core educational and informational programming that the applicant aired or plans to air, or any existing or proposed non-broadcast efforts that will enhance the educational and informational value of such programming to children. See 47 C.F.R. Section 73.67 1, NOTE 2.

Exhibit No. ☐

12. **Continued Class A Eligibility.** Licensee certifies that its station does, and will continue to, broadcast: (a) a minimum of 18 hours per day; and (b) an average of at least 3 hours per week of programming each quarter produced within the market area served by the station, or by a group of commonly controlled low power or Class A stations whose predicted Grade B contours are contiguous.

☐ Yes  ☐ No  See Explanation in Exhibit No. ☐

13. **Discontinued Operations.** Licensee certifies that during the preceding license term, the station has not been silent for any consecutive 12-month period.

☐ Yes  ☐ No  See Explanation in Exhibit No. ☐

14. **Silent Station.** Licensee certifies that the station is currently on the air broadcasting programming intended to be received by the public.

☐ Yes    ☐ No

15. **Environmental Effects.** Licensee certifies that the specified facility complies with the maximum permissible radio frequency electronic magnetic exposure limits for controlled and uncontrolled environments.

☐ Yes    ☐ No

| See Explanation in Exhibit, No. |

By checking "Yes" above, the licensee also certifies that it, in coordination with other users of the site, will reduce power or cease operation as necessary to protect persons having access to the site, tower or antenna from radio frequency electromagnetic exposure in excess of FCC guidelines.

16. **Local TV Ownership Waiver.** Has the licensee been granted a "failing" station waiver of 47 C.F.R. Section 73.3555(b)?

☐ Yes    ☐ No

If Yes, **submit as an Exhibit** a specific factual showing of the program-related benefits that have accrued to the public as a result of that waiver.

| Exhibit No. |

**Section V - TO BE COMPLETED BY FM AND TV TRANSLATOR AND LOW POWER TV LICENSEES ONLY**

**Operational Status:**

| Call Sign | Facility Identifier | Area Licensed to Serve | |
|---|---|---|---|
| | | City | State |
| | | | |

**Operational Status:**

2.

   a.  **Silent station:** Licensee certifies that the station is currently on the air.

☐ Yes ☐ No ☐ See explanation in Exhibit No.

   b.  **Rebroadcast Status.** Licensee certifies that the station is currently rebroadcasting the signal of an FM, AM, TV, or LPTV station.

☐ Yes ☐ No ☐ N/A

See explanation in Exhibit No.

    If Yes, identify the station being broadcast:

| Call Sign | Facility Identifier | Area Licensed to Serve | |
|---|---|---|---|
| | | City | State |
| | | | |

   c.  **Rebroadcast Consent.** Licensee certifies that it has obtained written authority from the licensee of the primary station identified above for retransmitting the primary station's programming.

☐ Yes ☐ No ☐ N/A

See explanation in Exhibit No.

3.  **For FM Translator Applicants Only:**

   a.  Licensee certifies that it is in compliance with 47 C.F.R. Section 74.1232(d), which prohibits the common ownership of-. (1) a commercial primary FM station and a FM translator station whose coverage contour extends beyond the protected contour of the commercial FM primary station being broadcast, and (2) a commercial primary AM station and a FM translator station whose 60 dBu contour exceeds the lesser of. (a) the 2 mV/m daytime contour of the commercial AM primary station being rebroadcast, or (b) the 25-mile radius of the commercial primary AM station's transmitter site being rebroadcast. This restriction also applies to any person or entity having any interest in, or any connection with, the primary FM station or primary AM station.

☐ Yes ☐ No ☐ N/A

See explanation in Exhibit No.

   b.  Licensee certifies that it is in compliance with 47 C.F.R. Section 74,1232(e), which prohibits: (1) a FM translator station whose coverage contour extends beyond the protected contour of the commercial FM primary station being rebroadcast, and (2) a FM translator station whose 60 dBu contour exceeds the lesser of. (a) the 2 mV/m daytime contour of the commercial AM primary station being rebroadcast, or (b) the 25-mile radius of the commercial primary AM station's transmitter site being rebroadcast, from receiving support (except for specified technical assistance), before, during, or after construction, directly or indirectly, from the primary station, or any person or entity having any interest in, or any connection with, the primary station.

☐ Yes ☐ No ☐ N/A

See explanation in Exhibit No.

4.  **For Low Power TV Applicants Only.** Licensee certifies that it has filed with the Commission, the station's Broadcast EEO Program Report (FCC Form 396) and has posted the most recent Public File Report on the station's website, as required by 47 C.F.R. Section 73.2080(f)(1).

☐ Yes   ☐ No   ☐ N/A

| See explanation in Exhibit No. |

5.  **Environmental Effects.** Licensee certifies that the specified facility complies with the maximum permissible radio frequency electromagnetic exposure limits for controlled and uncontrolled environments.

☐ Yes   ☐ No

| See explanation in Exhibit No. |

By checking "Yes" above, the licensee also certifies that, in coordination with other users of the site, will reduce power or cease operation as necessary to protect persons having access to the site, tower, or antenna from radio frequency electromagnetic exposure in excess of FCC guidelines.

**EXHIBIT 1**

Licensee Gerald Parks, a sole proprietor, is unable to file an Ownership Report electronically due to the current cancelled status of the WEKC(AM) ("Station") license.  Reverend Parks is not party to any contracts reportable on an Ownership Report and has no attributable interests reportable on an Ownership Report other than his ownership of the Station.

## **EXHIBIT 3**

Until recently, the Station did not have FCC counsel, and inadvertently had not uploaded material to the FCC-hosted online public inspection file. The Station's license is currently cancelled, and the licensee has been unable to address this situation since retaining counsel.

Licensee notes that as an 88-year old sole proprietor, he has regularly confronted substantial difficulties in operating his gospel-formatted station in a small Appalachian community (Williamsburg, Kentucky), including during the ongoing COVID-19 pandemic. The licensee has nonetheless persevered to provide programming of substantial value to his community of license.

**EXHIBIT 5**

The licensee took the Station off air in late January of 2022 when he learned that the Station license had been cancelled by the FCC in August 2020.   The licensee has retained FCC counsel to help address the license's cancellation.

Last month, the FCC granted the Station's long pending 2012 license renewal application, for a term expiring August 1, 2020. The licensee is accordingly filing this day: (i) this renewal application seeking a Station license renewal until August 1, 2028; (ii) a Petition for Reconsideration of the Commission's actions relating to the 2012 renewal application ("PFR"); and (iii) an Emergency Request for Immediate Restoration of Station Operating Authority.

Licensee notes that this renewal application is being filed under cover of a letter from FCC counsel requesting grant of any waivers necessary to allow the processing and grant of this application.  That letter attaches copies of the PFR for the Commission's reference and convenience.

Federal Communications Commission
Washington, D. C. 20554

Approved by OMB
3060-0113

# BROADCAST EQUAL EMPLOYMENT
# OPPORTUNITY PROGRAM REPORT

(To be filed with broadcast license renewal application)

| (For FCC Use Only) |
| --- |
| Code No. |

| Legal Name of the Licensee | **Gerald Parks** | |
| --- | --- | --- |
| Mailing Address | **402 Main Street** | |
| City **Williamsburg** | State or Country (if foreign address) **KY** | ZIP Code **40769**-1126 |
| Telephone Number (include area code) **606-549-3000** | E-Mail Address (if available) **wekcradio@yahoo.com** | |
| Facility ID Number **72790** | Call Sign **WEKC** | |

## TYPE OF BROADCAST STATION :

Commercial Broadcast Station

Noncommercial Broadcast Station

[✓] Radio    [ ] TV

[ ] Educational Radio

[ ] Low Power TV

[ ] Educational TV

[ ] International

List call sign and location of all stations included on this report.  List commonly owned stations that share one or more employees. Also list stations operated by the licensee pursuant to a time brokerage agreement.  Indicate on the table below which stations are operated pursuant to a time brokerage agreement.  To the extent that licensees include stations operated pursuant to a time brokerage agreement on this report, responses or information provided in Sections I through IV should take into consideration the licensee's EEO compliance efforts at brokered stations, as well as any other stations, included on this form. For purposes of this form, a station employment unit is a station or a group of commonly owned stations in the same market that share at least one employee.

| Call Sign | Facility ID Number | Type (check applicable box) | Location (city, state) | Time Brokerage Agreement (check applicable box) |
| --- | --- | --- | --- | --- |
| WEKC | 72790 | [✓] AM [ ] FM [ ] TV | Williamsburg, KY | [ ] Yes [✓] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |
| | | [ ] AM [ ] FM [ ] TV | | [ ] Yes [ ] No |

FCC 396
March 2003

**CONTACT PERSON IF OTHER THAN LICENSEE**

| Name Dennis P. Corbett, Esq. | | Street Address 1025 Connecticut Ave NW, Suite 1011 | |
|---|---|---|---|
| City Washington | State DC | Zip Code 20036 | Telephone No. ( )  202-789-3115 |

## FILING INSTRUCTIONS

Broadcast station licensees are required to afford equal employment opportunity to all qualified persons and to refrain from discriminating in employment and related benefits on the basis of race, color, national origin, religion, and sex. See 47 C.F.R. Section 73.2080. Pursuant to these requirements, a license renewal applicant whose station employment unit employs five or more full-time station employees must file a report of its activities to ensure equal employment opportunity. If a station employment unit employs fewer than five full-time employees, no equal employment opportunity program information need be filed. If a station employment unit is filing a combined report, a copy of the report must be filed with each station's renewal application.

A copy of this report must be kept in the station's public file. These actions are required to obtain license renewal. Failure to meet these requirements may result in sanctions or license renewal being delayed or denied. These requirements are contained in 47 C.F.R. Section 73.2080 and are authorized by the Communications Act of 1934, as amended.

DISCRIMINATION COMPLAINTS. Have any pending or resolved complaints been filed during this license term before any body having competent jurisdiction under federal, state, territorial or local law, alleging unlawful discrimination in the employment practices of the station(s)?     ☐ Yes  ☑ No

If so, provide a brief description of the complaint(s), including the persons involved, the date of the filing, the court or agency, the file number (if any), and the disposition or current status of the matter.

| |
|---|
| |

Does your station employment unit employ fewer than five full-time employees?     ☑ Yes  ☐ No
Consider as "full-time" employees all those permanently working 30 or more hours a week.

If your station employment unit employs fewer than five full-time employees, complete the certification below, return the form to the FCC, and place a copy in your station(s) public file. You do not have to complete the rest of this form. If your station employment unit employs five or more full-time employees, you must complete all of this form and follow all instructions.

## CERTIFICATION

This report must be certified, as follows:
A. By licensee, if an individual;
B. By a partner, if a partnership (general partner, if a limited partnership);
C. By an officer, if a corporation or an association; or
D. By an attorney of the licensee, in case of physical disability or absence from the United States of the licensee.

WILLFUL FALSE STATEMENTS ON THIS FORM ARE PUNISHABLE BY FINE AND/OR IMPRISONMENT
(U.S. CODE, TITLE 18, SECTION 1001), AND/OR REVOCATION OF ANY STATION LICENSE OR CONSTRUCTION PERMIT
(U.S. CODE, TITLE 47, SECTION 312(a)(1)), AND/OR FORFEITURE (U.S. CODE, TITLE 47, SECTION 503).

I certify to the best of my knowledge, information and belief, all statements contained in this report are true and correct.

| Signed  /s/ Gerald Parks | Name of Respondent  Gerald Parks |
|---|---|
| Title  Owner | Telephone No. (include area code)  606-549-3000 |
| Date  April 20, 2022 | |

FCC 396 (Page 2)
March 2003

**The purpose of this document is to provide broadcast licensees, the FCC, and the public with information about whether the station is meeting equal employment opportunity requirements.**

## GENERAL POLICY

A broadcast station must provide equal employment opportunity to all qualified individuals without regard to their race, color, national origin, religion or sex in all personnel actions including recruitment, evaluation, selection, promotion, compensation, training and termination.

