## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| IN RE GERALD PARKS, | ) | No. 23-1078 |
| Petitioner. | ) ) ) ) | |

## OPPOSITION OF FEDERAL COMMUNICATIONS COMMISSION
## TO PETITION FOR WRIT OF MANDAMUS

Gerald Parks is a former licensee of a Kentucky AM radio station. The Federal Communication Commission cancelled Parks' broadcast license in 2020 after he failed to file a timely renewal application. Parks now petitions this Court for a writ of mandamus ordering the Commission to reinstate his cancelled license because the Commission did not formally notify him when it dismissed a defective license renewal application Parks filed more than a decade ago. The petition should be denied for any of three reasons.

*First*, this Court lacks jurisdiction to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), because it has neither current nor prospective jurisdiction over the cancellation of Parks' license. The statutory deadline to challenge that action has long since passed, and the relief Parks seeks—both in this Court and before the

- 1 -

Commission—seeks to undo now-unreviewable agency action. Mandamus is thus improper because there is no current or prospective jurisdiction to protect.

*Second*, Parks has no clear legal right to the relief he seeks. No timely license renewal application is "[p]ending," nor does Parks presently have a "license" to "continue … in effect." 47 U.S.C. § 307(c)(3). His statutory argument is mistaken.

*Third*, principles of equity weigh against judicial intervention. Parks' now-expired 2012 renewal application faced delays because he repeatedly violated FCC broadcasting rules and did not pay required fees. Parks then failed to file a new renewal application, ignored repeated warnings that his license would expire, and slept on his rights for 18 months after his license was cancelled.

## BACKGROUND

### A.   Statutory and Regulatory Framework

Under the Communications Act, "[n]o person" may operate a radio without a license issued by the FCC. 47 U.S.C. § 301. "Each license granted for the operation of a broadcasting station shall be for a term of not to exceed 8 years," and the Commission may grant periodic renewals

"for a term of not to exceed 8 years from the date of expiration of the preceding license." *See id.* § 307(c)(1).

"Unless otherwise directed by the FCC, an application for renewal of license shall be filed not later than the first day of the fourth full calendar month prior to the expiration date of the license sought to be renewed." 47 C.F.R. § 73.3539(a). Failure to file a timely renewal application may result in a monetary forfeiture, *see, e.g.*, Forfeiture Order, *In Re Application of WJBW LLC*, 2022 WL 17100744, at \*1 (Nov. 18, 2022), or affirmative cancellation of the license, *see, e.g.*, Public Notice, *Broadcast Actions*, 2021 WL 457914 (rel. Feb. 5, 2021). *See also Press Commc'ns LLC v. FCC*, 875 F.3d 1117, 1119 (D.C. Cir. 2017) (describing broadcast licensing process).

In certain circumstances, a broadcast license may remain temporarily in effect past its expiration date. "Pending any administrative or judicial hearing and final decision on" a license renewal application, "the Commission shall continue such license in effect." *Id.* § 307(c)(3). But "[c]ontinued operation of a station by a licensee as a result of a pending license renewal application does not change the stated expiration date of the station's prior license." Forfeiture Order, *Pollack/Belz Commc'n Co., Inc.*, 29 FCC Rcd 14635, 14636 ¶6 (MB 2014).

And consistent with Section 307(c), Media Bureau policy requires licensees to file new, timely renewal applications every eight years, even if a previous renewal application remains pending. *See id*. 14636–37 ¶¶6–7; Public Notice, 34 FCC Rcd 2304, 2304 (MB 2019) ("Licensees with pending applications from the prior renewal cycle also are subject to [renewal application] filing requirements" and "should file new license renewal forms" for each renewal cycle).