## RESPONSIBILITY FOR IMPLEMENTATION

A broadcast station must assign a particular official overall responsibility for equal employment opportunity at the station. That official's name and title are:

| NAME | TITLE |
|------|-------|
|      |       |

It is also the responsibility of all persons at a broadcast station making employment decisions with respect to recruitment, evaluation, selection, promotion, compensation, training and termination of employees to ensure that no person is discriminated against in employment because of race, color, religion, national origin or sex.

## I. EEO PUBLIC FILE REPORT

Attach as an exhibit one copy of each of the EEO public file reports from the previous two years. Stations are required to place annually such information as is required by 47 C.F.R. Section 73.2080 in their public files.

| Exhibit No. |
|-------------|
|             |

## II. NARRATIVE STATEMENT

Provide a statement in an exhibit which demonstrates how the station achieved broad and inclusive outreach during the two-year period prior to filing this application. Stations that have experienced difficulties in their outreach efforts should explain.

| Exhibit No. |
|-------------|
|             |

## FCC NOTICE TO INDIVIDUALS REQUIRED BY THE PRIVACY ACT AND THE PAPERWORK REDUCTION ACT

The FCC is authorized under the Communications Act of 1934, as amended, to collect the personal information we request in this report. We will use the information you provide to determine if the benefit requested is consistent with the public interest. If we believe there may be a violation or potential violation of a FCC statute, regulation, rule or order, your request may be referred to the Federal, state or local agency responsible for investigating, prosecuting, enforcing or implementing the statute, rule, regulation or order. In certain cases, the information in your request may be disclosed to the Department of Justice or a court or adjudicative body when (a) the FCC; or (b) any employee of the FCC; or (c) the United States Government, is a party to a proceeding before the body or has an interest in the proceeding. In addition, all information provided in this form will be available for public inspection. If you owe a past due debt to the federal government, any information you provide may also be disclosed to the Department of Treasury Financial Management Service, other federal agencies and/or your employer to offset your salary, IRS tax refund or other payments to collect that debt. The FCC may also provide this information to these agencies through the matching of computer records when authorized. If you do not provide the information requested on this report, the report may be returned without action having been taken upon it or its processing may be delayed while a request is made to provide the missing information. Your response is required to obtain the requested authority. We have estimated that each response to this collection of information will average 1 hour, 30 minutes. Our estimate includes the time to read the instructions, look through existing records, gather and maintain required data, and actually complete and review the form or response. If you have any comments on this estimate, or on how we can improve the collection and reduce the burden it causes you, please write the Federal Communications Commission, AMD-PERM, Paperwork Reduction Project (3060-0113), Washington, D. C. 20554. We will also accept your comments via the Internet if you send them to jboley@fcc.gov. Remember - you are not required to respond to a collection of information sponsored by the Federal government, and the government may not conduct or sponsor this collection, unless it displays a currently valid OMB control number or if we fail to provide you with this notice. This collection has been assigned an OMB control number of 3060-0113.

**THE FOREGOING NOTICE IS REQUIRED BY THE PRIVACY ACT OF 1974, P.L. 93-579, DECEMBER 31, 1974, 5 U.S.C. 552a(e)(3), AND THE PAPERWORK REDUCTION ACT OF 1995, P.L. 104-13, OCTOBER 1, 1995, 44 U.S.C. 3507.**

**ENCLOSURE**

**Before the
Federal Communications Commission
Washington, DC 20554**

|  |  |  |
|---|---|---|
| In re: Application of | ) | |
| | ) | |
| Gerald Parks | ) | |
| | ) | FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | ) | Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) | |
| | ) | |
| To: Chief, Audio Division, Media Bureau | ) | |

## <u>PETITION FOR RECONSIDERATION</u>

**GERALD PARKS**

By: Dennis P. Corbett
    Michael Lazarus
    Ashley Brydone-Jack
    TELECOMMUNICATIONS LAW
    PROFESSIONALS PLLC
    1025 Connecticut Ave, NW, Suite 1011
    Washington, D.C. 20036
    Telephone: (202) 789-3115
    Email: _dcorbett@tlp.law_

His Attorneys

April 20, 2022

# TABLE OF CONTENTS

SUMMARY ...................................................................................................................... ii

I.        BACKGROUND ................................................................................................ 3

II.       RECONSIDERATION OF THE ACTIONS IS WARRANTED ..................... 4

III.      MERITS .............................................................................................................. 6

IV.       CONCLUSION ................................................................................................. 11

## SUMMARY

By this Petition, the Reverend Gerald Parks ("Parks") seeks reconsideration, in context, of the Media Bureau's unexplained and highly unorthodox actions last month, reinstating and granting Parks' 2012 license renewal application for his gospel-formatted AM broadcast station WEKC, Williamsburg, Kentucky ("Station"), an application the Bureau had dismissed in August 2020 without public notice. The Bureau erred by taking these recent actions *without* simultaneously implementing the mandate of Section 307(c)(3) of the Communications Act, which required the Bureau to rescind its prior cancellation of the Station license and allow the Station to resume operations during the pendency of the 2012 renewal application.

The Bureau cancelled the Station license in 2020 after Parks did not file, during the throes of the COVID-19 pandemic, a second renewal application on top of his still-pending 2012 renewal application. But, when the Bureau recently elected to reinstate and grant the 2012 renewal application, the Bureau unquestionably recognized that application's status as pending, subject to agency reconsideration and judicial review. And Section 307(c)(3) unambiguously directs that so long as a broadcast station license renewal application is pending, the Commission "shall continue such [station] license in effect." A *cancelled* license is obviously not *in effect*, mandating Commission rescission of the Station license cancellation here.

In the absence of any explanation on the record of the Commission's recent actions, Parks is left to conjecture that the Commission decision not to simultaneously rescind the cancellation of the Station license and restore the Station's operating authority was taken in reliance on Bureau policy that stations whose renewal applications are still pending at the time the next renewal application would normally be due should file a second application on top of the one pending. But this policy cannot override a statute, and the license cancellation is in

direct conflict with Section 307(c)(3)'s mandate cited above – the Commission may not lawfully cancel a license that, by statutory dictate, continues in effect.

Parks is coupling this Petition with the filing of both: (i) a new renewal application and related waiver request, filed now that the Commission has reinstated the 2012 renewal application and found its grant to be in the public interest; and (ii) an emergency request for authority to resume Station operations.

Grant of all relief requested, relief that is entirely consonant with the plain language of Section 307(c)(3), will manifestly serve the public interest by allowing Parks to resume as quickly as possible his longstanding radio gospel ministry to an underserved area of Appalachia.  The Petition establishes that loss of service from the Station has been devastating not just for Parks, but for the community of Williamsburg and its environs, as well as for local clergy that depend on access to their congregations through the Station, particularly in pandemic times.

Parks respectfully requests favorable Commission action at the earliest possible time.

**Before the**
**Federal Communications Commission**
**Washington, DC  20554**

| | |
|---|---|
| In re: Application of | ) |
| | ) |
| | ) |
| Gerald Parks | ) |
| | )    FCC File No. BR-20120410ABU |
| For Renewal of AM Broadcast Station License | )    Facility ID No. 72790 |
| WEKC, Williamsburg, KY | ) |
| | ) |
| To: Chief, Audio Division, Media Bureau | ) |

## PETITION FOR RECONSIDERATION

The Reverend Gerald Parks ("Parks"), by his attorneys and pursuant to 47 U.S.C. §

405(a) and 47 C.F.R. § 1.106, hereby seeks reconsideration of the actions taken on March 16,

2022 (the "Actions") by the Federal Communications Commission's ("FCC" or "Commission")

Media Bureau ("Bureau") with respect to AM broadcast station WEKC, Williamsburg,

Kentucky, Facility ID 72790 (the "Station").[1]  In support whereof, the following is shown.[2]

By its Actions, the Bureau has, with no explanatory letter or other written ruling: (i)

reinstated Parks' April 10, 2012 application for renewal of the Station license (the "2012

Renewal Application"), an application the Bureau had *dismissed without public notice* on August

---

[1] The FCC gave public notice of the March 16, 2022 Actions by means of *Broadcast Actions*,
Public Notice, Report No. 50200 (MB, rel. Mar. 21, 2022).  This Petition is being submitted
within 30 days of that Public Notice and is therefore timely filed.  Parks recognizes that the FCC
database currently uses the call sign DWEKC to designate the Station.  By this Petition and
related filings described below, Parks seeks to have the "D" removed from the Station's call
sign.

[2] Attachment 1 hereto is a timeline of dates relevant to this Petition.

3, 2020, more than 19 months earlier ("2020 Dismissal of the 2012 Renewal Application");[3] and

(ii) granted that reinstated application.[4]  These Actions were taken without simultaneous

rescission of an August 3, 2020 cancellation of the Station license (the "Cancellation") for failure

to file in 2020 an additional renewal application on top of the pending 2012 Renewal

Application.[5]  In other words, the Actions, some ten years after the filing of the 2012 Renewal

Application, without explanation or justification, approve the reinstatement and grant of renewal

for a license that, as a matter of current Commission record, has been and remains cancelled.

        As shown below, this Petition presents the Commission with an opportunity, consonant

with the plain language of the Communications Act of 1934, as amended (the "Act"), to

authorize Parks to restore immediately, in clear service of the public interest, with no

countervailing public harm, a vital radio voice that has long benefitted listeners in and around

Williamsburg, Kentucky.

---

[3] A previous entry that had been part of the CDBS record of the 2012 Renewal Application, noting the 2020 Dismissal of the 2012 Renewal Application, has disappeared from public view, replaced with a new note: "Renewal application reinstated to pending status and granted 3/16/2022 - no letter sent."  See *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=1495594&File_number=BR-20120410ABU*.  An application cannot be "reinstated" unless it has first been dismissed or denied, in this case dismissed.  Parks notes that the cursory 2020 Dismissal of the 2012 Renewal Application (with or without public notice) did not comply with the clear statutory requirements for processing renewal applications set forth in 47 U.S.C. § 309(k) (i.e., obligating the Commission to decide whether to grant or deny such an application, and to give notice and opportunity for a hearing before any denial).

[4] Pursuant to 47 U.S.C § 309(k)(1), this renewal grant constitutes an affirmative finding by the Commission that "(A) the station has served the public interest, convenience, and necessity; (B) there have been no serious violations by the licensee of [the Act or FCC Rules]; and (C) there have been no other violations by the licensee…which, taken together, would constitute a pattern of abuse."

[5] See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, Public Notice Comment, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=126050&File_number=BL-19890317AD* (last accessed Apr. 14. 2022).

## I.    BACKGROUND

Williamsburg, the Station's community of license, is a small Appalachian city (2010 Census population 5,245) that serves as the seat of Whitley County, Kentucky. Parks, who is now 88 years old, acquired the Station more than two decades ago, when he retired as a church pastor in Norwood, Ohio to devote full time to his then new radio ministry in Williamsburg.[6] He had operated the Station continuously until late January of this year, when he learned of the Cancellation, and took it off air. Until February of this year, Parks has not had the benefit of counsel in Station FCC matters; during time periods relevant to this Petition, the Station struggled mightily to cope with the widespread negative collateral consequences of the COVID-19 pandemic.