### B.    Parks' AM Radio Station License

#### 1.    Parks obtains a license and begins violating FCC rules

The Commission granted Parks an AM radio broadcast license in 2000. *See* Public Notice, *Broadcast Actions*, 2000 WL 821288 (rel. June 26, 2000). From the outset, Parks struggled to comply with Commission rules. After a 2003 inspection, the Enforcement Bureau informed Parks that his station was not properly monitoring for emergency alerts and that its public inspection file was missing required documents. *See* Forfeiture Order, *Gerald Parks*, 21 FCC Rcd 14338, 14338 ¶2 (EB 2006). In 2006, the Enforcement Bureau issued Parks a $5,000 monetary forfeiture order "for willful and repeated violations" of Commission rules, including failure to register an antenna structure and continued failure

to maintain a public inspection file. *Id.* at 14338–39 ¶¶3–4.  Nonetheless, the Commission granted Parks' license renewal application in 2007. Public Notice, *Broadcast Actions*, 2007 WL 779360 (rel. Mar. 16, 2007).

### 2.    Parks' continued rule violations impede his 2012 license renewal

In April 2012, Parks applied to renew his license for a new eight-year term ending in August 2020.  *See Letter Order*, 2023 WL 1819328, at *1–2 (MB rel. Feb. 7, 2023).  Two obstacles prevented Commission action on that application.  To start, Parks  was delinquent on his regulatory fees.  *See Letter Order*, 2023 WL 1819328, at *1.  FCC rules require the Commission to withhold action on applications by licensees with delinquent debts to the agency.  *See* 47 C.F.R. § 1.1910(b)(2). Another problem was that Parks was subject to an ongoing investigation for further rule violations.  *Id.* at *1.  Just one month before Parks filed his renewal application, Enforcement Bureau agents discovered that Parks' public inspection file was still missing required documents.  *See* Forfeiture Order, *Gerald Parks*, 30 FCC Rcd 7038, 7038 ¶2 (EB 2015). Those violations ultimately led to a $1,500 forfeiture order.  *Id.* at 7041 ¶8.

In April 2017, the Media Bureau informed Parks that the Commission's investigation was resolved, but that he needed to amend his 2012 renewal application because it had inaccurately certified his compliance with the FCC's public file rules. *Letter Order*, 2023 WL 1819328, at \*1. The Bureau also told Parks about his unpaid fees. *Id.* Parks took no action to resolve either defect with his renewal application. *Id.*

### 3.    The FCC cancels Parks' license

If Parks' 2012 renewal application had been granted, his new license would have expired in August 2020. *See* 47 U.S.C. § 307(c)(1). In order to maintain his license, Parks needed to file a new renewal application at least four months prior to that expiration date. *See* 47 C.F.R. § 73.3539(a). The Media Bureau twice reminded Parks of that obligation by email, *Letter Order*, 2023 WL 1819328, at \*1 n.7, and once again in a public notice, *see* Public Notice, *Radio License Expirations*, 35 FCC Rcd 7007 (MB 2020). Despite these reminders, Parks did not file a renewal application in 2020. *Letter Order*, 2023 WL 1819328, at \*1.

Consistent with Commission policy and the statutorily limited eight-year licensure term, the Media Bureau cancelled Parks' license via public notice in August 2020. *See id.* at \*3; Public Notice, *Broadcast*

*Actions*, 2020 WL 4569000 (rel. Aug. 6, 2020). Parks did not seek reconsideration of that action. *See Letter Order*, 2023 WL 1819328, at \*1; 47 C.F.R. § 1.106(f) (30-day period to seek reconsideration). The cancellation became final in September 2020, when the time for the full Commission to review the Bureau's action on its own motion expired. *See id.* § 1.117(a). Parks' 2012 renewal application was ministerially dismissed as moot following the cancellation of his license, but the Media Bureau did not separately notify Parks of that dismissal. *Letter Order*, 2023 WL 1819328, at \*4 & n.33.