With the recent termination of Station service in Williamsburg and its environs, the community has suffered a deep loss. The depth of the damage is reflected in the copy of the letter of Roddy Harrison, Williamsburg's Mayor, which comprises Attachment 3 hereto. Mayor Harrison explains: "The loss of [Station] programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic," where many residents were effectively reduced to shut in status for extended periods of time. As Mayor Harrison makes clear, a primary way that the Station has become a "fixture" in Williamsburg is by providing a platform for numerous local

---

[6] *See Rev. Gerald Parks Inducted Into Williamsburg Gospel Barn's Wall of Honor*, News Journal, Oct. 16, 2019, ***https://www.thenewsjournal.net/rev-gerald-parks-inducted-into-wburg-gospel-barns-wall-of-honor/#:~:text=Honor%20Saturday%20evening.-,Rev.,driving%20them%20around%20the%20country***. Attachment 2 hereto is a description of the Station provided to the undersigned by the Station.

3

churches and pastors to reach their congregations. This part of the Station's programming is a central part of the locally oriented service it has long provided Williamsburg. As Attachment 2 hereto recites, the Station airs a variety of unique local programs on which Station listeners have long depended (e.g., church services, local announcements, an informal venue for non-retail sales and trades). The Station's contributions to its community of license have not been limited to programming. For example, prior to the last two pandemic-limited summers, WEKC produced and hosted at its own cost an annual July 4 day of live gospel music performances in Williamsburg. The concert attracts a wide array of talent and a broad audience to the city and is also aired on the Station.[7] In short, the Station has for many years filled an important role in Williamsburg, and clearly served the public interest through its gospel programming and extensive community involvement.

## II.    RECONSIDERATION OF THE ACTIONS IS WARRANTED

47 U.S.C. § 405(a) ("Section 405(a)") and 47 C.F.R. § 1.106(b)(1) ("Rule 1.106") both give "any party" to an FCC proceeding the right to seek reconsideration of any agency "action" in that proceeding.[8] Parks, the only party to the 2012 Renewal Application, hereby invokes that right.

Reconsideration of the Actions, considered in their context, is clearly warranted here. Indeed, this proceeding presents questions of fundamental importance found at the intersection

---

[7] *See, e.g.,* Mark White, *Independence Day Festivities planned for Wed., July 3 in Corbin; Thurs., July 4 in W'burg,* News Journal, (July 3, 2019), *https://www.thenewsjournal.net/independence-day-festivities-planned-for-wed-july-3-in-corbin-thurs-july-4-in-wburg/ r*

[8] The statutory right to seek reconsideration also extends to non-parties who are "aggrieved," or whose interests are "adversely affected" by the agency action in question. While this test does not apply to Parks as a party to the proceeding, as explained herein, he has nonetheless been aggrieved and adversely affected by the Actions, considered in context.

4

of the Commission's processing of renewal applications under the Act, and the FCC's authority

to terminate station licenses. The Actions ostensibly reinstate and grant the 2012 Renewal

Application. But, considered in light of the agency's failure to simultaneously rescind the

Cancellation and its parallel informal insistence that Parks cannot restore service during the

pendency of the 2012 Renewal Application, the Actions have in fact worked a de facto denial of

relief to which Parks is entitled under the Act. By this Petition, Parks asks the Bureau to

conform its Actions to the dictates of the Act by rescinding the Cancellation, allowing the

immediate restoration of Station service to the residents of Williamsburg and its environs, and

processing the new Station renewal application and related waiver request that are being

concurrently filed herewith.

It is noteworthy that this Petition comfortably satisfies multiple tests for seeking full

Commission review. That is, the Actions, viewed in context, are in conflict with statute (e.g.,

Section 307(c)(3), defined below); involve a question of law or policy which has not previously

been resolved by the Commission (e.g., whether the FCC may lawfully maintain the cancellation

of a license that is the subject of a pending renewal application); involve application of a policy

which should be overturned or revised (e.g., the FCC's policy of cancelling radio licenses when a

second renewal application is not filed on top of a still pending one); and involve prejudicial

procedural error (e.g., agency cancellation of a license where no public notice has been given of

an erroneous dismissal of a pending renewal application for that same license).[9]

General public interest considerations also clearly favor grant of this Petition. As noted

above, the Station has long served a vital role in Williamsburg – an underserved small

Appalachian city which has just two other licensed full-power radio stations and no licensed

---

[9] See 47 C.F.R. §§ 1.115(b)(2)(i), (ii), (iii) and (v).

television stations.  As Attachment 3 hereto makes plain, the community highly values the

programming uniquely provided by the Station.  This Petition presents the Commission with the

opportunity to allow Parks to quickly *restore* a deeply lamented loss of important local service,

in service of the clear dictates of the Act and the overall public interest.

### III.    MERITS

The Bureau clearly erred in reinstating and granting the 2012 Renewal Application

without following the dictates of 47 U.S.C. § 307(c)(3) ("Section 307(c)(3)") and simultaneously

rescinding the license's Cancellation, which would allow the Station to resume on-air operations

and to file for renewal beyond the newly established expiration date.  Instead, the highly

unorthodox Actions have apparently endeavored to remedy prior Bureau error while still keeping

the Station off the air, contrary to the plain language of Section 307(c)(3).

Parks, through counsel, had recently informally asked the FCC to give long overdue

public notice of the 2020 Dismissal of the 2012 Renewal Application.  The FCC elected instead

to take the highly unorthodox Actions.  The most logical interpretation of the reasoning behind

the Actions appears to be that they are designed to solve the FCC failure to provide public notice

with respect to the 2012 Renewal Application[10] while nominally leaving the Station license

cancelled, thereby preventing the Station from resuming operations.  Consistent with such an

approach, Commission Staff has informally advised Parks that, even after the Actions, the

Cancellation remains in effect (and the Station must remain off air).

But, the plain language of Section 307(c)(3) does not allow the Commission to reinstate

the 2012 Renewal Application *and* keep the Cancellation in place.  To the contrary, Section

307(c)(3), which governs broadcast station license terms, directs that "pending any

---

[10] *But see* the last sentence of n. 3 *supra*.

6

administrative or judicial hearing and final decision on such [a renewal] application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, the Commission *shall continue such license in effect*." (Emphasis added).[11]  Because the 2012 Renewal Application today remains subject to agency reconsideration and judicial review, this statutory mandate necessarily nullifies the Cancellation.  This simple, fundamental principle animates this Petition – a license that the Act directs the FCC to continue in effect cannot lawfully be cancelled by the agency.

    With reinstatement of the 2012 Renewal Application and the resultant nullification of the Cancellation, the door has opened to Parks' filing of a new Station renewal application for a term ending August 1, 2028, an action Parks is taking today, with an appropriate waiver request.  Today's filing of a new renewal application is clearly appropriate – because it comes within 30 days of public notice of reinstatement and grant of the 2012 Renewal Application, there will be no gap between its filing and the life of the Station license under Section 307(c)(3). And, while the Act precludes the Commission from *granting* a radio broadcast renewal for a term exceeding eight years, nothing in the Act mandates that licensees *file* renewal applications every eight years.[12]  Indeed, as discussed below, the Bureau in *Magnolia* entertained and granted a renewal application filed more than fifteen months after a station's previous eight-year term had ended.  Furthermore, far from establishing a regime in which licensees must file multiple

---

[11] Sections 405 and 402 "of this title" as used in Section 307(c)(3) refer to statutory provisions governing agency reconsideration and judicial review.  47 C.F.R. § 1.65(a) is consistent with Section 307(c)(3) in that it provides that an application "is pending before the Commission from the time it is accepted for filing by the Commission until a Commission grant or denial of the application is no longer subject to reconsideration by the Commission or to review by any court."

[12] "Upon application therefor, a renewal of such license may be granted from time to time for a term of not to exceed 8 years from the date of expiration of the preceding license...." 47 U.S.C. § 307(c)(1).

pending renewal applications on top of each other, Section 307(c)(3) makes clear that a license must be continued in effect and cannot be treated as expired for however long a renewal application relating to that license is pending.[13]

47 C.F.R. § 73.3539(a) is not inconsistent with Section 307(c)(3). Rule 73.3539(a) requires that renewal applications for broadcast stations be filed "not later than the first day of the fourth full calendar month prior to the *expiration date* of the license sought to be renewed." (Emphasis added).[14] But this language cannot reasonably be read to apply to circumstances like this one, where the 2012 Renewal Application remained pending on April 1, 2020, and no license had been issued to Parks establishing an August 1, 2020 expiration date. The license's last expiration date was August 1, 2012, the 2012 Renewal Application was still pending of August 1, 2020, and Section 307(c)(3) demands that the Station license continue in effect.[15]

While the Commission released *Radio License Expirations*, Public Notice, DA 20-737, on July 15, 2020 listing the WEKC license as one of 18 broadcast licenses held by 18 different licensees that would expire if no renewal application was filed prior to the "date of expiration" of August 1, 2020, Parks was unaware of this Public Notice and to the best of his knowledge the

---

[13] Accordingly, Parks is also filing this day an Emergency Request for Immediate Restoration of Station Operating Authority.

[14] "Expiration" is defined as "the fact of coming to an end or the point at which something ends : TERMINATION." *Expiration, noun*, Merriam-Webster, https://www.merriam-webster.com/dictionary/expiration (last accessed Apr. 19, 2022). A license which continues in effect has obviously not reached the point at which it comes to an end.

[15] Even assuming arguendo that the 2020 Dismissal of the 2012 Renewal Application had been compliant with the Act, because the Commission failed to give public notice thereof, that dismissal did not terminate the pending status of the 2012 Renewal Application. As noted herein, by its Actions, the FCC has now granted the 2012 Renewal Application, *for the first time* establishing an August 1, 2020 expiration date for the Station license. Parks is accordingly submitting this day with the FCC (in paper form due to the agency's failure to rescind the Cancellation) a new application seeking to renew the Station license to August 1, 2028, the maximum length permitted by the Act.

Commission did not send him a copy of it. In any event, as noted above, Parks did not at that time hold a license with an expiration date of August 1, 2020. Rather, he held the pending 2012 Renewal Application, upon which no agency action had yet been taken. This Public Notice did not differentiate between licensees with and without pending renewal applications, and therefore did not address the fundamental issues raised by this Petition.

Parks notes that the Bureau had released a Public Notice on April 15, 2019 (of which Parks was unaware) advising radio station licensees with then-still-pending license renewal applications that they should file another renewal application on top of the one pending,[16] Of course, no such guidance would have been needed if the plain language of the Act required broadcast licensees to file a second renewal application on top of one that was still pending. And, importantly, the Public Notice cites no statute or Rule in support of this advice.[17] In any event, for the reasons set forth in this Petition, the establishment of such procedures and the issuance of such guidance cannot override the plain language of Section 307(c)(3) and cannot justify the dismissal of the 2012 Renewal Application or cancellation of the Station license during the pendency of that application.

Parks also notes that in *Pollack/Belz Communication Company, Inc.*, 29 FCC Rcd 14635 (Med. Bur. 2014), the Video Division adopted a Forfeiture Order applicable to a television station licensee that did not file a new renewal application on top of a still pending one from the prior renewal cycle until two days *after* the generic expiration date of licenses issued to stations

---

[16] *Media Bureau Announces Procedures For 2019-2022 Radio License Renewal Cycle*, DA 19-285, rel. Apr. 15, 2019.