### 4.    Park tries to renew his cancelled license

Parks obtained counsel in February 2022, *Letter Order*, 2023 WL 1819328, at \*3 n.32, and in March 2022 asked the Media Bureau to grant his 2012 renewal application, *id.* at \*1. Without explanation, the Bureau reinstated and granted Parks' 2012 renewal application, but did not restore Parks' license. *Id.* (citing Public Notice, *Broadcast Actions*, 2022 WL 857045 (rel. Mar. 21, 2022)).

In April 2022, Parks petitioned for reconsideration, arguing that the Bureau erred by reinstating his 2012 renewal application without also rescinding his license's cancellation. *Id.* On review, the Bureau determined that the 2012 renewal application had been reinstated in

error. *Id.* at *4. In any event, the Bureau explained that any error with respect to the 2012 renewal application did not permit reopening the license's cancellation, which became final in September 2020. *Id.* And any license that the FCC could have granted based on the 2012 renewal application would now be expired under Section 307(c)(1)'s eight-year term limit. *Id.*

Parks petitioned for further reconsideration from the Bureau on March 9, 2023, and that request remains pending.[1]

## STANDARD OF REVIEW

Mandamus "is a drastic remedy," "reserved only for the most transparent violations of a clear duty to act." *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022) (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

"When a party requests a writ of mandamus against an agency under the All Writs Act," this Court employs a three-step inquiry. *Id.* First, the Court must assure itself of its jurisdiction. *Id.* Mandamus can issue only in aid of the Court's underlying jurisdiction; if the Court

---

[1] *See* Petition for Further Reconsideration, http://licensing.fcc.gov/cgi-bin/prod/cdbs/forms/prod/getimportletter_exh.cgi?import_letter_id=104780.

"would not have jurisdiction to review the agency action sought by petitioners, it cannot bootstrap jurisdiction" through a writ proceeding. *Id.* Second, the Court will "look to the statutory requirements imposed by Congress" to determine whether the agency has a "crystal-clear legal duty to act." *Id.* Third, "even when a clear duty exists," the Court will "consider whether judicial intervention would be appropriate." *Id.* at 752–53. Among other things, this requires a finding that the petitioner has established "compelling equitable grounds" for relief. *In re Flyers Rights Educ. Fund, Inc.*, 61 F.4th 166, 167 n.2 (D.C. Cir. 2023) (citations omitted).

**ARGUMENT**

## I.    MANDAMUS WOULD NOT AID THIS COURT'S JURISDICTION

The Court should dismiss the petition as not "in aid of … jurisdiction[]" as required under the All Writs Act. 28 U.S.C. § 1651(a); *see Nat'l Nurses*, 47 F.4th at 752. "The All Writs Act does not grant jurisdiction to issue a writ of mandamus." *Id.* (citing *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004)). "Instead, it authorizes the issuance of a writ of mandamus in aid of jurisdiction this court already has or will have as a result of issuing the writ." *Id.*

Parks asks this Court to "continue in effect" his cancelled broadcast license and "restore the Station's operational authority." Pet. 1. The FCC's cancellation of Parks' license became final in September 2020. That decision was reviewable by appeal to this Court, 47 U.S.C. § 402(b)(5), but only "within thirty days from the date upon which public notice is given." *Id.* § 402(c). That time limit is "jurisdictional," and this Court "ha[s] no power to entertain" review of that decision outside the statutorily prescribed window. *Waterway Commc'ns Sys., Inc. v. FCC*, 851 F.2d 401, 406 (D.C. Cir. 1988).

Because the time for judicial review of the cancellation of Parks' license has long since passed and the relief he seeks—both in this Court and at the agency—necessarily calls into question now-unreviewable agency action, there is no current or prospective jurisdiction for mandamus to protect. The petition should be dismissed on this ground alone. *See In re Tennant*, 359 F.3d at 531.

## II. PARKS HAS NO CLEAR LEGAL RIGHT TO RELIEF

### A. Parks Identifies No Clear Legal Duty To Act

Even if this Court had jurisdiction to issue a writ, mandamus is unwarranted because the Commission lacked "a crystal-clear legal duty to act." *Nat'l Nurses United*, 47 F.4th at 752.