[17] Clear articulation/fair notice by the Commission of the reasoning behind and support for agency "rules of the road" is a bedrock requirement of the Due Process Clause of the Fifth Amendment. *See, e.g., FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).

in the State of Louisiana.  *Pollack* was a $2,400 forfeiture case, in which the Video Division

pointedly did *not* cancel that station's license, even though it had expired two days *before* the

licensee filed a new renewal application, which the licensee termed a "supplement" to its still

pending prior cycle renewal application.  To the contrary, the FCC granted both the long pending

and "supplemental" renewal applications on the same date in October 2014, prior to issuance of

the Forfeiture Order.  Parks notes the starkly disparate treatment afforded him in this case, where

the FCC never gave public notice of the dismissal of the 2012 Renewal Application and

cancelled the Station license a mere two days after August 1, 2020.[18]

In a recent decision, *Magnolia State Broadcasting, Inc.*, Memorandum Opinion and

Order and Notice of Apparent Liability, DA 22-105 (Aud. Div., rel. Feb. 3, 2022), the Audio

Division levied a $7,000 forfeiture on the licensee of AM station WMOX, but made clear its

intention to grant WMOX's related renewal application, one that had not been filed until more

than 15 months after the expiration date of the underlying license.[19]  In addition to indicating that

the FCC was favorably disposed toward granting a renewal application submitted so long after

an expiration date, that decision incorporated two rulings which indicate how strongly the FCC

normally disfavors license cancellation as a remedy: the Audio Division (i) elected to treat a

request for reinstatement of the station license filed after the license's expiration date as if were a

properly filed petition for reconsideration; and (ii) declined to find disqualifying the licensee's

failure to apply for or obtain special temporary authority to operate during the *extended* period

---

[18] *See Melody Music, Inc. v. FCC*, 345 F.2d 730 (D.C. Cir. 1965) (the Commission is required to treat similarly situated parties similarly).

[19] The relevant WMOX license expiration date was June 1, 2020.  The licensee did not submit an application for renewal of that license until September 25, 2021, *nearly sixteen months* later. *See Magnolia*, 29 FCC Rcd at 14635.

following expiration of the Station's license.  Importantly, *Magnolia* was *not* a case involving a still pending license renewal application from a prior cycle; the licensee of WMOX did not enjoy the protection of the life of its license afforded by Section 307(c)(3).[20]

## IV.    CONCLUSION

For all of the reasons set forth above, Parks respectfully requests that the Bureau reconsider its decision to take the Actions without the simultaneous rescission of the Cancellation and restoration of the Station's license mandated by Section 307(c)(3).  Following such rescission, in order to permit the Station to resume operations to serve the listening public in and around Williamsburg, Kentucky at the earliest possible time, Parks requests expeditious grant of the emergency request for immediate restoration of Station operating authority and grant of the new renewal application filed concurrently with this Petition.

Respectfully submitted,

**GERALD PARKS**

By: /s/ Dennis P. Corbett
Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
TELECOMMUNICATIONS LAW PROFESSIONALS PLLC
1025 Connecticut Ave, NW, Suite 1011
Washington, D.C. 20036
Telephone: (202) 789-3115
Email: *dcorbett@tlp.law*

April 20, 2022               His Attorneys

---

[20] In the prior cycle, the WMOX renewal application was filed on February 1, 2012 and granted on May 25, 2012.  *See* WMOX Application for Renewal, CDBS File No. BR-20120201AKO, available at: *http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/app_det.pl?Application_id=1486289*.

11

## ATTACHMENT 1

### Timeline of Dates Relevant to This Petition for Reconsideration

April 10, 2012 – Parks files 2012 Renewal Application

May 14, 2012 – FCC gives public notice of acceptance for filing of 2012 Renewal Application

November 19, 2019 -- FCC gives second public notice of acceptance for filing of 2012 Renewal Application

July 15, 2020 – FCC includes WEKC on public notice listing 18 licensees that did not file a renewal application by April 1, 2020

August 3, 2020 – FCC dismisses 2012 Renewal Application (no public notice of this action ever given)

August 3, 2020 – FCC cancels WEKC license

August 6, 2020 – FCC gives public notice of WEKC license cancellation

March 16, 2022 – FCC reinstates and grants 2012 Renewal Application

March 21, 2022 – FCC gives public notice of reinstatement and grant of 2012 Renewal Application

**ATTACHMENT 2**

# WEKC

402 Main Street
Williamsburg, Kentucky 40769
(606)549-3000

WEKC (710 AM), is a faith based community involved voice whose primary purpose is to spread the gospel throughout the Whitley, Knox, Laurel, McCreary counties of Kentucky and Campbell County in Tennessee. In conjunction with providing spiritual support, the station also provides a vital source of information for many residents.

The Parks family including the Reverend Gerald Parks, his brother, father and grandfather has a long history of working to spread the gospel in Whitley County and surrounding areas. So when Reverend Gerald Parks found out WEKC was for sale, he felt it would be a means to reach more people in the community. He purchased the station in July, 2000 and converted it from a rock station to a gospel station. It was, and is, his intention that WEKC should become a vital part of the community by providing local news and supporting various activities.

When COVID-19 forced the Governor of Kentucky to close the churches, the staff and management of WEKC decided to implement a program to help the local churches. It was decided that WEKC would give free air time to any pastor who wanted to continue ministering to their congregation while the church buildings were ordered closed. In this way the ministers could reach out to those people who are unable to attend normal church services. This practice continued until the Governor of Kentucky allowed church services to resume.

The listening audience for WEKC consists mainly of older people who rely on WEKC for news and events. Therefore, as a public service, WEKC provides local announcements and reads the local obituaries three times a day. WEKC is the only AM station in the area that provides this service. The Williamsburg newspaper is only published once a week and often the events mentioned are over before the newspaper is delivered.

There is a religious faction of people in the WEKC listening area that do not believe in television or computers. For these people the only source of local news and announcements has been WEKC.

The service area of WEKC is very rural. It is with this in mind, that a program called Tri-County Spotlight was created. It allows listeners to let their neighbors know if they have items to sell or trade. This program has been very popular receiving around 100 calls during the hour and 15 minute program. This is a free service to the listeners and the only restriction is that retail businesses can't advertise.

The clientele for WEKC are programs provided by various churches, both locally and from different locations across Kentucky and surrounding states. They also broadcast commercials that promote local businesses and events.

WEKC supports the community in other ways not related to any specific broadcast. In cooperation with the City of Williamsburg, WEKC has provided music concerts. Partnering with the City of Williamsburg, that graciously agreed to close downtown streets, WEKC set up stages and vending areas to provide free gospel concerts.

WEKC worked with a new Eastern Kentucky program created to address high rates of domestic and sexual violence in the region through education and conversation. The Cumberland River Community Green Dot program has formed a coalition of community members in the Whitley County area to improve efforts at violence prevention. In support of this program, WEKC allowed a mural to be painted on the side of the radio station that was visible from the main streets of Williamsburg.



No matter what other activity or event WEKC is involved with, they will never stray from their primary goal which is to be a blessing to all those who listen to it.

**ATTACHMENT 3**

February 8, 2022

Federal Communications Commission
Washington, DC

Re: Restoration of WEKC Radio Service to Williamsburg, Kentucky

Dear FCC:

As the mayor of Williamsburg, Kentucky, I write about a local matter of urgent priority.

I recently became aware of the loss of radio service that had for a long time been provided by the Reverend Gerald Parks to our community over AM Radio Station WEKC. Reverend Parks is a critical part of the fabric of Williamsburg, and his station's vibrant gospel programming has been a fixture here for many, many years.

The loss of that programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic.

As a local government official, I understand and respect the fact that difficult decisions come with the territory. But, in this case, I am asking you to explore whether there is a way to allow WEKC to restore and maintain its presence on the air. Such relief would spare our community from suffering such a profound loss of such an important contributor to our quality of life.

Thank you very much in advance for your consideration of the concerns of Williamsburg and its residents arising from the damaging loss of WEKC service.

My understanding is that Reverend Parks will submit this letter to the FCC as part of a larger filing seeking restoration of WEKC service.

Sincerely,

Roddy Harrison
Mayor, Williamsburg, Kentucky

**Attachment 6**

**Gerald Parks March 9, 2023 Petition for Further Reconsideration**

**STAMP & RETURN**

Before the
**Federal Communications Commission**
Washington, DC 20554

FCC MAIL ROOM

MAR 09 2023

RECEIVED & INSPECTED

| | |
|---|---|
| In re: Application of | ) |
| | ) |
| Gerald Parks | ) |
| | ) |
| For Renewal of AM Broadcast Station License | )   FCC File No. BR-20120410ABU |
| WEKC, Williamsburg, KY | )   Facility ID No. 72790 |
| | ) |
| To: Chief, Audio Division, Media Bureau | ) |

<u>**PETITION FOR FURTHER RECONSIDERATION**</u>

**GERALD PARKS**

By: Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
TELECOMMUNICATIONS LAW
PROFESSIONALS PLLC
1025 Connecticut Ave, NW, Suite 1011
Washington, D.C. 20036
Telephone: (202) 789-3115
Email: *dcorbett@tlp.law*

March 9, 2023                         His Attorneys

## TABLE OF CONTENTS

**SUMMARY** ................................................................................................... iii

**I.      FCC RULES PERMIT THE FILING OF THIS FURTHER PFR** ............................ 1

**II.     BACKGROUND** ........................................................................................... 2

**III.    THE LETTER RULING ARBITRARILY AND CAPRICIOUSLY, IN
         VIOLATION OF THE PLAIN LANGUAGE OF SECTION 307(C)(3),
         CONTINUES TO KEEP THE STATION OFF AIR DURING THE PENDENCY
         OF THIS APPEAL** ....................................................................................... 3

**IV.     THERE IS NO LEGAL BAR TO REINSTATEMENT AND RENEWAL OF THE
         STATION'S LICENSE** .................................................................................. 7

**V.      PARKS LONG AGO RESOLVED THE RED LIGHT ISSUE RELATING TO THE
         2012 RENEWAL APPLICATION** .................................................................. 10

**VI.     CONCLUSION** ........................................................................................... 11

**SUMMARY**

This case turns on the FCC Media Bureau's lack of fidelity to the plain language of a statutory provision, 47 U.S.C. § 307(c)(3), which directs the Commission to continue a license in effect during the pendency of a renewal application. So far, the Bureau has refused to follow this dictate with respect to the license of gospel-programmed AM broadcast station WEKC, Williamsburg, Kentucky, held by 89-year-old minister and sole proprietor Gerald Parks. Instead, the Bureau moved to cancel Parks' license in early August 2020, shortly after Parks did not file a second renewal application by August 1 of that year, while his license renewal application filed in April 2012 for WEKC remained pending. The Bureau simultaneously (in early August 2020) moved to dismiss the 2012 Renewal Application, but did not give the requisite public notice of that action, thereby failing to trigger Parks' statutorily guaranteed reconsideration rights under 47 U.S.C. § 405(a).

In the February 7, 2023 Letter Ruling which is the subject of this Petition for Further Reconsideration, the Bureau has compounded its lengthy failure to give the vital public notice of the 2012 Renewal Application's dismissal. Among other things, the Letter Ruling has: (i) reversed course on the Bureau's unexplained March 2022 grant of the 2012 Renewal Application, reinstating the August 2020 dismissal thereof, and then arbitrarily and capriciously predicated a later decision within the Letter Ruling on the grant it just rescinded; (ii) irrationally constricted the scope of Section 307(c)(3) to applications formally designated for hearing, in contravention of the expansive plain language of the provision and hornbook legal principles; and (iii) pushed all chips in on the Bureau's 2020 Station license cancellation efforts that Section 307(c)(7) forbids unless and until the dismissal of the 2012 Renewal Application has become

iii

final, no longer subject to administrative or judicial reconsideration or review.  That finality has not been achieved to this day.

The 2012 Renewal Application indisputably remains pending.  By statutory command, the license cancellation is incurably premature, the Station license must be continued in effect, and the Station's operational authority must be restored immediately, pending final disposition of this case.