The crux of Parks' petition is that, in his view, the Commission should not have cancelled his license without first formally acting on his 2012 renewal application.  Pet. 2.   In advancing that argument, Parks relies on a section of the Communications Act providing that "the Commission shall continue [a] license in effect" pending a "hearing and final decision" on an application and "the disposition of any petition for rehearing pursuant to section 405 or . . . 402."  47 U.S.C. § 307(c)(3).  Parks has no clear right to relief for at least two independent reasons.

*First*, the Media Bureau could not (and cannot) "continue … in effect" Parks' license because final agency action has already cancelled it.  *See Letter Order*, 2023 WL 1819328, at *7 .  The Media Bureau processes renewal applications based on authority delegated from the full Commission.  *See* 47 U.S.C. § 155(c); 47 C.F.R. §§ 0.61(a), 0.283.  The Communications Act expressly provides that a "petition for reconsideration" of agency action "must be filed within thirty days from the date upon which public notice is given."  47 U.S.C. § 405(a); *see also* 47 C.F.R. § 1.106(f).  Parks never filed such a timely petition challenging the cancellation of his license.  And the Bureau's reconsideration of cancellation outside that statutory window would be "beyond its lawful authority."  *Reuters Ltd. v. FCC*, 781 F.2d 946, 952 (D.C. Cir. 1986)

(stating that Section 405's "seemingly mandatory language" is applicable except in "highly unusual circumstances").  As explained in Part I, *supra*, Parks cannot now seek to undo the 2020 cancellation of his license, which is final and unreviewable.

*Second*, and in any event, Parks' reliance on Section 307(c)(3) is misplaced because that provision applies only during the pendency of "an application" and any related "petition for rehearing."  Here, despite repeated warnings from the Media Bureau, Parks failed to file a renewal application for 2020.  *Letter Order*, 2023 WL 1819328, at *1 n.7.  There is no "pending" application for purposes of Section 307(c)(3).

Parks' 2012 renewal application is no longer relevant.  The Media Bureau ministerially dismissed that application as moot after it cancelled Parks' license.  *Letter Order*, 2023 WL 1819328, at *4.  And when the Media Bureau mistakenly "reinstated to pending status" the 2012 renewal application, it simultaneously granted it, independently ending Section 307(c)(3)'s effect.  As the full Commission has elsewhere explained, if a renewal application is *granted*, then a new term commences and there is no need to "continue" the old license pending a "final decision."  47 U.S.C. § 307(c)(3); *see Cesar Chavez Found.*, 33 FCC Rcd 4338, 4343 ¶8 n.43 (2018).  Whether it was properly dismissed or

erroneously granted, Parks' 2012 renewal application is in all events no longer "pending."

At a minimum, any right to relief is far from "crystal-clear" on this record. *Nat'l Nurses United*, 47 F.4th at 752. Even if Parks' 2012 application had not been granted or dismissed, he was on notice that another renewal application was required for his license to "continue in effect" past 2020. Section 307(c)(1) prohibits the FCC from awarding a license for a term exceeding eight years. *See* 47 U.S.C. § 307(c)(1) ("Upon application therefor, a renewal of such license may be granted from time to time for a term of not to exceed 8 years from the date of expiration of the preceding license."). In view of that statutory limitation, the Media Bureau has explained that "a pending license renewal application does not change the stated expiration date of the station's prior license or permit the Commission to grant a new license for a period longer than eight years from that date." *Pollack/Belz Commc'n Co.*, 29 FCC Rcd at 14637. And although the full Commission has not directly addressed the Media Bureau's statutory analysis in *Pollack*, it has recognized that, "[a]lthough Section 307(c)(3) of the Act permits licensees to continue operation while there is a pending license renewal application," "well-established Commission precedent" provides that, if "a licensee … fails