**Before the**
**Federal Communications Commission**
**Washington, DC  20554**

| | |
|---|---|
| In re: Application of | ) |
| | ) |
| Gerald Parks | ) |
| | ) |
| For Renewal of AM Broadcast Station License | )   FCC File No. BR-20120410ABU |
| WEKC, Williamsburg, KY | )   Facility ID No. 72790 |
| | ) |
| To: Chief, Audio Division, Media Bureau | ) |

## PETITION FOR FURTHER RECONSIDERATION

The Reverend Gerald Parks ("Parks"), by his attorneys and pursuant to 47 U.S.C. §

405(a) and 47 C.F.R. § 1.106, hereby files this Further Petition for Reconsideration ("Further

PFR") of the actions taken by Media Bureau ("Bureau") of the Federal Communications

Commission ("FCC" or "Commission") by means of the February 7, 2023 Letter from Albert

Shuldiner, Chief, Audio Division to Dennis P. Corbett, et al., DA 23-107, 1800 B3-ATS ("Letter

Ruling") with respect to AM broadcast station DWEKC, Williamsburg, Kentucky, Facility ID

72790 (the "Station").[1]

### I.     FCC RULES PERMIT THE FILING OF THIS FURTHER PFR

The Letter Ruling *granted in part* Parks' April 20, 2022 Petition for Reconsideration

("PFR") of, inter alia, the cancellation of the Station's license.  That is, the Letter Ruling (at p. 5)

*rescinded* the Bureau's March 16, 2022 reinstatement and grant of Parks' April 10, 2012

---

[1] This Further PFR is being submitted within 30 days of the FCC's February 7, 2023 publication
of the Letter Ruling in its Daily Digest and is therefore timely filed.  Parks recognizes that the
FCC database currently uses the call sign DWEKC to designate the Station.  By this Further PFR
and previous Parks' filings with the Commission, Parks seeks to have the "D" removed from the
Station's call sign.

application for renewal of the Station license ("2012 Renewal Application").[2]  47 C.F.R. § 1.106(k)(3) provides in relevant part as follows: "Any order disposing of a petition for reconsideration which reverses or modifies the original order is subject to the same provisions with respect to reconsideration as the original order."  Here, the Letter Ruling has reversed (necessarily modified) the Bureau's original March 16, 2022 action granting the 2012 Renewal Application, fully justifying the filing of this Further PFR.

As will be shown below, additional grounds support the filing of this Further PFR.  That is, among other things, the Letter Ruling sets forth an untenably narrow interpretation of a key statutory provision, 47 U.S.C. § 307(c)(3) ("Section 307(c)(3)"), a provision that looms over this proceeding; it incomprehensibly and contradictorily relies on the *grant* of the 2012 Renewal Application which the Letter Ruling itself *rescinds*; and it contains a material misstatement of fact that demands correction.  Pursuant to 47 C.F.R. § 1.115(c), Parks must give the Bureau a chance to rule on these factual and legal issues by means of this Further PFR: "No application for review will be granted if it relies on questions of fact or law upon which the designated authority has been afforded no opportunity to pass."

## II.    BACKGROUND[3]

The Letter Ruling:

- Denies (at pp. 8-9) Parks' Emergency Request for immediate restoration of Station operating authority pursuant to Section 307(c)(3);
- Dismisses (at p. 4) as untimely Parks' requests for reconsideration of the cancellation of the Station license and for reinstatement of that license;
- Rescinds (at p. 5) the Bureau's March 16, 2022 reinstatement and grant of the 2012 Renewal Application;

---

[2] This rescission had the practical effect of reinstating the Bureau's August 3, 2020 dismissal of the 2012 Renewal Application, an action for which, until the Letter Ruling, the Bureau had never given the public notice required by statute and rule.

[3] To avoid unnecessary repetition, background facts set forth in the PFR, which are already a matter of record in this case, are hereby incorporated herein by reference.

2

- Finds (at pp. 5-6) a statutory bar in 47 U.S.C. § 307(c)(1) to the acceptance of the new license renewal application ("New Renewal Application") Parks filed with the Commission on April 20, 2022 along with the PFR, accompanied by an appropriate waiver request;
- Dismissed (at n. 43) as untimely Parks' unopposed Supplement; and
- Finds (at p. 2) that Parks made no effort to resolve the 2012 Renewal Application's "red light" processing status.

Each of these actions/findings lacks merit.  They are challenged below.

### III.    THE LETTER RULING ARBITRARILY AND CAPRICIOUSLY, IN VIOLATION OF THE PLAIN LANGUAGE OF SECTION 307(C)(3), CONTINUES TO KEEP THE STATION OFF AIR DURING THE PENDENCY OF THIS APPEAL

From the time Parks first sought the assistance of counsel in this case in or around late January 2022,[4] counsel has without success asked the FCC to allow the Station back on the air pursuant to: (i) the plain language of Section 307(c)(3); and (ii) the inherent public interest in having an AM gospel station continue to serve its devoted listening public in and around a community in the heart of Appalachia.  This Further PFR asks the Bureau to reconsider and reverse its refusal to date to allow the Station back on the air immediately, a remedy compelled by Section 307(c)(3).  That provision is headed "Continuation Pending Decision" and provides in full as follows: "Pending any administrative or judicial hearing and final decision on such an application and the disposition of any petition for rehearing pursuant to section 405 or section 402 of this title, the Commission shall continue such license in effect."

The Letter Ruling keeps in place the Bureau's now long-running edict that the Station remain off the air, on two grounds.

---

[4] Parks was then an 88 year-old (now 89) minister whose late-life mission, which he has been focused on fulfilling for some two decades, has been to bring gospel music and related programming to the residents of a small Appalachian town, Williamsburg, Kentucky, and its environs.

First, the Letter Ruling finds that "Section 307(c)(3), which requires the Commission to 'continue [the license under review] in effect' pending a 'hearing and final decision' on a renewal application, does not apply when a renewal application has been *granted* without a hearing, as *is* the case with the 2012 Renewal Application."[5]  While Parks would not accept this rationale even if grounded in fact,[6] it is completely divorced from the reality the Letter Ruling itself creates.  That is, earlier in the Letter Ruling, the Bureau *rescinded* the reinstatement and grant of the 2012 Renewal Application.  So, the 2012 Renewal Application is indisputably no longer "granted."  Like the scarecrow in the Wizard of Oz, the Letter Ruling is simultaneously pointing in two opposite directions, relying on a grant it has just rescinded.  Such irrational decision making constitutes reversible error.

Second, the Letter Ruling compounds this factual error by adding a legal one, in the form of this finding on the same page 9: "Rather, section 307(c)(3) addresses situations where a renewal application has been designated for 'hearing.'" The Letter Ruling cites *nothing* in support of this remarkable sentence, which runs counter to the statute's plain language and context, basic principles of statutory construction, and common sense.  The Letter Ruling seizes on the provision's single use of the word "hearing" in an attempt to narrow the entire provision's reach to the severely circumscribed universe of license applications *designated* for hearing before an Administrative Law Judge.  The Bureau is well aware that only a miniscule number of the thousands of broadcast applications it processes are ever designated for hearing.

---

[5] Letter Ruling at p. 9 (footnote omitted) (first emphasis in original; second emphasis added). The Letter Ruling itself is not paginated.

[6] The PFR timely sought reconsideration of the March 2022 grant of the 2012 Renewal Application, on grounds, inter alia, that the grant, in context, was a de facto denial.

In fact, Section 307(c)(3) is embedded within 47 U.S.C. Sec. 307 ("Section 307") as a whole, which confers on the FCC its basic authority to entertain, process, and grant or deny basic broadcast applications, expressly including applications for license renewal.  And, Section 307 in turn is embedded within the Communications Act of 1934, as amended, which, through such provisions as 47 U.S.C. Secs. 405 and 402 ("Section 405" and "Section 402"), establishes a structure for agency and judicial reconsideration and review of agency actions, encompassing actions taken by the full Commission or on delegated authority.

Within this context, Section 307(c)(3) (again, headed "Continuation Pending Decision") mandates, consistent with the most fundamental principles of administrative due process, that while an FCC decision on a license renewal application remains pending (still subject to agency or judicial review), the FCC "*shall continue* such license in effect."[7]  The concept of "designated for hearing" is nowhere to be found in Section 307(c)(3).  Rather, the provision expressly references Section 405 *and* Section 402, which are the basic provisions allowing for reconsideration and judicial review of *all* agency actions, not just those subject to a hearing designation order.  The single use of the word "hearing" cannot bear the weight the Letter Ruling assigns it – of overriding the *considerable* remainder of the language in Section 307(c)(3).  That additional language includes the very broad phrases "*any* administrative *or judicial* hearing," as well as "*and final decision* on such an application *and* the disposition of *any* petition for *rehearing* pursuant to section 405 or section 402 of this title." (Emphasis added).  Like the word "hearing," the word "rehearing" is obviously not used literally in Section 307(c)(3).  That is

_____

[7] (Emphasis added).  The word "shall" when used by Congress in a statute is the language of command.  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) ("[t]he Supreme Court and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command.").

because the word "rehearing" is nowhere to be found in Section 405 or Section 402.  Instead, those provisions cited in Section 307(c)(3) broadly govern agency "reconsideration" and judicial "review."  Reconsideration and review have been reduced in Section 307(c)(3) to the shorthand "rehearing."[8]

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) articulates the abiding principle of statutory construction that governs here: "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...."  The Letter Ruling completely ignores this U.S. Supreme Court dictate, reading the lion's share of Section 307(c)(3)'s language right out of the provision, leaving only this brief paraphrase: "The Commission shall continue in effect any such license designated for hearing."  Clearly, Congress mandated in the broadly worded Section 307(c)(3) that before the Commission could lawfully order a station seeking license renewal to go off air, the Commission needed to have in hand a final decision, no longer subject to agency reconsideration or judicial review, dismissing or denying that renewal.  Here, that is far from the case.

This reading of Section 307(c)(3)'s plain language also makes practical sense.  Pulling a broadcast station off of the air is the ultimate penalty, with catastrophic effects for the Station and its listeners, particularly listeners in a rural area like Williamsburg, Kentucky, where media options are quite limited. Section 307(c)(3) ensures that a licensee is permitted to exhaust all administrative remedies before such a hammer falls.  The procedural protection built into Section 307(c)(3) certainly serves the public interest.

---

[8] It is also noteworthy that Section 307(c)(3) contains no proviso that the license shall continue in effect *only so long as* the licensee files a new renewal application on top of the one on which the FCC has not yet taken final action.

The Letter Ruling, *for the first time*, provides public notice of the dismissal of the 2012 Renewal Application.  That agency action remains subject to this Further PFR and any such further reconsideration and review as may eventuate.  The FCC must accordingly continue the Station's license in effect and allow the Station back on the air immediately.

## IV.     THERE IS NO LEGAL BAR TO REINSTATEMENT AND RENEWAL OF THE STATION'S LICENSE

The Letter Ruling's cursory and entirely inadequate rejection of the applicability of Section 307(c)(3) to this case helps explain its erroneous related finding (at p. 4) that the Bureau's failure to give public notice of its dismissal of the 2012 Renewal Application was "harmless" because of subsequent actions the FCC took to cancel the Station license (due to Parks' failure to file a second renewal application on or before August 1, 2020).  But the Commission's reliance on its preferred sequencing of consequences cannot defeat the dictates of the Act.[9]  That is, to this day, the FCC has yet to finally dispose of the 2012 Renewal Application.  As a result, *that application remains pending*, definitively so.  After all, the Letter Ruling rescinded the Bureau's prior grant of that application and gave public notice for the first time ever of the application's August 3, 2020 dismissal.  And, until such a final adverse disposition occurs, if ever, the Station license remains in effect, subject to further renewal.  In that regard, Parks filed a new renewal application for the Station with the Commission on April 20, 2022, along with an appropriate waiver request.