to file a license renewal application by its license expiration date and continues to operate without special temporary authority," the licensee is "engaged in unauthorized operation and subject to sanction." *Vearl Pennington & Michael Williamson*, 34 FCC Rcd 770, 774 (2019). For this reason, the Media Bureau has repeatedly advised licensees—including Parks, *see supra* p. 6—that they must file license renewal applications at the end of the license term even when they have "pending applications from the prior renewal cycle" on which the Commission has not yet acted. 34 FCC Rcd at 2304; *Pennington & Williamson*, 34 FCC Rcd at 774–75 & n.38.

Because Parks must show that the Commission violated a "crystal-clear legal duty," *Nat'l Nurses United*, 47 F.4th at 752, this Court need not decide whether the Media Bureau's policy of requiring a licensee with a pending renewal application to file a new application each renewal term reflects the only possible interpretation of Section 307.[2] In this context—

---

[2] This Court previously interpreted a predecessor provision to Section 307(c) as not to require a new renewal application when a pending application had been designated for an evidentiary hearing, deferring to the Commission's interpretation of the statute at that time. *See Comm. for Open Media v. F.C.C.*, 543 F.2d 861, 866–67 (D.C. Cir. 1976). Congress subsequently amended the statute, however, which now specifies in Section 307(c)(1) that any renewal term is "not to exceed 8 years *from the date of expiration of the preceding license*."

when the policy of the Media Bureau is clear, reflects a plausible interpretation of the statute, and the Commission has acknowledged that policy with apparent approval—Parks cannot plausibly claim a "crystal-clear" right for his license to have continued in effect beyond the 8-year limit of Section 307(c)(1).

## B.    Parks' Contrary Arguments Are Mistaken

In his petition, Parks raises two principal objections to the Media Bureau's rejection of his request to reinstate his cancelled license. Neither has merit.

*First*, Parks argues that the Media Bureau should not have relied on its grant of his 2012 renewal application because it determined that grant was in error.  Pet. 7.  But notwithstanding whether Parks' 2012 renewal application should have been granted or dismissed as moot, it is clear that either way, no application is "[p]ending" within the meaning of 47 U.S.C. § 307(c)(3).  As Parks acknowledges, Pet. 2, "this case is not about the ultimate merits" of the choice between those two options.

---

Telecommunications Act of 1996, Pub. L. 104–104, 110 Stat. 56 (February 8, 1996) (emphasis added); *see Pollack/Belz*, 29 FCC Rcd at 14636 ¶6. Notably, the version of Section 307 at issue in *Committee for Open Media* did not include language referring to the expiration date of the preceding license or any analogous limitation.

Under either result, grant or dismissal, no application would be "pending" so as to trigger Section 307(c)(3).

*Second*, Parks objects that the Bureau misread Section 307(c)(3) to apply only to "license applications designated for hearing before an Administrative Law Judge." Pet. 8. Parks misreads the Letter Order. As that decision makes clear, the basis for rejecting Parks' arguments was that "Section 307(c)(3) does not apply, as here, where an applicant challenges the *grant* of its own renewal application." Letter Order, 2023 WL 1819328, at *7 (emphasis in original). The Bureau did not "seize[] on the provision's single use of the word 'hearing' in an attempt to narrow the entire provision[]." *Contra* Pet. 8. While its analysis noted that "Section 307(c)(3) … does not apply when a renewal application has been granted without a hearing, as is the case with the 2012 Renewal Application," Letter Order, 2023 WL 1819328, at *7, the import of that passage was that Parks' previously granted application was not pending, not that Section 307(c)(3) "applies only to applications 'designated for hearing,'" *contra* Pet. 9.

The remainder of Parks' argument largely complains that it was unfair for the Commission to cancel his license after he repeatedly failed

to meet the procedural requirements for maintaining it, but he identifies no legal basis for revisiting that decision.  Pet. 10–12.