The Bureau should revisit and reverse its conclusion that its failure to give public notice of its dismissal of the 2012 Renewal Application (at least until issuance of the Letter Ruling) was

---

[9] Similarly, Bureau public notices proclaiming that a broadcast station license will "expire" on a fixed date that is part of a regimented eight-year cycle, even in cases where a prior-filed renewal application remains pending, cannot lawfully override Section 307(c)(3)'s mandate that a license with a pending renewal application shall continue in effect until its final disposition.

"harmless" error.  Under Section 405, public notice of agency action is one of the lynchpins of administrative due process, in that it triggers a 30-day period for the exercise of an applicant's statutory right to file a petition for reconsideration of any agency action.[10]  A failure to comply with such an important statutory mandate cannot fairly be characterized as harmless.  Indeed, in this case, the Bureau's failure to give that notice has produced a confusing and consequential cascade of *subsequent* agency action, including two head-spinning reversals of course – first, what the Letter Ruling now characterizes (at p. 5) as the Bureau's unexplained March 16, 2022 grant of the application it had previously dismissed, and now, the Letter Ruling's rescission of *that* grant (and concomitant reinstatement of the August 3, 2020 application dismissal).  Given this history, the Commission cannot reasonably dismiss its own statutory compliance failures as "harmless" while simultaneously treating any Parks' error as fatal to the Station's license, the same license that Section 307(c)(3) mandates the FCC "continue in effect" until final disposition of the 2012 Renewal Application.

The Letter Ruling's conclusion (at p. 8), without citation to any statutory provision, that "the Bureau has no authority to reinstate a cancelled license once the 30-day statutory period for seeking reconsideration has elapsed" has it exactly backwards.  As shown above, given the plain language of Section 307(c)(3), *the Bureau has no authority to cancel a license where an application for renewal thereof remains pending*.  Rather, the Bureau must continue such a license in effect.

Phrased another way, under the fundamental licensing structure Congress put in place in Section 307, with its assurance of due process in Section 307(c)(3), the Commission must

---

[10] "A petition for reconsideration must be filed within thirty days from the date upon which *public notice* is given of the order, decision, report, or action complained of." 47 U.S.C § 405(a) (emphasis added).

*complete* the process of dismissing a renewal application before it may lawfully move to cancel the underlying license.  The Bureau lacks statutory authority to permanently cancel a license – the ultimate penalty for a licensee - which Section 307(c)(3) demands the FCC continue in effect.  To borrow a phrase from appellate communications law, in this case, the FCC's cancellation of the Station's license was "incurably premature."[11]  It cannot survive.

The plain language of Section 307(c)(1) does *not* support the Letter Ruling's finding (at pp. 5-6), premised on the Bureau's ruling in *Pollack/Belz Communications Company*, *Inc.*, 29 FCC Rcd 14635 (MB 2014), that license holders are statutorily required to file a license renewal application every eight years, whether their most recent renewal application has been acted on or not.  First, *Comcast Corp. v. FCC*, 526 F.3d 763, 769 (D.C. Cir. 2008) holds that a Bureau ruling like *Pollack/Belz,* which the full Commission has not affirmed, binds only the parties to the decision, not all FCC licensees. "[U]nchallenged staff decisions are not Commission precedent . . . ." *Id*. at 770.  Second, Section 307(c)(1) does *not* obligate licensees to file license renewal applications every eight years.  Rather, Section 307(c)(1) merely *preclude*s *the Commission from granting* license renewal for a term longer than eight years.  But, in cases where the FCC has not acted on a renewal application by the end of a term of eight years or less, the statute provides the remedy cited above – Section 307(c)(3) prevents any license lapse ("the Commission shall continue such license in effect").  After all, in cases like this one, the licensee has not been issued a new license with a new expiration date.[12]  To the extent the Bureau has attempted to create a

---

[11] *Council Tree Commc'ns v. FCC*, 503 F.3d 284, 285 (3rd Cir. 2007) (subsequent history omitted).

[12] In other words, Parks held no license showing an August 1, 2020 expiration date.  The last renewal issued to Parks was set to expire on August 1, 2012.

requirement to file a second, redundant license renewal application, it founders on the shoals of Section 307(c)(3).[13]

### V.    PARKS LONG AGO RESOLVED THE RED LIGHT ISSUE RELATING TO THE 2012 RENEWAL APPLICATION

The Letter Ruling (at p. 2) states that Parks to this day has remained delinquent on past regulatory fee debt to the Commission.  The relevant sentence on that page states in relevant part that: "Parks took no action to…resolve the redlight hold…."  However, this statement in the Letter Ruling is not true; and it has unfortunately damaged Parks' reputation.  Parks previously informed the Bureau that Parks retired this debt through a one-year installment plan entered into with the U.S. Department of the Treasury.[14]  Parks completed these payments *after*, unbeknownst to him, the Bureau had made its incurably premature move to cancel the Station license.[15]

---

[13] Parks notes that he moved to ensure continuity of his license on the other side of grant of his 2012 Renewal Application by filing the New Renewal Application on April 20, 2022, accompanied by an appropriate waiver request.

As for the Supplement, it merely formalized a response previously emailed to the Bureau as part of an exchange designed to assist the Bureau's acknowledged internal search for additional precedent relevant to the scenario presented by this case.  For present purposes, Parks emphasizes that the cases cited in the Supplement stand for the proposition that the Bureau has in the past kept licenses alive and ultimately granted related license renewal to applicants that did not file renewal applications until after the nominal expiration dates of their licenses, in one case more than 6½ years late.

[14] See emailed Feb. 15, 2022 Letter from Dennis P. Corbett to Albert Shuldiner, at 3 and Attachment 2 thereto.  A copy of this letter comprises Attachment A hereto.

[15] Parks has no basis to dispute that the FCC attempted to send emails to him in 2020 concerning Station license renewal matters (Letter Ruling at n. 7), but he has no recollection of receiving them. Parks *can* say that when he became aware of an FCC-related issue, he proactively dealt with it.  For example, between 2012 and 2020, in addition to resolving the red light issue, Parks paid a monetary forfeiture assessed by the Enforcement Bureau in 2015 relating to his compliance with 47 C.F.R. § 73.3526 (the public inspection file rule), reduced from $15,000 to $1,500 due to his demonstrated inability to pay.  *See* cases cited in Letter Ruling at n. 3. Similarly, Parks stands ready, as soon as he gains access to the Commission's electronic database

## VI.    CONCLUSION

For the reasons set forth in this Further PFR and the PFR, Parks respectfully requests that the Commission authorize immediate resumption of Station operations, reconsider and reverse the dismissal of the 2012 Renewal Application and the cancellation of the Station license, and grant both the 2012 Renewal Application and the New Renewal Application.

Respectfully submitted,

**GERALD PARKS**


By: /s/ Dennis P. Corbett
Dennis P. Corbett
Michael Lazarus
Ashley Brydone-Jack
TELECOMMUNICATIONS LAW PROFESSIONALS PLLC
1025 Connecticut Ave, NW, Suite 1011
Washington, D.C. 20036
Telephone: (202) 789-3115
Email: **_dcorbett@tlp.law_**

March 9, 2023              His Attorneys

---

through restoration of the Station license, to file a ministerial amendment to his 2012 Renewal Application reporting the FCC-published 2015 Forfeiture Order.

**ATTACHMENT A**

# Telecommunications
# Law Professionals PLLC

1025 Connecticut Avenue, NW
Suite 1011
Washington, DC 20036
telephone 202.789.3120
facsimile 202.789.3112
www.tlp.law

dcorbett@tlp.law
202.789.3115

February 15, 2022

**VIA EMAIL**

Albert Shuldiner
Chief, Audio Division
Media Bureau
Federal Communications Commission
45 L Street, NE
Washington, DC 20554
albert.shuldiner@fcc.gov

Re:     Reinstatement of the License of AM Radio Station DWEKC, Williamsburg, KY

Dear Mr. Shuldiner:

We write on behalf of Reverend Gerald Parks ("Reverend Parks") to explore ways to reinstate the license of his AM radio broadcast station DWEKC, Williamsburg, Kentucky ("WEKC" or the "Station"). The FCC cancelled WEKC's license on August 3, 2020, but Reverend Parks did not learn of this FCC action until the last few days of last month, at which time he immediately took the Station off air and reached out to us for help.

By way of background, Williamsburg is a small Appalachian city (2010 Census population 5,245) that serves as the seat of Whitley County, Kentucky. Reverend Parks acquired WEKC more than two decades ago, when he retired as a church pastor in Norwood, Ohio to devote full time to his then new radio ministry in Williamsburg.[1] He has operated WEKC ever since.[2] Until now, Reverend Parks had not had the benefit of counsel in Station FCC matters.

We have had an opportunity to review publicly available FCC records concerning WEKC. Salient facts drawn from that review include:

Reverend Parks filed an application to renew the Station license on April 10, 2012 (the "2012 Renewal Application"). That application remained pending for slightly more than the full length of the eight-year term for which renewal was sought. FCC CDBS records indicate that the 2012 Renewal Application was

---

[1] *See Rev. Gerald Parks Inducted Into Williamsburg Gospel Barn's Wall of Honor*, News Journal, Oct. 16, 2019, found at https://www.thenewsjournal.net/rev-gerald-parks-inducted-into-wburg-gospel-barns-wall-of-honor/ (last visited Feb. 9, 2022).

[2] Attachment 1 hereto is a Station description provided to the undersigned by WEKC.



Mr. Shuldiner
February 15, 2022
Page 2

dismissed on August 3, 2020.[3]  A search of publicly available Commission records reveals no letter ruling or FCC Public Notice relating to that FCC dismissal of the 2012 Renewal Application.[4]

Reverend Parks did not file another application to renew the Station in the 2020 renewal cycle for radio stations in Kentucky, Tennessee, and Indiana.  At the time such an application would normally be due, his 2012 Renewal Application remained pending; the FCC had not granted him a renewal term that expired in 2020.  The FCC listed WEKC on a Public Notice, DA 20-737, released July 15, 2020 ("July 15, 2020 PN"),[5] noting that Reverend Parks had not filed a 2020 renewal cycle renewal application for WEKC prior to the release of the July 15, 2020 PN, and that his license would expire if no such renewal application was filed by August 1, 2020.  Reverend Parks was unaware of the July 15, 2020 PN; to the best of our knowledge, the FCC did not send him a copy of it.  On August 3, 2020, the FCC cancelled a WEKC predecessor licensee's previously granted 1989 WEKC license to cover application[6] and listed that action on page 3 of a Public Notice, Report No. 49796, released August 6, 2020 ("August 6, 2020 PN").[7]

---

[3] See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, available at: http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/app_det.pl?Application_id=1495594.

[4] The CDBS record concerning the 2012 Renewal Application contains links to three "imported" documents: a 2015 FCC letter relating to a processing "red light" and 2013 and 2015 FCC forfeiture proceeding documents relating to issues involving missing quarterly issues/program lists in the Station's public inspection file ($15,000 fine initially proposed reduced to $1,500 due to demonstrated inability to pay).  A line item in the 2012 Renewal Application CDBS record shows the "Last Public Notice" concerning the application to be "5/14/2012" and the "Last Report Number" to be "27737," which is the number of the "BROADCAST APPLICATIONS.MB" Public Notice of May 14, 2012.  See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, available at: http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/app_det.pl?Application_id=1495594 .  That May 14, 2012 Public Notice announced the FCC's acceptance for filing of the 2012 Renewal Application. See Broadcast Applications Accepted for Filing, Public Notice, Rept. No. 27737, at 16 (May 14, 2012) available at: https://docs.fcc.gov/public/attachments/DOC-314021A1.pdf.  The CDBS "Legal Actions" link for this application shows "None." See WEKC Application for Renewal, CDBS File No. BR-20120410ABU, Legal Actions, available at: http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/leg_det.pl?Application_id=1495594&File_number=BR-20120410ABU.  The Commission released a Public Notice on November 19, 2019 accepting the 2012 Renewal Application for filing for a second time.  Broadcast Applications, Public Notice, Rept. No. PN-1-191119-01, at p. 3, available at:  https://docs.fcc.gov/public/attachments/DOC-360891A1.pdf .