## III.  JUDICIAL INTERVENTION IS INAPPROPRIATE ON THIS RECORD

Mandamus is unwarranted for another reason:  Parks has not established "compelling equitable grounds" justifying this Court's intervention.  *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022).

This Court retains "discretion" to determine whether mandamus "is appropriate under the circumstances" of a given case. *In re Al Baluchi*, 952 F.3d 363, 368 (D.C. Cir. 2020).  Here, Parks has not established "compelling equitable grounds" supporting relief.  *Flyers Rights Educ. Fund*, 61 F.4th at 167 n.2.  To the contrary, Parks' predicament is largely one of his own making.

The chain of events that led to the cancellation of Parks' license began with his "willful[] and repeated[] violat[ions]" of Commission rules, *Forfeiture Order*, 30 FCC Rcd 7038, his failure to pay regulatory fees, and misstatements on his 2012 renewal application.  *Letter Order*, 2023 WL 1819328, at *1.  Media Bureau staff tried to assist Parks through the renewal process, informing him of the defects in his 2012 application.  *See id.*, at *1 & n.4 (describing 2017 email to Parks explaining need to amend

his 2012 application).  And even when he failed to take any corrective action, Bureau staff repeatedly warned Parks—both privately and through a public notice—that his license would expire in 2020 unless he filed another renewal application.  *Id*., at *1 & n.7.  Despite those warnings, Parks failed to amend his 2012 renewal application or file a new application in 2020.  *Id*.  And when the Bureau finally cancelled his license, Parks not only failed to seek timely review, but took no action at all for 18 months.

Parks' persistent lack of diligence undercuts his suggestions (Pet. 12–14) that the cancellation of his broadcast license was unfair and that the Commission unreasonably delayed acting on his renewal application.  "[E]quity aids the vigilant and not those who slumber on their rights." *Pro Football, Inc. v. Harjo*, 565 F.3d 880, 884 (D.C. Cir. 2009) (citation omitted).  Likewise, "equity will not aid stale demands, nor will mandamus issue to compel performance on such a claim." *Snauffer v. Stimson*, 155 F.2d 861, 863 (D.C. Cir. 1946).  So too here.

## CONCLUSION

The petition should be dismissed or denied.


Dated:  July 3, 2023                    Respectfully submitted,


                                        /s/ *Adam L. Sorensen*

                                        P. Michele Ellison
                                            *General Counsel*

                                        Sarah E. Citrin
                                            *Deputy Associate General Counsel*

                                        Adam G. Crews
                                            *Counsel*

                                        Adam L. Sorensen
                                            *Counsel*

                                        FEDERAL COMMUNICATIONS
                                            COMMISSION
                                        45 L Street NE
                                        Washington, DC 20554
                                        (202) 418-1740
                                        fcclitigation@fcc.gov

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App.
    P. 27(d)(2) because, excluding the parts of the document exempted
    by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1):

    ☒   this document contains <u>3,610</u> words, *or*

    ☐   this document uses a monospaced typeface and contains ____
        lines of text.

2.  This document complies with the typeface requirements of Fed. R.
    App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.
    32(a)(6) because:

    ☒   this document has been prepared in a proportionally spaced
        typeface using <u>Microsoft Word for Office 365</u> in <u>14-point</u>
        <u>Century Schoolbook</u>, *or*

    ☐   this document has been prepared in a monospaced spaced
        typeface using _____ with _____.


        /s/  *Adam L. Sorensen*
        Adam L. Sorensen
        *Counsel for Appellee*
        *Federal Communications Commission*

## CERTIFICATE OF FILING AND SERVICE

I, Adam L. Sorensen, hereby certify that on July 3, 2023, I filed the foregoing Opposition of Federal Communications Commission to Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Adam L. Sorensen*

Adam L. Sorensen
   *Counsel*

Federal Communications
Commission
Washington, D.C.  20554
(202) 418-1740