[5] Radio License Expirations, Public Notice, DA 20-737 (Jul. 15, 2020), available at: https://docs.fcc.gov/public/attachments/DA-20-737A1.pdf.

[6] WEKC Application for License to Cover, CDBS File No. BL-19890317AD, available at: http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/app_det.pl?Application_id=126050.

[7] Broadcast Actions, Public Notice, Rept. No. 49796, at 3 (Aug. 6, 2020), available at: https://docs.fcc.gov/public/attachments/DOC-365989A1.pdf. The CDBS record concerning the cancellation of the previously granted 1989 license application states only (through the link to the relevant "Public Notice Comment" page): "License cancelled 8/3/2020 -- no renewal of license application filed."



Mr. Shuldiner
February 15, 2022
Page 3

Reverend Parks was unaware of the August 6, 2020 PN; to the best of our knowledge, the FCC did not send him a copy of it. In any event, Reverend Parks did not learn of the WEKC license cancellation until late January of this year.

The Bureau of the Fiscal Service of the U.S. Department of the Treasury contacted Reverend Parks by means of correspondence dated November 24 and 27, 2020 to resolve a financial delinquency that, including principal, interest, penalties, and fees, totaled $2,254.60. As Attachment 2 hereto demonstrates, the parties agreed to resolve that delinquency through a one-year payment plan. Reverend Parks informs us the agreed upon installment payments were made. WEKC was not apprised during the course of these negotiations that its license had been cancelled by the FCC.

With the recent termination of WEKC service in Williamsburg and its environs, the community has suffered a deep loss. The depth of the damage is reflected in the copy of the letter of Roddy Harrison, Williamsburg's Mayor, which comprises Attachment 3 hereto. Mayor Harrison explains:

> The loss of [WEKC] programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic.

As Mayor Harrison makes clear, a primary way that WEKC has become a "fixture" in Williamsburg is by providing a platform for numerous local churches and pastors to reach their congregations. This part of WEKC's programming is a central part of the locally oriented service it has long provided Williamsburg. As Attachment 1 hereto recites, WEKC airs a variety of unique local programs on which Station listeners have long depended (e.g., church services, local announcements, an informal venue for non-retail sales and trades). It bears emphasis, as Mayor Harrison again observes, that the availability of religious programming to Williamsburg residents in their homes took on obvious, substantially enhanced importance during the extended COVID-19 pandemic, which effectively reduced many to shut-in status for extended periods of time.

The Station's contributions to its community of license have not been limited to programming. For example, prior to the last two pandemic-limited summers, WEKC produced and hosted at its cost an annual July 4 day of live gospel music performances in Williamsburg. The concert attracts a wide array of talent and a broad audience to the city and is also aired on the Station.[8]

---

See WEKC Application for License to Cover, CDBS File No. BL-19890317AD, Public Notice Comment, available at: http://licensing.fcc.gov/cgi-bin/ws.exe/prod/cdbs/pubacc/prod/comment.pl?Application_id=126050&File_number=BL-19890317AD. This listing makes no mention of the fact that until the very same day, August 3, 2020, the 2012 Renewal Application was still pending.

[8] *See, e.g.,* Mark White, *Independence Day Festivities planned for Wed., July 3 in Corbin; Thurs., July 4 in W'burg*, News Journal, (July 3, 2019), available at: https://www.thenewsjournal.net/independence-day-festivities-



Mr. Shuldiner
February 15, 2022
Page 4

Against this background, Reverend Parks requests that he be given an opportunity to restore WEKC service at the earliest possible time through FCC issuance and release of a public notice concerning the August 2020 dismissal of the 2012 Renewal Application.[9]  The FCC's release of that public notice would be followed by: an immediate WEKC request for FCC grant of Special Temporary Authority to resume service; a petition for reconsideration of the dismissal of the 2012 Renewal Application and for reinstatement of the WEKC license; and an application for renewal of that license and a waiver request to permit that application's late filing.[10]

We will be contacting you to explore this pathway and timing issues in light of the Station's current off-air status.  We respectfully suggest that this approach offers a number of public interest benefits.  Foremost among them is the immediate restoration of the vital service which Williamsburg so recently lost.  With issuance of the new public notice, restoration can be accomplished consistent with FCC rules that call for public notice and allow for reconsideration.  In this regard, we note that in a recently released decision, the Audio Division showed flexibility in declining to find a licensee's failure to file a renewal application until more than 15 months after a license's expiration to be fatal.[11]  In that case, the Division allowed a station to continue to provide service despite not timely seeking an STA to do so and despite not filing a proper petition for reconsideration (the Division treated a request for reinstatement filed after the license had expired as if it were such a petition).

We respectfully suggest that the public interest strongly favors the grant of relief here, that the palpable, substantial benefits of restoration as soon as possible of longstanding AM service that has long been a vibrant part of the daily life of a small Appalachian community should be secured over any countervailing interests.  That is particularly so where the licensee lacked counsel and did not know until very recently that the license had been cancelled in the midst of the pandemic, and where the lack of any FCC public notice to date of the dismissal of the 2012 Renewal Application provides the FCC a clear and appropriate pathway (i.e., immediate release of a Public Notice concerning that August 3, 2020 agency action) to allow Reverend Parks to seek relief by means of, inter alia, a timely-filed reconsideration petition.  Such Commission action would be entirely consistent with Supreme Court rulings affirming the centrality of fair notice to this country's Constitutional scheme.[12]

---

planned-for-wed-july-3-in-corbin-thurs-july-4-in-wburg/ (noting that WEKC Radio was presenting "its 18th Annual Fourth of July Celebration with a free all-day gospel music concert").

[9] Under 47 C.F.R. § 1.4(b)(4), the release of this Public Notice will trigger Reverend Parks' statutory (47 U.S.C. § 405(a)) 30-day right to seek reconsideration of this important agency action (i.e., the dismissal of the 2012 Renewal Application).

[10] WEKC is of course open to any alternative remedial pathway the FCC suggests, including but not limited to a comprehensive waiver request.

[11] *Magnolia State Broadcasting, Inc.*, Memorandum Opinion and Order and Notice of Apparent Liability for Forfeiture, DA 22-105, rel. Feb 3, 2022 (Chief, Aud. Div., Med. Bur.).

[12] *See, e.g., FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012). 47 C.F.R. § 73.3539 provides no clearly understandable, plain language notice that a station with a still-pending renewal application must file a

Mr. Shuldiner
February 15, 2022
Page 5

Respectfully submitted,

/s/ Dennis P. Corbett

Dennis P. Corbett
Michael Lazarus

of TELECOMMUNICATIONS LAW
PROFESSIONALS PLLC

---

second one during the pendency of the first (where no renewal grant has established a new expiration date): "[A]n application for renewal of license shall be filed not later than the first day of the fourth full calendar month prior to the *expiration date* of the license sought to be renewed…." (Emphasis added).

Attachment 1
WEKC Station Description

402 Main Street
Williamsburg, Kentucky 40769
(606)549-3000

WEKC (710 AM), is a faith based community involved voice whose primary purpose is to spread the gospel throughout the Whitley, Knox, Laurel, McCreary counties of Kentucky and Campbell County in Tennessee. In conjunction with providing spiritual support, the station also provides a vital source of information for many residents.

The Parks family including the Reverend Gerald Parks, his brother, father and grandfather has a long history of working to spread the gospel in Whitley County and surrounding areas. So when Reverend Gerald Parks found out WEKC was for sale, he felt it would be a means to reach more people in the community. He purchased the station in July, 2000 and converted it from a rock station to a gospel station. It was, and is, his intention that WEKC should become a vital part of the community by providing local news and supporting various activities.

When COVID-19 forced the Governor of Kentucky to close the churches, the staff and management of WEKC decided to implement a program to help the local churches. It was decided that WEKC would give free air time to any pastor who wanted to continue ministering to their congregation while the church buildings were ordered closed. In this way the ministers could reach out to those people who are unable to attend normal church services. This practice continued until the Governor of Kentucky allowed church services to resume.

The listening audience for WEKC consists mainly of older people who rely on WEKC for news and events. Therefore, as a public service, WEKC provides local announcements and reads the local obituaries three times a day. WEKC is the only AM station in the area that provides this service. The Williamsburg newspaper is only published once a week and often the events mentioned are over before the newspaper is delivered.

There is a religious faction of people in the WEKC listening area that do not believe in television or computers. For these people the only source of local news and announcements has been WEKC.

The service area of WEKC is very rural. It is with this in mind, that a program called Tri-County Spotlight was created. It allows listeners to let their neighbors know if they have items to sell or trade. This program has been very popular receiving around 100 calls during the hour and 15 minute program. This is a free service to the listeners and the only restriction is that retail businesses can't advertise.

The clientele for WEKC are programs provided by various churches, both locally and from different locations across Kentucky and surrounding states. They also broadcast commercials that promote local businesses and events.

WEKC supports the community in other ways not related to any specific broadcast. In cooperation with the City of Williamsburg, WEKC has provided music concerts. Partnering with the City of Williamsburg, that graciously agreed to close downtown streets, WEKC set up stages and vending areas to provide free gospel concerts.

WEKC worked with a new Eastern Kentucky program created to address high rates of domestic and sexual violence in the region through education and conversation. The Cumberland River Community Green Dot program has formed a coalition of community members in the Whitley County area to improve efforts at violence prevention. In support of this program, WEKC allowed a mural to be painted on the side of the radio station that was visible from the main streets of Williamsburg.



No matter what other activity or event WEKC is involved with, they will never stray from their primary goal which is to be a blessing to all those who listen to it.

Attachment 2
Letter from US Department of Treasury Regarding Payment of FCC Fees

**U.S. DEPARTMENT OF THE TREASURY**
**BUREAU OF THE FISCAL SERVICE**
**P.O. BOX 830794**
**BIRMINGHAM, AL 35283-0794**



November 24, 2020

WEKC RADIO STATION/OUTREACH MINISTRIES
402 MAIN STREET
WILLIAMSBURG, KY 40769

Treasury Account Number: 13787712

The attached documentation is being forwarded as a result of your request for detailed debt information.

If you have any questions, please call 1-888-826-3127.

Sincerely,

Department of the Treasury, Bureau of the Fiscal Service

Attachment

**WARNING**

The Sensitive but Unclassified (SBU) information attached to this cover sheet is U.S. Government Property. If you are not the intended recipient of this information, then disclosure, reproduction, distribution or use of this information is prohibited (18 USC. 641). Please notify the Originator immediately to arrange for proper disposition



13787712

# FEDERAL COMMUNICATIONS COMMISSION
## REMITTANCE ADVICE
## BILL FOR COLLECTION

Approved by OMB
3060- 0589
Page 1 of 1

| Bill Number | Applicant FRN | Current Bill Date |
|---|---|---|
| R15R072790 | 0007921190 | 10/22/2015 |

**FOR INQUIRIES CALL**
1-202-418-1995
(Revenue and Receivable Operations Group)

**Application Information:**
Outreach Ministries
402 MAIN ST
WILLIAMSBURG, KY 40769

Payable to:
Federal Communications Commission

Send a copy of this bill to:
Federal Communications Commission
Revenue & Receivables Operations Group
P.O. Box 979088
St. Louis, MO 63197-9000

| Total Amount Due | | Due Date |
|---|---|---|
| $1,702.28 | **TOTAL AMOUNT DUE MUST BE RECEIVED BY** | 09/24/2015 |

| Payer FRN No. | Please Complete The Payer Information, FCC Registration Number (FRN) is required |
|---|---|

Payer Name (if paying by credit card enter name as it appears on the card)

Address Line No. 1

Address Line No. 2

City                              State                    Zip Code

Daytime Phone Number (Include area code)

**Reason For Bill:**    2015 Media Bill - WEKC - 72790 - KYWILLIAMSBURG

| Call Sign/Other FCC ID | Payment Type Code | Quantity | Fee Due For (PTC) | Total Fee | FCC Code 1 | FCC Code 2 |
|---|---|---|---|---|---|---|
| WEKC | 1536 | 1 | 1000.00000 | $1,000.00 | 72790 | KYWILLIAMSBUR |
| WEKC | DCIA | | | $452.28 | 72790 | KYWILLIAMSBUR |
| WEKC | PEN | | | $250.00 | 72790 | KYWILLIAMSBUR |
| | | | | | | |
| | | | TOTAL DUE | $1,702.28 | | |

| | Please choose a method of Payment and complete the section if paying by Credit Card |
|---|---|

**Payment Method:**

CREDIT CARD ☐        CHECK ☐        WIRE ☐        IPAC ☐        MIPR ☐

MASTERCARD ☐        DISCOVER ☐        VISA ☐        AMEX ☐

ACCOUNT NUMBER_____    EXPIRATION DATE_____

I hereby authorize the FCC to charge my Credit Card for the service(s) / authorization(s) herein described.

AUTHORIZED SIGNATURE_____        DATE_____

FCC FORM 159b JULY 2005


IF PAYING BY CHECK, PLEASE WRITE YOUR BILL NUMBER ON YOUR REMITTANCE AND ATTACH A COPY OF THIS BILL TO YOUR PAYMENT TO ENSURE PROPER CREDIT.



**DEPARTMENT OF THE TREASURY**
**BUREAU OF THE FISCAL SERVICE**
P.O. BOX 830794
BIRMINGHAM, AL 35283-0794





November 27, 2020

WEKC Radio Station/Outreach Ministr
402 Main Street
Williamsburg KY 40769

Treasury Case Number: L35457419

Based on a recent activity by you or your representative regarding payment of the amount you owe to Federal Communications Commission, we have enclosed a Payment Agreement. Please review the Payment Agreement carefully to be sure that you understand all of the terms. Federal Communications Commission is willing to accept your offer, as described in the enclosed Payment Agreement.

You must make all payments due under the Payment Agreement on the dates that the payments are due. We are under no obligation to accept late or partial payments. Please note that if you fail to make all of the payments when due, we have the right to continue further collection action against you for the TOTAL AMOUNT THAT YOU OWE (less payments made).

A billing statement and payment coupon will be mailed to you as a reminder that your payment is due. We offer several methods of payment-electronic payments via Pay.gov, the DMS Pay mobile app (available on Google Play and the App Store), and our toll-free line (888) 826-3127. Debit card, pre-authorized debit, check or money orders are accepted. Your first payment in the amount of $187.88 is due on December 4, 2020. If you choose to send your payment via check or money order, your payment should be made payable to the U.S. Department of the Treasury. When you provide a check as payment, you authorize us to use the information from your check to make a one-time electronic funds transfer from your account or process your payment as a check transaction. Also, write your payment agreement identification number on the payment instrument to ensure proper credit, and mail it with the payment coupon to:

> U.S. Department of the Treasury
> Bureau of the Fiscal Service
> P.O. Box 979101
> St. Louis, MO 63197-9000

Please contact a Debt Recovery Analyst toll free at (888) 826-3127, if you have questions, or if you would like to make your payment via debit card, or to set up payments via a preauthorized debit. Hearing impaired persons may use the Federal Relay Service by dialing (800) 877-8339 to reach a Communications Assistant, who will dial the toll free number. We appreciate your cooperation and look forward to working with you.

U. S. Department of the Treasury
Bureau of the Fiscal Service



### PAYMENT AGREEMENT

A. **DEFINITIONS:** As used in this Payment Agreement:

1. "Agreement" or "Payment Agreement" means this Payment Agreement, which has a Payment Agreement Number of PA2362059.

2. "Creditor Agency" means Federal Communications Commission.

3. "Debt" or "Total Amount Owed" is $2,254.60 as of November 27, 2020, as set forth in Attachment A of this Agreement. Attachment A is incorporated in and made a part of this Agreement. The Total Amount Owed does not reflect any accruals or payments posted after November 27, 2020.

4. "Debtor" means  WEKC Radio Station/Outreach Ministr whose address is 402 Main Street , Williamsburg KY 40769 , and whose taxpayer identifying number is .
Privacy Act Statement:  The Debtor's taxpayer identifying number, required by 31 U.S.C. 7701(c), will be used to collect and report any delinquent amounts owed by the Debtor under this Agreement.

5. "Effective Date" of this Agreement is November 27, 2020.

6. "Event of Default" is defined in paragraph D.10. of this Agreement.

7. "Federal Payment" means an amount of money paid to the Debtor by a department, agency, court, court administrative office, or instrumentality in the executive, judicial, or legislative branch of the Federal Government, including government corporations. Federal payments include, but are not limited to, Federal income tax refund, vendor, salary and social security and other benefit payments.

8. "Final Payment Date" is November 4, 2021, or such sooner date that all payments due under this Agreement are paid.

9. "Payment Obligations" means the Debtor's obligation to make payments under this Agreement, as described in paragraph C. of this Agreement.

10. "Total Payment Amount" means the total amount that the Debtor agrees to pay in accordance with the terms of this Agreement, including any interest and penalties that will accrue during the term of this Agreement. The Total Payment Amount is $2,254.60, as set forth in Attachment A of this Agreement.

    The parties agree that the Total Payment Amount may increase as described in paragraph D.3. of this Agreement.

11. "Treasury" means the United States Department of the Treasury's Bureau of the Fiscal Service, acting on behalf of the Creditor Agency.

B. **BACKGROUND:**

1. The Debtor owes the Debt described in paragraph A.3. of this Agreement.

2. The Debtor failed to pay the Debt when due, and the Creditor Agency referred the Debt to Treasury for collection.

3. The Debtor is unable to pay the Debt in full and wishes to repay the Debt in the manner described in paragraph C. of this Agreement. Treasury is authorized to accept payment in accordance with the terms of this Agreement.



5. Time is of the Essence. Time is of the essence with respect to the Debtor's Payment Obligations described in paragraph C. of this Agreement.

6. Application of Payments. Treasury will apply any amounts paid by the Debtor under this Agreement to the Debt as follows: first, to administrative costs, fees, and penalties; second, to interest; and finally to the principal of the Debt remaining unpaid. If the Debt includes more than one debt owed by the Debtor, then Treasury shall apply amounts paid in the order of age of delinquency, with the oldest debts being paid first.

7. Excess Payments. If, at any time, the Debtor pays more than the Payment Obligations then due under this Agreement, Treasury or the Creditor Agency may, at its option, apply excess payments to future payments due under this Agreement or to other delinquent debts owed by the Debtor to the United States. Treasury's receipt of excess payments will not affect the Debtor's obligation to make timely payments under this Agreement. If the Debtor does not owe any such payments or other debts to the United States, then Treasury or the Creditor Agency will refund any excess payments to the Debtor, without interest.

8. Other Documents; Collateral. Except for the Payment Obligations described in this Agreement, all other terms of any documents establishing all or part of the Debt, or the collateral for the Debt, such as a promissory note, loan agreement, or a mortgage, continue to be in full force and effect. If all or part of the Debt is secured by collateral, then the following shall apply: Notwithstanding the provisions of paragraph C. of this Agreement, the Debtor shall pay all payments due under this Agreement at the time any collateral securing all or part of the Debt is sold, assigned, or otherwise transferred by the Debtor, or by others, whether voluntarily or involuntarily, prior to the Final Payment Date.

9. Material Representations. In order to induce Treasury to enter into this Agreement, the Debtor makes the following material representations, which shall be deemed made as of the Effective Date and shall survive the execution and delivery of this Agreement. The Debtor represents and warrants that all of the representations and statements contained in this Agreement are true, complete, and correct, and acknowledges that Treasury is relying on the truth, completeness, and accuracy of the same in entering this Agreement:

   a. The Debtor is unable to pay the Debt in full, and the Debtor does not anticipate being able to pay the Debt within the foreseeable future except pursuant to the terms of this Agreement. All financial information provided by the Debtor to Treasury is true, complete and accurate. The Debtor acknowledges that Treasury has relied upon the financial information provided by the Debtor in deciding to enter into this Agreement; and

   b. The person(s) executing this Agreement has the authority and power to consummate this transaction on behalf of the Debtor; and

   c. No Event of Default specified in paragraph D.10. of this Agreement has occurred as of the Effective Date of this Agreement. Further, no event which pursuant to paragraph D.10., with the lapse of time, the giving of notice specified, or both, would become an Event of Default, has occurred.

10. Events of Default. The occurrence of any one of the events listed in this paragraph D.10. shall automatically constitute an Event of Default, whether such occurrence shall be voluntary or involuntary or come about or be effected by operation of law or pursuant to any judgment, decree or any order, rule or regulation of any court, administrative or governmental agency. An Event of Default occurs when:



### ATTACHMENT A

Payment Agreement Number: PA2362059
Debtor: WEKC Radio Station/Outreach Ministr

As defined in paragraph A.3. of this Agreement, the total Amount Owed is $2,254.60 as of
November 27, 2020, and as defined in paragraph A.10. of this Agreement, the total Payment Amount is $2,254.60

| Date of Delinquency Treasury Case Number Katrina Debt ID | Principal | Interest | Penalties | Creditor Agency Admin Cost | Treasury Admin Fees | Total Balance Due |
|---|---|---|---|---|---|---|
| 20150924 L33457419 R15R072790A | $1,000.00 | $453.10 | $254.93 | $0.00 | $546.57 | $2,254.60 |

000029-5-5



Attachment 3
Letter from Mayor Roddy Harrison

February 8, 2022

Federal Communications Commission
Washington, DC

Re: Restoration of WEKC Radio Service to Williamsburg, Kentucky

Dear FCC:

As the mayor of Williamsburg, Kentucky, I write about a local matter of urgent priority.

I recently became aware of the loss of radio service that had for a long time been provided by the Reverend Gerald Parks to our community over AM Radio Station WEKC. Reverend Parks is a critical part of the fabric of Williamsburg, and his station's vibrant gospel programming has been a fixture here for many, many years.

The loss of that programming cuts deeply, particularly within our religious communities, where numerous pastors have long relied on WEKC to reach their members through live and recorded programming aired on the station. Indeed, WEKC's way of reaching people in their homes over the air takes on outsized importance during the extended period of the COVID-19 pandemic.

As a local government official, I understand and respect the fact that difficult decisions come with the territory. But, in this case, I am asking you to explore whether there is a way to allow WEKC to restore and maintain its presence on the air. Such relief would spare our community from suffering such a profound loss of such an important contributor to our quality of life.

Thank you very much in advance for your consideration of the concerns of Williamsburg and its residents arising from the damaging loss of WEKC service.

My understanding is that Reverend Parks will submit this letter to the FCC as part of a larger filing seeking restoration of WEKC service.

Sincerely,

Roddy Harrison
Mayor, Williamsburg, Kentucky